July 21, 2025

Oyekunle Stephen Oyelakin
1722 Shelmire Avenue
Philadelphia, PA 19111
215-868-3075
Oyelakin1@yahoo.com

**Clerk of Court**
U.S. District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106-1797



### <u>Re: In-Person Filing – Complaint for Violation of Civil Rights Under 42 U.S.C. 1983 and Other Relief.</u>

Dear Clerk of Court:

I am filing the enclosed complaint in person and respectfully request that a second copy of the complaint be date-stamped and returned to me for my records.

Enclosed please find:

1.  Completed Civil Cover Sheet (JS-44);

2.  Original signed complaint and one additional copy of the complaint for date-stamping;

3.  Original signed memorandum of law and one additional copy for date-stamping;

4.  Notice of Constitutional Question and one additional copy for date-stamping;

5.  Completed Summons Forms (AO 440) for each named defendant;

6.  Motion to Participate in CM/ECF electronic filing system as a Pro Se Litigant and one additional copy for date-stamping;

Thank you for your assistance in processing this filing.

Respectfully,

Oyekunle Stephen Oyelakin

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Oyekunle Stephen Oyelakin

**(b)** County of Residence of First Listed Plaintiff    USA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

DHS/BCSE, Philadelphia Family Court, DAO, Judges Litwin, Ford and Murphy, ADA Youkanna, ADA Koscinski , Clerk

County of Residence of First Listed Defendant    USA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
This action is brought under 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's constitutional rights, including due process, equal protection,

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Oyekunle Stephen Oyelakin

Plaintiff

V.                                                    Civ No._____

                                                      **JURT TRIAL DEMANDED**

Pennsylvania Department of Human Services ("DHS/BCSE");

Family Court Division of the Court of Common Pleas of

Philadelphia, First Judicial District of Pennsylvania

("Philadelphia Family Court");

Clerk of the Philadelphia Family Court;

Judge Leanne Litwin;

Judge Holly Ford;

Judge Margaret Theresa Murphy (Ret.);

Philadelphia County;

District Attorney's Office of Philadelphia ("DAO");

District Attorney Lawrence Krasner;

Assistant District Attorney Maurice Youkhanna;

Assistant District Attorney Lois Koscinski;

Eric J. Assini, Esq., Deputy Court Administrator, First Judicial

District of Pennsylvania;

Valerie A. Arkoosh;

Andrew Barnes.

Defendants[1].

## **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

## **AND RELATED RELIEF.**

### **NATURE OF THE CASE**

1. This is a civil rights action brought under 42 U.S.C. § 1983 to redress the deprivation of rights, privileges, and immunities secured by the United States Constitution, including:

   • The Fourteenth Amendment's Due Process and Equal Protection Clauses,

   • The First Amendment Right to Petition for Redress of Grievances,

   • The Article IV Privileges and Immunities Clause, and

   • The Supremacy Clause, concerning the unlawful application of federal and international law.

2. The Plaintiff does not seek to enforce the provisions of Title IV-D of the Social Security Act as a private right of action. Rather, this action is brought pursuant to 42 U.S.C. § 1983 to redress ongoing constitutional violations committed by state and local officials acting under color of law, including but not limited to: denial of procedural due process,

---

1 Capacities in which the Defendants are sued, and the nature of relief sought, are set forth in the Capacity and Relief Summary and throughout the Complaint.

deprivation of equal protection, use of materially fabricated and conflicting identities in judicial proceedings, and obstruction of justice through fraud upon the court and tampering with official records.

3. These actions implicate the Plaintiff's rights under the Fourteenth Amendment and are independently cognizable under § 1983, consistent with the U.S. Supreme Court's ruling in *Blessing v. Freestone*, 520 U.S. 329 (1997), which affirms that § 1983 remains an appropriate remedy for constitutional violations, even where the underlying statutory framework does not itself create an enforceable individual right.

4. This action arises from the identity fraud, extrinsic fraud, and systemic misuse of federally funded Title IV-D child support enforcement mechanisms in violation of the Plaintiff's constitutional due process rights. Federal oversight mandates that Title IV-D agencies and their prosecutorial counterparts operate in compliance with constitutional principles, including those articulated in *Turner v. Rogers*, 564 U.S. 431 (2011). The federal government has a compelling interest in ensuring that child support enforcement proceedings are not only cost-effective but also legally just and protective of the rights of noncustodial parents. The Plaintiff brings this action to challenge unlawful and fraudulent enforcement actions that disregarded these fundamental protections.

5. The Plaintiff alleges that the Defendants' conduct was not merely negligent or coincidental, but part of a coordinated effort to conceal identity fraud and facilitate fraudulent enforcement actions. The consistent use of fabricated identities across filings, enforcement orders, and docket entries—combined with failure to respond to formal challenges and coordinated alteration of records—reflects an agreement among state

3

actors to deprive the Plaintiff of equal protection and due process in violation of 42 U.S.C. § 1985(3).

**Historical and Administrative Structure of Pennsylvania Title IV-D Program**

6. The Title IV-D Child Support Enforcement Program was established by Congress in 1975 through U.S. Public Law 93-647, as part of the Social Security Act, 42 U.S.C. § 651 et seq., to create uniform national procedures for paternity establishment, support enforcement, and interstate cooperation.

7. Long before federal oversight began, Pennsylvania maintained its own child support enforcement framework dating back to 1937. Today, Pennsylvania's Title IV-D program is administered by the Department of Human Services (DHS) through its Bureau of Child Support Enforcement (BCSE), which operates via Cooperative Agreements with the 67 county governments and Courts of Common Pleas, including Philadelphia County.

8. The Domestic Relations Sections (DRSs) of each county's Court of Common Pleas act as the local Title IV-D entities. DRSs are responsible for establishing paternity, issuing support orders, and executing enforcement actions. These actions include income withholding, license suspension, passport denial, tax refund interception, property liens, newspaper publication, bank account seizure, and civil contempt proceedings that may result in incarceration—all under color of state law.

9. These activities are carried out under both federal and state law, including 42 U.S.C. § 651 et seq., 23 Pa. C.S. §§ 4301–4385, and Pennsylvania Supreme Court rules of civil procedure.

4

**Title IV-D Cooperative Enforcement Framework and Philadelphia County's Role**

10. Philadelphia's participation in the Title IV-D program is formalized through multiple cooperative agreements: (1) between DHS and the County Commissioners and DRS of Philadelphia County; and (2) between the Philadelphia District Attorney's Office (DAO) and the First Judicial District.

11. These agreements authorize and fund the DAO and DRS to perform Title IV-D enforcement functions. However, the systemic failure to verify identity records, safeguard personal data, and ensure constitutional due process within this multi-entity framework has resulted in widespread constitutional violations for which Philadelphia County bears *Monell* liability.

12. Under a Cooperative Agreement executed between DHS, the DRS, and the County Commissioners, Philadelphia County assumed administrative and financial responsibilities as a Title IV-D participant and agreed to comply with all federal regulations, including those codified at 45 C.F.R. §§ 302.70, 303.3, and 307.13.

13. Separately, the DAO entered into a legal services contract with the First Judicial District to initiate contempt proceedings, prosecute interstate enforcement actions, and use data from the Federal Parent Locator Service (FPLS) and other protected systems.

14. While acting pursuant to these agreements and under color of law, the DAO knowingly used, relied upon, and disseminated materially false or unverified identity records— including those tied to the Plaintiff's Social Security Number—in furtherance of unlawful enforcement proceedings. These practices reflect an institutional policy, practice, or custom actionable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**Coercion Through Judicial and Prosecutorial Misconduct Under Title IV-D Incentives**

15. Throughout the enforcement proceedings, Plaintiff consistently objected to the use of a fabricated identity and challenged the underlying records. For example, see Transcript of Sept. 1, 2022, Hr'g, BC2205002, at 8:3–17.

16. Despite submitting documentary evidence and sworn testimony, the Plaintiff's objections were disregarded. Judges and DAO officials acted in concert to suppress material evidence, use multiple fabricated identities interchangeably, and insulate the fraudulent applicant from legal accountability.

17. These actions were undertaken despite known material irregularities and constitute deliberate indifference—or actual knowledge—of federal and international violations, including identity fraud, misuse of personal data, and violations of the 2007 Hague Convention on the International Recovery of Child Support.

18. Rather than upholding the law, the DAO and judiciary prioritized federally incentivized enforcement outcomes over constitutional safeguards. This included knowingly relying on false identity records and fraudulent applications to secure federal performance funding.

19. The Plaintiff was repeatedly compelled to participate in legal proceedings under threat of contempt and sanctions, despite the proceedings being predicated on a false identity framework. His participation was coerced—*vi coactus*[2]—and resulted in the deprivation of fundamental due process protections.

---

[2] *Vi coactus* ('having been compelled') indicates actions taken under legal duress; see, e.g., *United States v. Anderson*, 926 F.2d 618, 620 (7th Cir. 1991).

## PRELIMINARY STATEMENT

20. The Plaintiff, Oyekunle Stephen Oyelakin, brings this civil rights action under 42 U.S.C. § 1983 to redress egregious and ongoing violations of his constitutional rights committed by government officials acting under color of state law. These violations include the enforcement of fraudulent court orders, use of conflicting and unverified identities, manipulation of judicial proceedings, judicial tampering with official court records, and obstruction of justice. These acts were carried out in furtherance of a broader pattern of systemic misconduct and institutional abuse involving federally funded child support enforcement under Title IV-D of the Social Security Act.

21. These actions are not isolated or accidental. They form part of a coordinated scheme involving public officials—judges, prosecutors, clerks, and agency employees—designed to deprive the Plaintiff of liberty and property without due process. The misuse of federal matching funds and performance-based incentives under Title IV-D directly implicates substantial federal interests and warrants referral to the U.S. Department of Justice for independent oversight and investigation.

22. This case centers on a fraudulent child support proceeding initiated under the 2007 Hague Convention by the Irish Department of Justice, relying on fabricated identities, forged documents, and manufactured jurisdictional claims. Various U.S. state and judicial actors knowingly facilitated and enforced this fraudulent application despite material inconsistencies and formal objections.

23. The Plaintiff invokes 42 U.S.C. § 1983 to remedy the deprivation of his constitutional rights, including due process, equal protection, and the right to be free from fraud and judicial misconduct. The claims arise from the conduct of state actors—including

7

judges, prosecutors, court administrators, and Title IV-D enforcement agents—who conspired to enforce a knowingly fraudulent child support case through the use of conflicting, fabricated identity records.

24. The Plaintiff further alleges that court officers and the District Attorney's Office engaged in fraud upon the court, altered court dockets, obstructed justice, and abused federally funded Title IV-D enforcement processes. These acts, committed under color of law, caused substantial harm, including financial loss, reputational damage, emotional distress, and denial of access to a fair and impartial forum.

25. This pattern of misconduct affects not only the Plaintiff's individual rights but also undermines the integrity of federally supervised programs and public trust in the administration of justice.

26. The Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages, to remedy these ongoing constitutional violations and protect against further injury. He also seeks such other relief as this Court deems just and proper based on constitutional, statutory, and treaty-based violations.

27. This Complaint raises constitutional questions under the Fourteenth Amendment and is accompanied by a Rule 5.1 Notice of Constitutional Question, served upon the Attorney General of the United States and the Attorney General of Pennsylvania.

28. This action is submitted **pro se** and, as such, is entitled to liberal construction. Federal Rule of Civil Procedure 8 requires that pleadings "be construed so as to do substantial justice."

29. Although proceeding **pro se**, the Plaintiff's complaint satisfies Rules 8(a) and 9(b) by providing a detailed, fact-specific narrative identifying the who, what, when, where, and how of the alleged fraud and constitutional violations. The complaint gives each Defendant fair notice of the claims and their factual basis.

30. The United States Supreme Court has long held that a **pro se** complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

31. Federal courts reaffirm this principle, emphasizing that **pro se** litigants are entitled to special solicitude, and their pleadings must be read liberally to allow meritorious claims to proceed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).*

32. The Plaintiff respectfully requests that this Honorable Court evaluate the claims presented with the full judicial consideration afforded to **pro se** litigants, in accordance with binding precedent and the interests of substantial justice.

33. The Plaintiff currently proceeds **pro se** pursuant to 28 U.S.C. § 1654 but reserves the right to retain counsel at any stage of this litigation. Upon retention of counsel, appropriate notice will be filled with the Court. Additionally, the Plaintiff reserves the right to amend this Complaint or separate legal claims as necessary based on jurisdictional rulings and discovery of additional evidence.

34. The Plaintiff possesses extensive evidentiary documentation—including certified document examiner reports, expert witness declarations, and corroborating records—

which will be disclosed and submitted pursuant to the Federal Rules of Civil Procedure, including Rule 26(a)(1) and Rule 26(a)(2), during the appropriate stages of discovery.

## INTRODUCTION

35. This action arises from an international fraud scheme involving a Hague Convention child support application transmitted by the Department of Justice, Ireland, under Reference No. LR 10.8.1842. The application contained materially false and fabricated information, including: (1) a fraudulent identity and false date of birth for the applicant; (2) a forged Acknowledgment of Paternity (A.O.P.) form; (3) a falsified U.S. birth certificate for the minor child, O.S.O.; (4) fraudulent pay stubs from Pfizer Pharmaceuticals, Ireland/Pfizer Inc; (5) fabricated Irish banking details for international wire transfers; and (6) a false claim of habitual residence in Ireland. These acts violate multiple provisions of U.S. federal law and the international treaty, the Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance (2007).

36. The scheme also involved the unauthorized use of The Plaintiff's Social Security Number; the use of a fraudulently obtained U.S. passport to claim the child's habitual residence in Ireland; and the use of a fraudulently obtained Nigerian passport, Irish citizenship, and Irish passport—each contributing to a denial of The Plaintiff's constitutional due process rights. "Olusola Hannah Edward" (Olusola H. Edward / Hannah O. Edward, hereinafter "applicant") is alleged to have fabricated and used multiple forged documents and false identities to fraudulently establish jurisdiction in Ireland and secure improper enforcement orders in the United States. This fraudulent

10

scheme was knowingly transmitted into the U.S. through the Hague Convention application. The equitable maxim of the clean hands doctrine applies, as the initiating party brought the claim with fraudulent conduct that undermines the legal foundation of the proceedings.

**Fraudulent Hague Convention Application**

37. Article 11(1) of the Hague Convention requires that applications contain truthful and accurate information concerning the legal identities of both the applicant and the respondent. Any order procured through fraudulent identities or misrepresentations may be denied enforcement under Article 22, which permits refusal where the foreign decision was obtained by fraud, including fraud "in connection with a matter of procedure.

38. The Convention mandates that identity-related information—including the date of birth of the child and applicant—must be accurate, verifiable, and sufficient to confirm eligibility for maintenance enforcement. Here, the applicant's identity and date of birth submitted with the application were demonstrably false, altered, or unverified.

39. On or about January 22, 2020, the Department of Justice, Ireland, transmitted the fraudulent Hague Convention application to the Department of Human Services/Bureau of Child Support Enforcement (DHS/BCSE), under Reference No. LR 10.8.1842. This information was used to initiate enforcement proceedings in Philadelphia Family Court, causing legal, procedural, and financial harm under the guise of treaty-based authority.

40. The applicant employed one of her many fabricated identities ("Olusola Hannah Edward"), a falsified birthdate of July 11, 19XX, forged documents, and a fraudulent claim of habitual residence in Ireland for herself and the child (O.S.O.) to improperly invoke the Hague Convention and trigger enforcement proceedings in the United States.

**Application Through Central Authorities**

41. Article 9 of the Hague Convention provides that a child support application "shall be made through the Central Authority of the Contracting State in which the applicant resides to the Central Authority of the requested State." It explicitly excludes applications based on "mere presence."

42. The purpose of this requirement is to ensure legitimacy by allowing the requesting State to verify the applicant's legal status and identity before transmission.

43. The applicant must have genuine, lawful, and stable residency in the requesting country. Mere physical presence, temporary stays, or residence acquired through fraudulent means do not qualify under Article 9.

44. Where an application is based on a fictitious name, fraudulent passport, or false birth certificate, it violates Article 9, rendering any resulting order constitutionally deficient under U.S. due process standards.

45. Compliance with Article 9 safeguards jurisdictional integrity and prevents the misuse of the Convention by individuals using falsified documents or identities.

46. Individuals invoking the Hague Convention must establish legitimate residency in the requesting State through lawful and verifiable means.

47. Central Authorities have a responsibility to ensure application integrity and may be obligated to investigate when fraud is suspected. Fraudulently obtained citizenship or residency invalidates claims of habitual residence under the Convention.

48. In *Monasky v. Taglieri*, 589 U.S. 68, 76–77 (2020), the Supreme Court held that a child's habitual residence under the Hague Convention must be determined by the totality of the circumstances—not formal designations or parental assertions. That determination is defective where it is based on **fraudulent documentation**, including fabricated birth records, false identity data, or misrepresented nationality. See *Orabi v. Attorney General*, 738 F.3d 535, 543 (3d Cir. 2014). The Plaintiff does **not** seek to reverse any state judgment and or appeal pending at the Supreme Court of Pennsylvania, but asserts **independent claims under 42 U.S.C. § 1983** based on constitutional violations, extrinsic fraud, and administrative misconduct that occurred **outside the scope of judicial proceedings** and continues to cause ongoing harm. Both U.S. and international courts have confirmed that habitual residence cannot be lawfully determined through identity fraud, as such fraud undermines the jurisdictional integrity of proceedings under the 2007 Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance. See *Smith v. Smith*, 976 F.3d 558 (5th Cir. 2020); *Re B (A Child)* [2016] UKSC 4; *Nottinghamshire County Council v. B* [2011] IESC 48.[3] These claims are brought under 28 U.S.C. §§ 1331 and 1343, and

---

[3] The Plaintiff cites Re B (A Child) [2016] UKSC 4 (U.K. Supreme Court) and Nottinghamshire County Council v. B [2011] IESC 48 (Supreme Court of Ireland) for their persuasive authority in interpreting the

seek redress for violations of the Plaintiff's constitutional rights under color of state law, including due process, privacy, and equal protection protections, in connection with fraudulent Title IV-D enforcement actions and misuse of international mechanisms.

49. Where legal residency is procured by fraud, any claim of habitual residence is defective and jurisdictionally void under both international and domestic law.

**Notice to Irish Officials**

50. The Plaintiff repeatedly notified Irish officials—including Helen McEntee (then Minister for Justice), James Browne (then Minister of State at the Department of Justice), and Simon Coveney (then Minister for Foreign Affairs and Defense)—of the fraud perpetrated using the fabricated identity of "Olusola Hannah Edward" and the misuse of Irish and U.S. documentation.

51. The Plaintiff submitted documentary evidence to these officials, including proof that the Irish citizenship and passport were obtained under a false identity and used to initiate the Hague application with fraudulent claims of legal standing.

52. Despite formal notice, these officials failed or refused to take corrective action, allowing the use of the fraudulent status to persist and cause harm in the U.S. legal system.

---

2007 Hague Convention's requirements for habitual residence and fraud safeguards. These foreign decisions are not binding on this Court but are offered to illustrate consistent international standards prohibiting jurisdiction based on fraudulent documentation.

53. The continued use of this false identity, even after formal notice, directly harmed The Plaintiff in U.S. proceedings, including enforcement actions initiated at Philadelphia Family Court under a treaty-based framework.

**Duties of Central Authorities**

54. Articles 6 and 7 of the Convention obligate Central Authorities to cooperate and facilitate the enforcement of legitimate claims. These obligations prohibit the knowing transmission of applications containing fraudulent or materially false information.

55. While Central Authorities are not expected to investigate every application, once fraud is brought to their attention, they are duty-bound to take remedial action to prevent misuse of treaty mechanisms.

56. The Irish Central Authority's failure to act upon receiving such notice materially contributed to the harm inflicted upon The Plaintiff through enforcement actions in the United States.

57. Under the Convention, it is the responsibility of the U.S. tribunal—in this case, Philadelphia Family Court—to investigate and make findings regarding jurisdiction, including habitual residence. No such finding was properly made in this case.

**Violation of Public Policy**

58. Fraudulent identity, forged documents, and fabricated residency violate public policy in most jurisdictions, particularly where they:

- Involve falsified passports or identification documents (e.g., Irish or Nigerian passports),

- Include fabricated claims of parentage or family status,

- Undermine the integrity of international legal instruments such as the Hague Convention.

**Identity Fraud under the Hague Convention and UIFSA**

59. Both the 2007 Hague Convention and the Uniform Interstate Family Support Act (UIFSA 2008) require strict adherence to standards of identity verification, jurisdictional legitimacy, and procedural regularity.

60. Article 11(1) of the Convention mandates accurate identification of both parties, while Article 22 and Article 30(4)(b) provide bases for denial of enforcement where orders are obtained by fraud.

61. A support order based on fraudulent identity, legal status, or fabricated parentage is procedurally defective and may not be enforced.

62. UIFSA §§ 706(b) and 708(a) likewise authorize U.S. courts to deny recognition where the issuing tribunal lacked jurisdiction or where the order was procured through fraud.

63. U.S. courts are thus empowered—and required—to reject applications based on fabricated identities, fraudulent residency, or concealed legal status. Such fraud renders the resulting orders unenforceable under both UIFSA and the Hague Convention.

64. Ireland and the United States are contracting parties to the 2007 Hague Child Support Convention, implemented in the U.S. via 42 U.S.C. § 659a and UIFSA 2008.

65. A valid application under the Convention must include:

- Verifiable identity documents for all parties;

- A valid birth certificate or proof of parentage;

- Evidence that the child is habitually resident in the requesting State;

- Identification of the legal custodian;

- A lawful basis for the claim under the requesting State's laws.

66. Commencing a legal proceeding using false identities, forged documents, or fraudulent financial data is not only unlawful—it also compromises U.S. judicial integrity when domestic actors assist in executing such fraud under the guise of treaty obligations.

67. The Department of Justice, Ireland, through its officer Alexander McGavin, knowingly transmitted fraudulent Hague Convention materials, including forged personal identifiers, that directly triggered enforcement actions in the U.S., causing The Plaintiff measurable financial and reputational harm.

68. While DOJ Ireland is not sued under 42 U.S.C. § 1983, its January 2020 transmission of false identity documents was a proximate cause of injuries suffered in the United States, and The Plaintiff seeks declaratory and injunctive relief to address the continuing domestic impact.

69. The DOJ Ireland application, received and acted upon by U.S. authorities including the Philadelphia Family Court and the District Attorney's Office, included forged documents and unverified names. These officials failed to verify authenticity, breaching their statutory and constitutional duties and causing the harms described herein.

## JURISDICTION AND VENUE

70. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the Constitution, laws, and treaties of the United States, including claims brought pursuant to 42 U.S.C. § 1983.

71. This action arises under the Constitution, laws, and treaties of the United States. The Plaintiff asserts claims pursuant to the following:

**Civil Rights Statutes**

• 42 U.S.C. § 1983 – Deprivation of Constitutional Rights under Color of Law

• 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights

• 42 U.S.C. § 1986 – Neglect to Prevent Civil Rights Violations

**Federal Criminal Statutes**[45] (*as RICO predicate acts or evidence of a pattern of misconduct*)

---

[4] References to criminal statutes such as 18 U.S.C. §§ 1001, 1027, 1028, and 1343 are made exclusively for contextual purposes. The Plaintiff uses these citations to highlight the nature and pattern of misconduct but does not rely on them to establish a civil cause of action.
[5] References to criminal statutes such as 18 U.S.C. §§ 1001, 1027, 1028, and 1343 are made exclusively for contextual purposes. The Plaintiff uses these citations to highlight the nature and pattern of misconduct but does not rely on them to establish a civil cause of action.

• 18 U.S.C. §§ 241, 286, 371 – Conspiracy Offenses

• 18 U.S.C. §§ 1001, 1027, 1028 – False Statements and Document Fraud

• 18 U.S.C. §§ 1031, 1037 – Program Fraud, Fraudulent Electronic Communications

• 18 U.S.C. §§ 1341, 1343 – Mail and Wire Fraud

• 18 U.S.C. §§ 1503, 1506, 1512, 1519 – Obstruction of Justice and Tampering

• 18 U.S.C. § 1621 – Perjury

• 18 U.S.C. §§ 1962, 1964 – Racketeer Influenced and Corrupt Organizations Act (RICO)

• 18 U.S.C. § 666 – Theft or Bribery in Programs Receiving Federal Funds

**False Claims and Financial Liability Statutes**

• 31 U.S.C. § 3729 – False Claims Act (Civil Liability for False Claims)

• 31 U.S.C. § 3123 – Public Debt and Payment Enforcement Provisions

**Social Security and Child Support Enforcement Statutes**

• 42 U.S.C. § 408(a) – Misuse of Social Security Numbers

• 42 U.S.C. §§ 652, 654, 658a – Title IV-D Child Support Program Requirements and Funding Compliance

**International Treaty Obligations**

• The Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance (2007) – Violations of treaty obligations in cross-border enforcement proceedings.

**State Law Framework Incorporated via Federal Mechanisms**

• UIFSA (2008) – Uniform Interstate Family Support Act, as adopted by states in support of federal Title IV-D compliance.

72. Under Article III, Section 1 of the U.S. Constitution, the federal judiciary is entrusted with the authority to adjudicate constitutional claims and enforce compliance with federal law and international treaties. The Plaintiff seeks relief for deprivations of federal rights that fall squarely within this Court's Article III jurisdiction.

73. This Court also has jurisdiction pursuant to Article III, Section 2 of the United States Constitution, which extends the judicial power of the federal courts to all cases arising under the Constitution, laws of the United States, and treaties made under their authority.

74. Venue is proper in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because:

a) A substantial part of the acts, omissions, and unlawful conduct giving rise to the Plaintiff's claims—including identity fraud, manipulation of court records, obstruction of justice, civil rights violations, and breaches of federal and international law—occurred within this District;

b) Multiple Defendants reside in this District, are employed by agencies operating within this District, or committed acts under color of state law within this District;

c) Key governmental entities, including judicial and administrative bodies whose misconduct is central to this action, are headquartered and operate within this District.

Accordingly, venue is proper in this Court under 28 U.S.C. § 1391(b).

75. The Plaintiff seeks prospective injunctive and declaratory relief against state agencies pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and asserts claims for monetary damages only against municipalities and individual Defendants in their personal capacities to avoid Eleventh Amendment sovereign immunity.

76. All claims asserted herein are timely under the applicable statutes of limitations due to the Plaintiff's recent discovery of concealed misconduct in or around January 2025.

77. The Plaintiff brings claims for monetary damages against state officials in their individual capacities for violations of clearly established constitutional rights. The Plaintiff also seeks prospective injunctive and declaratory relief against state officials in their official capacities, pursuant to *Ex parte Young*, to prevent ongoing constitutional violations.

**Standing Under Article III**

77a. The Plaintiff has standing under Article III of the United States Constitution to bring this action based on concrete and particularized injuries suffered both personally and in connection with his minor child, O.S.O. These injuries include compelled

participation in legal proceedings founded on fraudulent identity records, reputational harm, unlawful wage garnishment, and the deprivation of familial integrity.

77b. The minor child, O.S.O., has likewise suffered ongoing and particularized injury due to the governmental enforcement of a falsified United States birth certificate that misrepresents the child's legal identity and parental relationship. This conduct violates O.S.O.'s constitutionally protected right to accurate familial status under the Fourteenth Amendment and presents a continuing harm.

77c. These injuries are fairly traceable to the acts and omissions of Philadelphia County, the Pennsylvania Department of Human Services (DHS), the Philadelphia Family Court, and the District Attorney's Office of Philadelphia (DAO), each acting under color of law and pursuant to cooperative enforcement agreements.

77d. The requested relief, including prospective declaratory and injunctive remedies, would redress these constitutional injuries by halting further use of the falsified identity and requiring correction of government records.

**Timeliness and Continuing Harm Doctrine**

78. Although certain retaliatory actions and false filings—such as the sworn allegations submitted by District Attorney Larry Krasner and Assistant District Attorney Koscinski on or about September 14, 2022—occurred more than two years prior to the filing of this Complaint, the harmful effects of those actions have persisted and continue to impair *The Plaintiff's* legal rights.

79. The intimidation of *The Plaintiff's* material witness, Mr. Samuel Tolulope Ajayi, was part of an ongoing and coordinated pattern of obstruction, retaliation, and abuse of

legal authority that continues to this day. These actions have interfered with *The Plaintiff's* access to exculpatory testimony, deprived him of fair proceedings, and subjected him to fraudulent legal processes. This conduct constitutes a continuing violation under applicable federal law. Accordingly, these claims are timely and properly before this Court.

80. While claims brought under 42 U.S.C. § 1983 generally borrow the state's two-year personal injury statute of limitations, see *Wallace v. Kato*, 549 U.S. 384 (2007), federal law governs the accrual of those claims. Under the discovery rule, a § 1983 claim accrues when the plaintiff knew or reasonably should have known of the injury. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). Here, *The Plaintiff* plausibly alleges that the full scope and source of the injury— including the use of fabricated identities in court proceedings and concealed enforcement filings—could not reasonably have been discovered until January 2025, despite the exercise of due diligence.

81. Moreover, equitable tolling is warranted where a defendant's fraudulent concealment prevents the timely filing of claims. See *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). The Defendants' use of fabricated documents, multiple false identities, tampering with court dockets, obstruction of access to public records, and administrative suppression tactics collectively establish the necessary grounds for equitable tolling.

**Preliminary Clarification Regarding Judicial and Prosecutorial Conduct**

82. The Plaintiff emphasizes that the acts described herein—namely, identity fraud, docket manipulation, acceptance of forged documents, and the suppression of redress—were not judicial or prosecutorial functions. Rather, these were administrative, investigatory, or ultra vires acts falling entirely outside the scope of protected judicial or prosecutorial immunity.

83. The actions of Judges Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.), Assistant District Attorneys Lois Koscinski and Maurice Youkhanna, District Attorney Larry Krasner, and Mr. Assini for example utilizing court orders using multiple fabricated identities interchangeably with no legal basis, issuing a fraudulent letter to cover up the tampered docket and so on did not involve discretionary judicial rulings or protected prosecutorial advocacy. These defendants knowingly permitted or engaged in administrative acts, including the use of falsified birth certificates and Social Security numbers, concealment of official court docket alterations, and enforcement of fraudulent legal orders under false pretenses. Such conduct, which did not involve legal reasoning, judicial discretion, or courtroom-based advocacy, falls outside the scope of judicial immunity, see *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (limiting immunity to judicial acts within jurisdiction); *Forrester v. White*, 484 U.S. 219, 227–29 (1988) (excluding administrative acts from immunity), and prosecutorial immunity, see *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (limiting immunity to advocative functions); *Halsey v. Pfeiffer*, 750 F.3d 273, 297–98 (3d Cir. 2014) (denying immunity for fabricating evidence).

24

**Clarification of Federal and State Proceeding Distinction**

84. The Plaintiff currently has an appeal pending before the Supreme Court of Pennsylvania, which challenges the state court's subject matter jurisdiction and asserts that the underlying proceedings were compromised by the use of falsified identity records, forged documents, and procedural irregularities that deprived him of a fair adjudication. However, the issues raised in that appeal are distinct from, and do not preclude, the independent adjudication of the federal claims presented herein under 28 U.S.C. §§ 1331, 1343, and 1367.

85. The Plaintiff acknowledges that both this federal action and the pending state appeal involve allegations of identity fraud, including the use of fabricated names, falsified dates of birth, and forged legal documents. The state appeal challenges the subject matter jurisdiction of the Pennsylvania court based on extrinsic fraud—specifically, the fraudulent initiation and conduct of proceedings using fabricated identities and the improper substitution of "Hannah O. Edward" and "Olusola H. Edward." That appeal is limited to whether such identity fraud deprived the Plaintiff of a fair opportunity to be heard in the state proceeding.

86. By contrast, this federal action asserts distinct and independent claims under federal law. These include extrinsic fraud, constitutional violations, and administrative misconduct by judicial officers and other government actors—such as fraudulent court docket alterations, suppression of expert evidence, and the enforcement of fabricated orders under multiple false identities. These acts were carried out under color of state law but fall outside the scope of judicial immunity. Accordingly, they are actionable under 42 U.S.C. § 1983 and relevant equitable doctrines governing fraud upon the

25

court. This Complaint does not seek reversal or modification of any state court judgment but challenges unlawful conduct extrinsic to those proceedings that infringed The Plaintiff's constitutional rights.

87. The claims asserted herein arise under federal statutes—including the Identity Theft and Assumption Deterrence Act of 1998, 18 U.S.C. § 1028; 42 U.S.C. § 1983; and other constitutional and statutory protections. These claims involve unlawful acts by state and foreign actors that resulted in ongoing violations of The Plaintiff's rights under the U.S. Constitution. The relief sought in this Court—compensatory damages, declaratory and injunctive relief—is distinct from and unavailable in the pending state appeal, and does not require this Court to review or invalidate any prior state court ruling.

88. Moreover, because the state court petition for the allowance of appeal, filed in the Pennsylvania Supreme Court on December 27, 2024, (439 EAL 2024), remains pending and challenges the lower court's jurisdiction based on extrinsic fraud, and misuse of res judicata and collateral estoppel, there is no valid or final judgment that can give rise to res judicata or collateral estoppel claim in this action. Fraud that deprives a tribunal of jurisdiction makes any resulting order defective. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944) (holding that fraud on the court justifies setting aside a judgment); *Orabi v. Attorney General*, 738 F.3d 535, 543 (3d Cir. 2014) (recognizing that fraud affecting jurisdictional facts invalidates proceedings); see also *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (requiring a valid final judgment for res judicata). This action raises

independent constitutional claims under 42 U.S.C. § 1983, distinct from the state court's child support orders, which are defective due to fraud.

89. To be clear, the Plaintiff does not seek to relitigate, reverse, or modify any judgment of a state court. Rather, this action arises under federal law and presents distinct statutory and constitutional claims that have never been adjudicated. The *Rooker-Feldman* doctrine does not apply here, as this action does not invite appellate review of a final state court judgment. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

90. Accordingly, this Court has original jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. The Plaintiff's claims are distinct in both law and requested relief from those in the pending state appeal, and this action is properly before the Court.

## **PARTIES**

**The Plaintiff**

91. **Oyekunle Stephen Oyelakin** is a resident of Philadelphia, Pennsylvania, and a citizen of the United States. The Plaintiff has been subjected to an ongoing pattern of fraudulent legal proceedings, identity-based fraud, financial harm, and extortionate enforcement actions, all of which have resulted in the violation of his constitutional rights as detailed herein.

**Defendants**

**Capacity and Relief Summary**

92. Unless otherwise specified, all individual Defendants are sued in both their individual and official capacities. The claims for monetary relief are directed only at Defendants sued in their **individual capacities**, and at **Philadelphia County** under *Monell v. Department of Social Services*, for policies and practices that caused or permitted systemic constitutional violations.

**Pennsylvania Department of Human Services (DHS) and Bureau of Child Support Enforcement (BCSE[6])**

93. The Pennsylvania Department of Human Services (DHS) and its Bureau of Child Support Enforcement (BCSE) are considered **arms of the Commonwealth of Pennsylvania** and are therefore immune from suits for monetary damages under the **Eleventh Amendment**. Accordingly, DHS and BCSE are named **solely for purposes of prospective declaratory and injunctive relief**, pursuant to *Ex parte Young, 209 U.S. 123 (1908)*.

---

[6] For clarity, the term "DHS/BCSE" as used in this Complaint and accompanying Memorandum of Law refers to the Pennsylvania Department of Human Services (DHS) and its internal division, the Bureau of Child Support Enforcement (BCSE). DHS is the sole legal entity named as a defendant. BCSE is referenced solely in its operational capacity as the unit within DHS responsible for implementing Pennsylvania's Title IV-D child support enforcement program.

94. Defendants Valerie A. Arkoosh[7], M.D., MPH (Secretary of DHS) and Andrew Barnes[8] (Executive Deputy Secretary) are sued in both their **individual capacities** (for monetary relief) and **official capacities** (for injunctive and declaratory relief only). These senior officials are responsible for statewide child support enforcement policies and oversight mechanisms that enabled and perpetuated the constitutional violations alleged in this Complaint. Their official-capacity roles support forward-looking relief to halt continuing violations of federal law.

95. These state-level enforcement policies are carried out through formal **Title IV-D cooperative agreements** between DHS and the Courts of Common Pleas across Pennsylvania. In Philadelphia, this includes the Philadelphia Family Court and its Domestic Relations Section (DRS), which functions as a **local Title IV-D child support enforcement unit** under the supervision of DHS and subject to federal oversight. Acts and omissions by these local units are attributable to the policy framework maintained at the state level.


**Philadelphia Family Court Judges, Clerks, and Administrative Staff**

96. Defendants from the **Philadelphia Family Court**—including judges, clerks, and administrative personnel—are not sued for actions protected by judicial or quasi-judicial immunity. They are sued:

---

[7] Valerie A. Arkoosh, MD, MPH, in sued in her official capacity as Secretary of the Pennsylvania Department of Human Services, and in her individual capacity.
[8] Andrew Barnes, in sued in his official capacity as a senior official within the Pennsylvania Department of Human Services, and in his individual capacity.

- In their **individual capacities** for administrative, ministerial, or ultra vires actions taken outside the scope of adjudication, and for which **monetary damages** are sought; and

- In their **official capacities** solely for **prospective declaratory and injunctive relief**, including relief related to the alteration of court dockets, the use and enforcement of fraudulent identity documents, and systemic administrative misconduct.

**Philadelphia District Attorney's Office (DAO) and Staff**

97. The **Philadelphia District Attorney's Office (DAO)**, including District Attorney **Lawrence Krasner** and Assistant District Attorneys **Maurice Youkhanna** and **Lois Koscinski**, is sued:

- In their **individual capacities** for acts undertaken outside the scope of prosecutorial immunity, including investigatory, administrative, and retaliatory conduct— particularly their participation in fraudulent enforcement proceedings, identity suppression, and non-advocative misuse of federal enforcement mechanisms—for which **monetary damages** are sought; and

- In their **official capacities** solely for **prospective injunctive relief**, to the extent necessary to halt ongoing violations related to Title IV-D cooperation, administrative misconduct, and identity fraud.

This framework ensures compliance with federal sovereign immunity doctrine and clarifies that all **monetary damages** are sought exclusively from individual-capacity

defendants and Philadelphia County, while **injunctive and declaratory relief** is sought from both individual and official-capacity defendants as appropriate.

**Defendant Descriptions**

**State, City and Municipal Government Entities**

98. **Defendant Pennsylvania Department of Human Services (DHS),** (sued in its official capacity), is a state agency responsible for administering and enforcing child support obligations pursuant to Title IV-D of the Social Security Act. Within DHS, the **Bureau of Child Support Enforcement (BCSE)** operates as an internal division responsible for statewide child support policy, oversight, and compliance with federal regulations[9]. The **Bureau of Child Support Enforcement (BCSE)** is a division within DHS that oversees policy and compliance for the Title IV-D program. BCSE is not a separate legal entity and is referenced solely in its operational capacity. DHS is sued in its **official capacity only** for its knowing participation in and facilitation of fraudulent enforcement actions. These actions were based on materially false, misleading, and unverified court filings that relied on multiple fraudulently fabricated identities, including fabricated dates of birth. DHS, through its BCSE division, is responsible for ensuring that Pennsylvania's Title IV-D enforcement structure complies with federal and constitutional requirements. Its failure to provide proper oversight, verification procedures, or safeguards against known fraud risks enabled the misuse of federally funded enforcement mechanisms. By facilitating judicial manipulation, identity fraud,

---

[9] Title IV-D of the Social Security Act, codified at **42 U.S.C. §§ 651–669b**, establishes a federal-state partnership mandating that states create and maintain child support enforcement programs in compliance with federal guidelines. These programs must operate under detailed requirements set forth in **federal statutes and regulations**, including **45 C.F.R. Parts 301–309.**

and unconstitutional enforcement actions through its local cooperative agreements, DHS contributed to ongoing violations of the Plaintiff's rights under color of state law. The Plaintiff asserts claims against DHS in its **official capacity solely for prospective injunctive and declaratory relief** pursuant to *Ex parte Young*, 209 U.S. 123 (1908), to remedy continuing violations of constitutional rights. The Plaintiff does **not seek monetary damages** against this Defendant. To the extent Eleventh Amendment immunity applies, this action seeks only prospective relief and federal oversight consistent with federal law and constitutional guarantees.

99. Defendant **Philadelphia Family Court,** First Judicial District of Pennsylvania, is a judicial entity operating under the First Judicial District of Pennsylvania, charged with jurisdiction over family law matters, including federally funded Title IV-D child support enforcement actions. Defendant Philadelphia Family Court is sued in its official capacity for its alleged direct involvement in actions that led to the issuance of unconstitutional and fraudulent court orders under color of state law. Specifically, the Defendant Philadelphia Family Court, through its officers and processes, is alleged to have accepted and acted upon filings with materially fabricated information and multiple fraudulently fabricated identities including a fabricated date of birth, engaged in the use of multiple fraudulently fabricated identities to issue court orders and income withholding orders without legal justification, resulting in the manipulation of court records and the violation of the Plaintiff's constitutional rights to due process and equal protection. Philadelphia Family Court is named only for the purposes of prospective **injunctive and declaratory relief** related to continuing constitutional violations

involving the misuse of fabricated identities in child support enforcement. The Plaintiff does not seek damages from this judicial entity.

100. Defendant, **Clerk of the Philadelphia Family Court** (sued in official and individual capacities). The Defendant is an officer of the First Judicial District of Pennsylvania, is charged with the critical duty of managing court filings, maintaining official court records, and safeguarding the integrity of the Philadelphia Family Court docket. The Clerk is sued in both official and individual capacities for actions that knowingly permitted, facilitated, and concealed court record tampering, including the use of multiple fraudulently fabricated identities including fabricated date of birth in court filings. These actions allegedly enabled judicial fraud, obstructed justice, and deprived the Plaintiff of constitutionally protected rights, including the right to a fair and impartial judicial process, and implicate the misuse of public judicial resources and potential public corruption. The Defendant's conduct, as described herein, violated the Plaintiff's clearly established rights to due process and fair legal proceedings. No reasonable official could have believed that manipulating court records or concealing identity fraud was lawful.

101. Defendant, **District Attorney's Office of Philadelphia (DAO)** (sued in its official capacity) is a governmental entity operating under the authority of the Commonwealth of Pennsylvania and the City of Philadelphia. The DAO is sued in its official capacity for its role in administering child support enforcement functions pursuant to a Title IV-D cooperative agreement with Philadelphia County, as authorized under the Social Security Act. Under this agreement, the DAO shares responsibility for ensuring that enforcement actions comply with federal and state law, including due process

33

protections and the accurate use of identity and case information. Despite these obligations, the DAO knowingly approved, facilitated, or failed to prevent the submission of fraudulent legal filings that relied on materially false and inconsistent identities. The DAO also permitted or ignored the manipulation of court proceedings that resulted in unlawful enforcement actions and procedural irregularities. These failures—carried out under color of state law—directly contributed to the deprivation of the Plaintiff's constitutional rights and constituted misuse of federal Title IV-D program funds and public resources.

102. **Defendant Philadelphia County** - Defendant Philadelphia County is a political subdivision of the Commonwealth of Pennsylvania. Pursuant to 42 U.S.C. § 654(6) and its implementing regulations, including 45 C.F.R. §§ 302.34 and 303.107, Philadelphia County entered into a Title IV-D cooperative agreement with the Philadelphia District Attorney's Office (DAO) to carry out administrative child support enforcement functions under the Social Security Act. Under this agreement, the DAO performs non-prosecutorial, administrative duties in child support cases on behalf of Philadelphia County, not the Commonwealth of Pennsylvania. These duties include the preparation and filing of pleadings, enforcement of support obligations, and interaction with the Philadelphia Family Court in Title IV-D cases. While operating under the cooperative agreement, the DAO functions as a county policymaker and not a state official. Philadelphia County is responsible for the administration, supervision, training, and funding of the Title IV-D unit within the DAO. As such, it may be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for constitutional violations that resulted from its policies,

customs, or deliberate indifference to unconstitutional practices. The constitutional violations were not isolated incidents but resulted from a widespread custom and practice within Philadelphia County agencies—including the Family Court, DHS/BCSE, and the District Attorney's Office—of using fabricated identities, tampering with records, and concealing fraud. This conduct reflects a systemic failure to train, supervise, and discipline personnel, and was carried out with the knowledge or ratification of final policymakers responsible for enforcing Hague Convention and UIFSA procedures. Philadelphia County is therefore sued in its official capacity for purposes of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### Government Officials & Judges, Official & Individual Capacities

103. Defendant **Lawrence S. Krasner** (sued in both his **official and individual capacities**) is the elected District Attorney of Philadelphia. In his official capacity, he is responsible for overseeing the legal actions of the DAO, including Title IV-D enforcement under cooperative agreements with DHS and the First Judicial District. He is sued officially for authorizing, approving, or failing to prevent the use of materially false filings—specifically, those incorporating multiple fabricated identities—before the Philadelphia Family Court, Superior Court, and Supreme Court of Pennsylvania. In his individual capacity, he is alleged to have knowingly engaged in or facilitated identity fraud, docket manipulation, and unlawful enforcement actions constituting administrative misconduct outside the bounds of protected prosecutorial

advocacy. These acts—carried out under color of state law—violated clearly established constitutional rights and fall outside the scope of prosecutorial immunity.

104. Defendant **Maurice Youkhanna** (sued in both **official and individual capacities**) is an Assistant District Attorney in the DAO. He is alleged to have submitted fraudulent filings before Pennsylvania courts using inconsistent fabricated identities, thereby obstructing justice, violating the Plaintiff's due process rights, and misusing federal Title IV-D funds. These acts were investigatory and administrative, not tied to courtroom advocacy, and are not shielded by prosecutorial immunity.

105. Defendant **Lois Koscinski** (sued in both **official and individual capacities**) is an Assistant District Attorney who submitted and relied on filings containing fabricated identities despite evidence of fraud. She failed to correct these irregularities, thereby facilitating identity fraud and depriving the Plaintiff of fair process. Her actions were administrative in nature and fall outside the scope of traditional prosecutorial functions and related immunities.

106. Defendant **Judge Leanne Litwin** (sued in both **official and individual capacities**) knowingly issued court orders predicated on materially inconsistent, fabricated identities and authorized docket changes without motion or hearing. These administrative, extrajudicial acts contributed to the misuse of public funds and violated the Plaintiff's clearly established constitutional rights. These non-adjudicative acts are not protected by judicial immunity.

107. Defendant **Judge Holly Ford** (sued in both **official and individual capacities**) engaged in identity-switching and the issuance of court orders based on inconsistent, fabricated identities. These actions reflect administrative record manipulation rather

than judicial rulings. Her conduct resulted in the abuse of public resources and denial of due process, falling outside the scope of judicial immunity.

108. Defendant **Judge Margaret Theresa Murphy (Ret.)** (sued in both **official and individual capacities**) issued judicial orders based on fabricated and conflicting identity records. These acts are alleged to constitute fraud upon the court and extrajudicial misconduct in violation of clearly established rights. She is also alleged to have overseen policies and practices that permitted systemic misuse of fraudulent documents within Philadelphia Family Court.

109. Defendant **Eric J. Assini, Esq.**, Deputy Court Administrator (sued in both **official and individual capacities**), allegedly concealed docket tampering by issuing a deceptive letter falsely characterizing the alterations as "ministerial error." These administrative acts, taken under color of law, obstructed justice, facilitated judicial misconduct, and violated the Plaintiff's due process rights. His conduct falls outside the scope of quasi-judicial immunity.

110. Defendant **Valerie A. Arkoosh**, Secretary of the Pennsylvania DHS (sued in her **official capacity** for prospective relief and **individual capacity** for damages), is responsible for overseeing Title IV-D enforcement and cooperative agreements. She allegedly failed to prevent or rectify known identity fraud in enforcement actions.

111. Defendant **Andrew Barnes**, Executive Deputy Secretary of DHS (sued in his **official capacity** for prospective relief and **individual capacity** for damages), direct administrative responsibility for the implementation and supervision of Title IV-D enforcement policies and contracts with county courts, including the Philadelphia Family Court's Domestic Relations Section. He is alleged to have participated in or

failed to prevent the misuse of fabricated identity records in federally funded enforcement actions.

**Defendant Capacities and Relief Clarification under 42 U.S.C. § 1983**

Unless otherwise stated, each individual Defendant named herein is sued in both their **individual and official capacities** as follows:

112. **Judicial Defendants** (Judges Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.)) are sued in their **individual capacities** for actions taken outside the scope of protected judicial functions—specifically, acts involving administrative fraud, docket manipulation, use of fabricated identities, and extrajudicial misconduct. These Defendants are also sued in their **official capacities solely for the purpose of prospective declaratory and injunctive relief** pursuant to *Ex parte Young*, 209 U.S. 123 (1908), to redress and prevent ongoing constitutional violations.

113. **Prosecutorial Defendants** (District Attorney Lawrence Krasner, Assistant District Attorneys Maurice Youkhanna and Lois Koscinski) are sued in their **individual capacities** for administrative and investigatory misconduct falling outside the protections of prosecutorial immunity. These Defendants are also sued in their **official capacities solely for prospective declaratory and injunctive relief**.

114. **Court Officers and Administrative Staff** (Clerk of the Philadelphia Family Court and Eric J. Assini, Esq.) are sued in both their **individual and official capacities** for non-discretionary acts under color of state law, including concealment of docket

tampering, facilitation of identity fraud, and other administrative irregularities that violated clearly established constitutional rights.

115. **Executive Officials** (Valerie A. Arkoosh and Andrew Barnes) are sued in both their **individual and official capacities**. In their official capacities, they are sued solely for **prospective injunctive and declaratory relief** related to their oversight roles within the Pennsylvania Department of Human Services (DHS) and the Bureau of Child Support Enforcement (BCSE).

116. **Government Entities and Municipal Defendants**, including the **Pennsylvania Department of Human Services (DHS)**, **Philadelphia Family Court**, and **District Attorney's Office of Philadelphia (DAO)**, are sued **only in their official capacities** and **only for prospective declaratory and injunctive relief**. Philadelphia County is sued as a **municipal defendant** under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining unconstitutional policies, customs, or practices through its Title IV-D enforcement structure.

117. The **claims for monetary damages** are brought **only against Defendants in their individual capacities**. **Claims for declaratory and injunctive relief** are brought against Defendants in their **official capacities** to prevent and remedy ongoing constitutional violations.

118. This clarification ensures compliance with *Kentucky v. Graham*, 473 U.S. 159 (1985), and provides notice regarding the nature of claims and the scope of relief sought.

**FACTUAL ALLEGATIONS**

119. The individual who initiated the underlying enforcement proceedings did so under several fraudulently fabricated identities, including "Hannah O. Edward," "Olusola H. Edward," and "Hannah Edward." These identities were not grounded in any lawful basis and were created through the use of forged documentation and material misrepresentations. The initial fabricated identity, "Hannah Olusola Edward," was constructed using a falsified Nigerian birth certificate bearing No. 9004XX, which also listed a fabricated date of birth of July 11, 19XX.

120. Subsequent variations of this fictitious identity—such as "Olusola Hannah Edward" and "Hannah Edward"—were similarly constructed and used interchangeably to perpetrate fraud across multiple jurisdictions. These were not mere aliases but wholly fictitious legal identities, never lawfully recognized or established by any competent legal authority in Nigeria, Ireland, the United States, or any other jurisdiction.

121. The applicant used these fraudulently fabricated identities to unlawfully obtain Irish citizenship, Nigerian and Irish passports, U.S. immigration documentation, and to initiate or maintain legal proceedings under false pretenses. These false identities were also used to fraudulently secure government, immigration, and financial benefits across jurisdictions.

122. The same forged Nigerian birth certificate (No. 9004XX) was also used to fabricate the identities of the applicant's purported parents—namely, "Babatunde Edward" and "Beatrice Edward." In furtherance of the fraud, the applicant abandoned her lawful surname, "Ajayi," adopted her father's first name as a fraudulent surname, and falsified her date of birth. As a result, every court order, income withholding order, or

40

judicial record issued under the names "Hannah O. Edward" or "Olusola H. Edward" was predicated on non-existent legal identities, thereby constituting a violation of due process and fraud upon the court in violation of federal law.

**Non-Exhaustive Summary of Identity Fraud and Fabricated Legal Records**

123. The applicant has operated under a series of fraudulently fabricated identities, including: **Hannah Olusola Edward**, **Olusola Hannah Edward**, **Shola Fajembola**, **Sola Fajembola**, **Hannah Olusola Ajayi Edward**, **Hannah Edward**, and other aliases. These identities—used interchangeably and without legal basis—appear across official documents in Nigeria, Ireland, the United Kingdom, and the United States. The fraudulent names were repeatedly used in connection with forged documents, including a Nigerian birth certificate and falsified parentage records. A non-exhaustive chronology of the identity-related fabrications follows:

124. **December 1988** – Identified as *"Hannah Olusola Ajayi"* on a Nigerian WAEC certificate (Candidate No. 19189XXX, Certificate No. NGSG8697XXA).

125. **February 8, 1996** – Created and used *"Hannah Olusola Edward"* on a forged Nigerian birth certificate (No. 9004XX), which was later used to fraudulently obtain Nigerian passports and Irish citizenship.

126. **June 26, 1998** – Listed as *"Olusola Edward"* on fraudulent Irish marriage certificate No. 2587XX; both parties used aliases in the sham marriage.

127. **July 20, 1998** – Identified as *"Sola Fajembola"* (maiden name *Edward*) on Irish birth certificate No. 2,582,XXX for child S.O.F.

128. **March 1, 2001** – Used *"Shola Fajembola"* on Nigerian birth certificate No. B.2/Z6/18987XXX for daughter Y.F., who was actually born in London, UK (NHS No. 712-830-XXXX).

129. **August 28, 2001** – Appeared as *"Olusola H. Fajembola"* in Irish National Visa No. IRL3489XX.

130. **November 6, 2001** – Listed as *"Olusola Hannah Fajembola"* on Nigerian passport No. A1219XXX.

131. **August 24, 2004** – Used same fraudulent identity (*"Olusola Hannah Fajembola"*) on U.S. non-immigrant visa No. 2004237381XXXX.

132. **October 11, 2007** – Divorced under alias *"Olusola Edward"* in Irish Divorce Decree No. 01909/20XX.

133. **September 21, 2010** – Listed as *"Hannah Olusola Edward"* on U.S. birth certificate No. 100180-XXXX for daughter O.S.O.

134. **September 28, 2010** – Applied for a U.S. passport for O.S.O. as *"Olusola Hannah Edward"*, but signed with fraudulent identity of *"SFajembolo/SFajembala."*

135. **October 28, 2011** – Used *"Olusola Hannah Edward"* on Nigerian passport No. A03231XXX.

136. **January 3, 2013** – Used *"Olusola Hannah Edward"* on Irish passport No. PD9445XXX.

137. **October 15, 2015** – Filed U.S. passport application No. 71587XXXX for O.S.O. under the same fraudulent identity of *"Olusola Hannah Edward"*.

138. **January 22, 2020** – Submitted Hague Convention child support application from Ireland under *"Olusola Hannah Edward"* using the Plaintiff's Social Security Number and personal identifiers as part of a fraud scheme.

139. **September 14, 2022** – Filed legal submissions via Goshen Chambers and ADA Koscinski in Philadelphia Family Court under fraudulent identities of ***"Olusola H. Edward"***, ***"Hannah Olusola Ajayi Edward"***, and ***"Hannah Olusola Edward"***.

**Conflicting Applicant's Identities in Children's Birth Records:**

140. The applicant listed different identities across her children's birth certificates:

- **For Y.F.** – Mother listed as ***"Shola Fajembola"***, father as *Rotimi Fajembola* (Nigerian certificate) — despite child's actual birth in London.

- **For S.O.F.** – Mother listed as ***"Sola Fajembola"***, father as *John Timmy Fajembola* (Irish certificate) — despite same parents as Y.F.

- **For O.S.O.** – Mother listed as ***"Hannah Olusola Edward"*** (U.S. birth certificate).

These contradictions reflect a deliberate scheme of identity fabrication used to secure immigration benefits, child support orders, and government-issued documents under false pretenses. The Plaintiff's personal information—including his SSN—was used to anchor these fraudulent proceedings and forge a false narrative to support the January 2020 Hague Convention application transmitted by the Irish Central Authority.

**Summary of Fabricated Legal Names:**

141. Across official documents, the applicant has used several inconsistent and unverified

identities, including:

- *Olusola Hannah Edward*

- *Olusola H. Fajembola*

- *Olusola Edward*

- *Hannah Olusola Edward*

- *Shola Fajembola*

- *Sola Edward*

- *Hannah Olusola Ajayi Edward*

All these variations of names are attached to one single fabricated date of birth of July 11,

19XX. None of these names have any legitimate legal basis or documentary validation in

any jurisdiction. Any use of the last name/surname **"Edward", "Fajembola", "Ajayi-**

**Edward", "Edward-Ajayi"** or the first name of **"Olusola", "Shola",** or **"Sola"** in official

documents are wholly fraudulent and part of the broader identity fraud scheme.


**Fraudulent Proceedings Under the Hague Convention**

142. The Hague Convention on the International Recovery of Child Support and Other

Forms of Family Maintenance requires accurate and truthful disclosure of essential

information, including the legal names and dates of birth of the applicant and the child,

to confirm proper jurisdiction and ensure eligibility for enforcement actions.

143. On or about January 22, 2020, the Department of Justice, Ireland, through Officer Alexander McGavin, transmitted a Hague Convention child support application to the U.S. Central Authority under Reference No. LR 10.8.1842. This application was submitted on behalf of an individual using the fraudulently fabricated identity "Olusola Hannah Edward," accompanied by a fictitious date of birth, July 11, 19XX.

144. The Plaintiff alleges that the identity "Olusola Hannah Edward" is fictitious and unsupported by any lawful documentation. The fabricated identity, date of birth, and associated documentation rendered the application materially false, jurisdictionally defective, and legally invalid under the Hague Convention.

145. The fraudulent application submitted by the Department of Justice, Ireland, relied on numerous falsified materials, including but not limited to:

- A falsified U.S. birth certificate for the minor child (O.S.O.);

- A fraudulently obtained U.S. passport for the child;

- A forged Acknowledgment of Paternity (A.O.P.) form;

- Fraudulent Irish banking documents;

- A fabricated paystub from Pfizer Pharmaceutical Ireland/Pfizer Inc.;

- Fraudulent assertions of habitual residence in Ireland.

146. The Plaintiff further alleges that the applicant used a falsified Nigerian birth certificate (No. 9004XX) and a fraudulently obtained Nigerian passport (No. A12191XX) to falsely claim habitual residence in Ireland. These fraudulent documents were then used to invoke the Hague Convention's jurisdictional mechanisms improperly.

147. The Hague Convention requires that a child's habitual residence be lawful, continuous, and genuine. Here, both the applicant's and the child's alleged habitual residence in Ireland were fraudulently constructed using falsified documents. This includes a forged U.S. birth certificate (No. 100180-XXXX) and a fraudulently obtained U.S. passport (No. 472743XXX) for the child, O.S.O.

148. The use of fraudulent documentation to assert habitual residence violates the Hague Convention's jurisdictional standards. Accordingly, any proceedings initiated under such pretense were legally defective and void ab initio.

149. In addition to the fabricated identity, the applicant falsely claimed Irish citizenship and residency through forged passports and documents, further invalidating her eligibility under the Hague Convention. The identity documents used by state and municipal actors originated from fraudulent foreign records.[10]

149a. The identity documents used by Pennsylvania DHS/BCSE, the Philadelphia Family Court, and the District Attorney's Office to initiate and sustain enforcement proceedings against the Plaintiff—including Hague Convention submissions, Title IV-D orders, and income withholding mechanisms—originated from **fraudulent foreign records**. These records, submitted in or around January 2020 via the Irish Central Authority, included a fraudulent jurisdictional claim based on fraudulent **Irish Citizenship and Irish passport**, falsified birth data, and fabricated nationality

---

[10] Paragraphs 149a–149d are included to clarify the origin, illegality, and impact of foreign-sourced identity documents used by state and municipal actors in the enforcement actions underlying the Plaintiff's claims under 42 U.S.C. § 1983.

and parental identity information that were facially inconsistent with U.S. records and unsupported by any lawful domestic process.

149b. The identity documents transmitted through DOJ Ireland included fraudulent jurisdictional claim base on fraudulent Irish passports and Irish Citizenship, false birth records, fraudulent Ireland banking information and fabricated nationality and parental identity information. Under Irish law, these documents would constitute criminal offenses—including **forgery** under Section 26 and **use of false instruments** under Section 29 of the ***Criminal Justice (Theft and Fraud Offences) Act 2001***, **fraudulent naturalization** under Section 29A of the ***Irish Nationality and Citizenship Act 2004,*** and **false registration** under the *Civil Registration Acts*. Irish courts have upheld convictions for similar conduct, including in ***Jostiel Dias Da Silva*** (Dublin Circuit Criminal Court, 2024) and ***Sivsivadze v. Minister for Justice & Equality***, [2015] IESC 53. Despite these clear indicia of fraud, the named Defendants acted under color of law in relying on these documents without lawful verification or due process.

149c. The **Passports Act 2008** in Ireland emphasizes strict identity verification for passport issuance. For example, first-time adult applicants in Ireland must have their identity verified by a member of An Garda Síochána (the national police and security service of the Republic of Ireland), and documents undergo anti-fraud checks (e.g., verification against the Public Service Identity dataset). This rigorous process helps detect fabricated identities. The Act includes provisions to protect the integrity of the passport system, including procedures for cancellation and surrender. The Act

outlines various offenses related to passports, such as making false statements or using a passport fraudulently. The Act defines offenses related to passport fraud and misuse.

149d. The use of these defective foreign documents by DHS/BCSE, the Philadelphia Family Court, and the DAO—without verification and despite jurisdictional irregularities and identity discrepancies—formed the basis of repeated due process violations, unlawful seizure of income, deprivation of informational privacy, and systemic misconduct under color of state law. This reliance on facially defective materials, transmitted by non-party foreign actors, supports the Plaintiff's claims for liability under **42 U.S.C. § 1983** and further illustrates the municipal and institutional failures that gave rise to the injuries alleged herein.

150. Jurisdiction under the Hague Convention requires the use of a legally recognized name and verified habitual residence. Pennsylvania jurisdiction, or that of any U.S. authority, cannot attach where the foundational identity information is demonstrably fraudulent.

151. The applicant identified herself as "Olusola Hannah Edward" in the Hague application, yet listed "Hannah Olusola Edward" on the child's birth certificate. These are legally distinct identities, and no lawful basis exists for attributing two different legal identities to one individual without formal legal justification. Both names are fraudulently fabricated.

152. At every hearing in the Philadelphia Family Court, the Plaintiff raised specific objections to the fabricated identities, false date of birth, and forged documents.

48

Despite this, the Court and the DAO (District Attorney's Office) willfully ignored these concerns.

153. The Defendants—DHS/BCSE, the Philadelphia Family Court, and the DAO—were notified of the identity fraud but failed to investigate. Instead, they knowingly participated in and facilitated the fraud by using multiple fabricated identities interchangeably in court filings, enforcement actions, and judicial proceedings.

154. The result was a series of fraudulent court orders and enforcement actions that violated the Plaintiff's due process rights and the Hague Convention, while simultaneously breaching U.S. constitutional and statutory protections.

155. The Defendants' failure to investigate the identity fraud enabled their continued eligibility for Title IV-D federal funding, thereby creating a conflict of interest and constituting a fraud upon the United States government.

156. Despite receiving separate notifications, each Defendant entity—DHS/BCSE, the DAO, and the Philadelphia Family Court—engaged in materially identical misconduct: submitting court filings using fraudulent identities, issuing orders based on fictitious names, and disregarding evidence of fraud. These parallel failures support an inference of a shared understanding to conceal or ignore the fraud.

157. Federal law requires that Title IV-D enforcement proceedings adhere to due process, fairness, and constitutional integrity. The U.S. government has a compelling interest in ensuring that child support outcomes are legally sound and cost-effective, as articulated in *Turner v. Rogers*, 564 U.S. 431 (2011).

158. Title IV-D agencies, including DHS/BCSE and prosecuting attorneys funded under Title IV-D, have a duty to investigate when credible allegations of identity fraud arise.

The failure to do so in this matter violated their statutory and constitutional obligations.

159. The Plaintiff alleges that sometime in 2023, despite repeated objections and formal notifications, the Philadelphia Family Court, Clerk of Court, and DAO deliberately continued using multiple fraudulently fabricated identities ("Olusola H. Edward", "Hannah O. Edward" and "Hannah Edward") interchangeably in court documents and enforcement actions, compounding the fraud and due process violations.

160. The ongoing use of fabricated identities and falsified birth information is unlawful under the laws of all relevant jurisdictions. The active participation of DHS/BCSE, DAO, and the Philadelphia Family Court in this misconduct is egregious and inexplicable.

161. The Defendants coordinated use of fabricated identities had the effect of denying the Plaintiff a fair proceeding, shielding the applicant's fraud from scrutiny, and ensuring continued access to federal funding. These actions rendered the Hague Convention application and all subsequent proceedings void for lack of jurisdiction and fundamental due process.

**Pattern of Identity Fraud, Inconsistent Legal Identities, and Governmental Complicity**

162. The Plaintiff alleges that, in connection with the fraudulent Hague Convention application, several conflicting and fabricated personal identifiers were introduced at different stages of the proceedings by the applicant, the DAO, and the Department of Justice, Ireland. These fabricated identities include, but are not limited to:

- "Olusola Hannah Edward" (also appearing as "Olusola H. Edward")

- "Hannah Olusola Edward" (also appearing as "Hannah O. Edward")

- "Hannah Olusola Ajayi Edward"

- "Hannah Edward"

163. These identities were used interchangeably and inconsistently across legal filings, court orders, and official documents without any lawful basis, evidentiary support, or documentation of a valid name change. The repeated use of conflicting fabricated identities constitutes material misrepresentation and supports the Plaintiff's allegations of identity fraud, false personation, and deliberate deception under federal and international legal standards.

164. The identities "Olusola Hannah Edward" and "Hannah Olusola Edward" are legally distinct. The inversion of first and middle names, like "John Smith" versus "Smith John" or "John O. Smith" versus "John Smith," results in separate legal identities. The use of multiple fabricated names attached to the same date of birth without judicial authorization constitutes fraud. Despite knowing this, Defendants DHS/BCSE, the Philadelphia Family Court, and the DAO allowed and perpetuated the identity inconsistencies to preserve federal funding eligibility under Title IV-D, thereby committing fraud against the United States and denying the Plaintiff due process.

165. The Plaintiff alleges that the Defendants, acting under color of state law, engaged in a coordinated scheme to defraud the U.S. government by misusing federally funded child support enforcement mechanisms under Title IV-D of the Social Security Act.

This scheme included the submission of fraudulent applications, manipulation of judicial records, use of fabricated identities, and obstruction of judicial oversight. Such conduct supports claims under 18 U.S.C. § 371 (conspiracy to defraud the United States) and 42 U.S.C. § 1983.

166. The Plaintiff further alleges that these systemic abuses not only caused him direct harm but also undermined the integrity of federal programs. The fraud resulted in the misallocation of federal resources, falsified performance metrics, and the obstruction of lawful administrative and judicial procedures. Accordingly, the Plaintiff respectfully requests referral of this matter to the U.S. Department of Justice, including its Civil Rights Division and Public Integrity Section, pursuant to 28 U.S.C. § 517 and 42 U.S.C. § 1997a, for appropriate investigative and enforcement actions.

167. The Plaintiff alleges that the named Defendants, operating under color of law and in their official capacities, coordinated to initiate fraudulent child support enforcement proceedings using fictitious identities and manipulated judicial records. These acts deprived the Plaintiff of liberty and property without due process of law and were executed through coordinated misconduct by judicial officers, administrators, and prosecutorial agents within federally funded enforcement systems.

168. The Defendants relied on knowingly inaccurate, unverified, or fabricated personal identifiers submitted through interstate and international channels to initiate enforcement actions under Title IV-D. These actions were undertaken without proper investigation or affording the Plaintiff meaningful notice or opportunity to be heard.

169. The legal name of an individual must be formally established by court order. Transposing first and middle names or adopting new surnames without legal

authorization does not amount to a lawful name change. Legal identity must be consistent across all judicial and administrative filings, particularly in child support enforcement proceedings implicating due process.

170. When the Hague Convention is enforced through the use of multiple fabricated identities, false dates of birth, or falsified documentation, while similarly situated applicants are subjected to verification, the result is an arbitrary denial of equal protection. This is particularly egregious when:

- Government agencies fail to investigate or verify identity inconsistencies;
- Foreign authorities are afforded undue deference despite submitting contradictory or false documents;
- The Plaintiff is denied meaningful participation, investigation, or recourse.

171. Between 2020 and 2023, Philadelphia Family Court records consistently reflected the applicant's name and payee identity as "Olusola H. Edward," a fabricated identity with a fabricated date of birth. In 2023, court records began to reference "Hannah O. Edward"—another fabricated identity attached to the same birth date—without a motion, hearing, or court order authorizing the change. No notice was issued to the Plaintiff.

172. Despite repeated objections and documentation submitted by the Plaintiff, the Defendants, Philadelphia Family Court, and the DAO—colluded to perpetuate identity fraud and suppress its discovery. These entities issued court orders, maintained altered dockets, and enforced judgments using inconsistent, fabricated identities in violation of due process.

173. The Defendants, including Judges Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.), and officials from DHS/BCSE and DAO, knowingly used "Olusola H. Edward" and "Hannah O. Edward" interchangeably in official court orders, docket entries, and income withholding orders (IWOs). These actions lacked legal authority and directly contributed to court record tampering and systemic due process violations. Judges acting in their administrative or non-adjudicative capacities, outside the judicial role, are not entitled to immunity for such conduct.

174. Under Pennsylvania law, income withholding orders must be supported by a valid court order and due process. Judge Murphy and the Philadelphia Family Court knowingly issued IWOs using fabricated identities without legal basis or procedural safeguards, violating the Plaintiff's constitutional rights.

175. By knowingly participating in or failing to address this fraud, Defendants DHS/BCSE, the Philadelphia Family Court, and the DAO engaged in unconstitutional conduct and fraud upon the court, resulting in the deprivation of Plaintiff's protected rights.

176. As a contracting party to the Hague Convention, the United States is obligated to meet procedural and substantive requirements including lawful identity establishment, valid jurisdiction, and proper notice. Failure to comply gives rise to redressable constitutional violations under 42 U.S.C. § 1983.

**Title IV-D Cooperative Enforcement Framework and Philadelphia County's Role**

The Plaintiff avers that:

176. The Philadelphia Family Court, including its Clerk of Court and the District Attorney's Office (DAO), operated under a cooperative agreement pursuant to Title IV-D of the Social Security Act with the Pennsylvania Department of Human Services (DHS) and Philadelphia County. Within this federally funded framework, these entities jointly engaged in child support enforcement activities. The Plaintiff alleges that, under the auspices of this agreement, the Philadelphia Family Court, Clerk of Court, and DAO issued fraudulent court orders, including Income Withholding Orders (IWOs), using multiple fraudulently fabricated identities—specifically "Olusola H. Edward" and "Hannah O. Edward"—interchangeably and without lawful basis. These actions constituted unlawful alterations of court records, facilitated knowingly fraudulent legal proceedings, and resulted in systemic due process violations. Philadelphia County, acting through its agents and as a final policymaker in connection with these cooperative functions, bears municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

177. The cooperative arrangement between DHS and Philadelphia County—governed by state and federal regulations, including 45 C.F.R. §§ 302.34 and 302.35—designates Philadelphia County and its court-based Domestic Relations Section (DRS) as the local Title IV-D child support enforcement unit. Through this delegation, Philadelphia County assumed responsibility for implementing federally mandated enforcement actions, maintaining accurate records, and ensuring that constitutional

and statutory rights were not violated in the administration of federally funded child support functions.

178. The DAO, through its child support enforcement unit, and the Clerk of Court, as record custodian, are integral components of this cooperative structure. Together with the judiciary and administrative officers of the Philadelphia Family Court, they carried out enforcement functions, recordkeeping, and communications with state and federal databases under Title IV-D. These duties imposed non-discretionary obligations to investigate fraudulent identity use, maintain the integrity of court records, and safeguard due process rights.

179. The Plaintiff alleges that Philadelphia County, acting through these departments and officers, maintained an unconstitutional custom or practice of ignoring or concealing identity fraud and fabricated records in child support cases, particularly where such misconduct would enable continued eligibility for Title IV-D incentive payments under 42 U.S.C. § 658a. This practice included the failure to verify identities used in legal filings, deliberate manipulation of docket records, and enforcement of orders lacking a lawful basis—all of which violated the Plaintiff's clearly established rights under the U.S. Constitution and federal law.

180. Further, the Plaintiff alleges that Philadelphia County failed to adequately supervise, train, or discipline its employees and agents—including court clerks, administrative staff, and DAO personnel—despite clear notice of systemic irregularities and ongoing constitutional violations. This failure to act in the face of known misconduct amounts to deliberate indifference to the Plaintiff's rights, sufficient to support

municipal liability under *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Connick v. Thompson*, 563 U.S. 51 (2011).

181. These acts and omissions, carried out under color of state law and within the scope of the Title IV-D cooperative agreement, reflect a policy, custom, or deliberate indifference on the part of Philadelphia County in its administration of federally funded child support enforcement mechanisms. The Plaintiff seeks declaratory, injunctive, and monetary relief as appropriate against Philadelphia County and its agents, consistent with established precedent recognizing municipal liability for constitutional violations stemming from the execution of official policies or the failure to correct known unlawful practices.

**Clerk's Role in Identity Fraud, Court Docket Tampering, Obstruction of Justice, and Due Process Violation**

**I. Discovery of Docket Tampering and Identity Substitution**

The complaint avers that:

182. In January 2025, the Plaintiff discovered the tampering of the court docket where the applicant's fabricated identity of "Olusola H. Edward" (H. for Hannah) was unlawfully manipulated to another fabricated identity of "Hannah O. Edward." Both identities shared the same date of birth for the same individual. Further review of court records showed that this manipulation and identity fraud commenced sometime in 2023.

183. In 2023, without notice or any legal justification, the docket was altered to reflect another fraudulently fabricated identity—"Hannah O. Edward"—constituting a serious act of forgery and fraud. The original court docket identified the applicant/payee as "Olusola H. Edward." Subsequent entries were altered to reflect a different identity without legal basis, documentation, or procedural safeguards.

184. This shift occurred despite Judge Litwin affirming the legal name as "Olusola Hannah Edward" in open court on September 1, 2022, reaffirming it in her order on November 15, 2022, and again referencing that identity in her appellate opinion issued on October 16, 2023. Judge Ford similarly adjudicated the identity "Olusola Hannah Edward" as a valid identity. This conduct constitutes fraud upon the court, public corruption, and a serious breach of judicial integrity and due process.

185. Between March 2020 and December 2022, the Philadelphia Family Court docket consistently identified the applicant/payee as "Olusola H. Edward" (Olusola Hannah Edward), reflecting the fraudulently fabricated identity used by the applicant to initiate the child support action.

## II. Role of Judges and Administrative Officers in Endorsing Fabricated Identities

180. The Plaintiff alleges that in an effort to fraudulently secure federal government funding, the Defendant DHS/BCSE, Philadelphia Family Court, DAO, and their officials assisted the applicant in concealing the identity fraud.

181. The coordinated conduct of the Defendants—including the alteration of docketed identities from "Olusola H. Edward" to "Hannah O. Edward" without any formal motion, hearing, or court order—reflects a pattern of mutual reinforcement and

alignment across agencies. Although the Plaintiff lacks access to internal communications, the consistency in how court administrators, prosecutors, and judges adopted and acted upon fraudulently fabricated identities—despite repeated objections on the record—reasonably supports an inference of joint participation in a scheme to deprive the Plaintiff of due process.

182. This alignment in conduct across different actors and offices, during the same timeframe (2022–2025), with the same legal effect (concealing identity fraud), and without legal justification, constitutes circumstantial evidence of an agreement among the Defendants. These parallel acts—taken in sequence, serving the same unlawful objective, and carried out despite the Plaintiff's ongoing objections—form the basis of a conspiracy claim under 42 U.S.C. § 1985(3).

### III. Extrinsic Fraud and Procedural Misconduct

183. The Plaintiff alleges that the Defendants, acting individually and in concert, engaged in extrinsic fraud by taking deceptive actions outside the formal adversarial process that deprived the Plaintiff of a fair opportunity to present claims, contest jurisdiction, or protect legal rights. This included, but was not limited to, the unauthorized and fraudulent alteration of the official court docket to change the name from "Olusola H. Edward" to "Hannah O. Edward" without any legal name change order, motion, hearing, or notice to the Plaintiff. Such conduct prevented the Plaintiff from raising critical objections and fundamentally distorted the nature of the proceedings.

184. The fraudulent name substitution was not the result of litigation error or mistaken ruling, but rather an external administrative manipulation that deceived the court and

misled all parties regarding the true identity of the claimant. The Plaintiff was kept in the dark about this change and denied the opportunity to contest or correct the record, thereby violating core principles of procedural fairness.

185. This form of extrinsic fraud—tampering with identity records and judicial filings behind the scenes—falls squarely within the definition articulated by the U.S. Supreme Court in *United States v. Throckmorton*, 98 U.S. 61 (1878), and by the Ninth Circuit in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), as conduct collateral to the issues in the case that prevents a party from fully participating in the litigation.

## IV. Deputy Court Administrator's Complicity and Ultra Vires Acts

186. This alteration was later falsely described by Deputy Court Administrator Eric J. Assini as a "ministerial error," despite the material legal impact of altering a party's legal identity. Knowingly writing a letter to cover up unlawful activity such as tampering with court records is engaging in fraud upon the court, acting unfairly, and dishonestly in bad faith. Mr. Assini acted outside of his legal authority in his individual and official capacities. His actions constitute due process violations and may be deemed ultra vires.

187. Mr. Assini, the DAO, and the Philadelphia Family Court failed to provide any supporting evidence or documentation to substantiate this claim, raising a strong inference of intentional concealment and administrative complicity.

## V. Legal Standards for Name Changes and Docket Alterations

188. These fraudulently fabricated identities do not appear to have been formally recognized through any legal or name change procedure. Under applicable law, individuals cannot unilaterally alter or interchange their first and middle names on official or legal documents without obtaining a formal court-ordered name change. Legal name changes must be pursued through a judicial petition process and reflected correctly in government-issued identification and records.

189. The Plaintiff alleges that the Clerk of Court unlawfully facilitated or permitted these fraudulently fabricated identity manipulations, depriving the Plaintiff of procedural notice and a fair opportunity to contest fraudulent enforcement actions, thereby violating due process and inflating eligibility for federal Title IV-D funding.

190. The Philadelphia Family Court and DAO failed to investigate and ignored all fraud notifications and facts presented at every hearing. They prevented the Plaintiff from submitting expert witness and document examiner reports that would have impeached the applicant and exposed the identity fraud. Instead, these agencies engaged in or supported identity fraud to assist the applicant in avoiding accountability under international treaty obligations and U.S. federal law.

## VI. Public Records Access Policy Violations and Due Process Breach

191. A name change recorded on a court docket is not a clerical or ministerial error. In this case, the alteration appears to have been a deliberate act by the Philadelphia Family Court, suggesting possible complicity in identity fraud. Under Pennsylvania law, a

"ministerial error"—also referred to as a non-substantive error—constitutes a minor oversight that does not affect the substance or outcome of a legal matter.

192. Changing a party's legal name is a substantive action directly affecting their legal identity. As such, it cannot be classified as a "non-substantive" or "clerical error." The Case Records Public Access Policy of the Unified Judicial System of Pennsylvania, specifically Section 11.0 – Correcting Errors in Case Records, outlines the procedure for addressing such issues. This includes notifying the parties involved, stating the factual basis for the correction, and obtaining a formal court order—none of which were followed.

193. The Clerk of Court is responsible for maintaining accurate court dockets and transparent records. Any correction, even for minor errors, must be clearly documented. Failure to report a substantive name change undermines the integrity of the judicial record and may constitute a procedural violation. When such changes are made without proper notice or judicial approval, they raise serious concerns about fraud and procedural misconduct. This conduct constitutes public corruption, case fixing, a serious breach of judicial integrity, and ultra vires acts beyond the Clerk's lawful authority.

194. A name change order is a critical legal document affecting an individual's identity and is used to update official records such as driver's licenses, passports, and Social Security records. An unexplained or undocumented alteration of this information can have serious legal and practical consequences. Between 2020 and 2023, "Olusola Hannah Edward" consistently appeared on court orders, income withholding orders, and international wire transfers, including the Hague Convention application

transmitted from Ireland by the Department of Justice. During that period, no dispute arose regarding the identity—except from the Plaintiff, who consistently challenged the fraudulently fabricated identities and fabricated date of birth at every hearing.

195. The Defendants—DAO, Clerk of Court, and Philadelphia Family Court—failed to document or justify the fictitious name change, and refused to respond to the Plaintiff's formal challenges. Their failure to act upon credible allegations of fraud, and their silence when directly confronted with evidence, suggests willful participation or, at minimum, gross negligence. The subsequent unlawful manipulation of identity in the court record constitutes fraud upon the court, public corruption, case fixing, a breach of judicial integrity, and a due process violation.

**Statute of Limitations and Tolling Due to Fraudulent Concealment and Discovery Rule**

196. The Plaintiff did not discover the fraudulent use of multiple fabricated identities, the unlawful alteration of court docket entries, or the coordinated misconduct by judicial and enforcement personnel until January 2025. This discovery only became possible after the Plaintiff gained access to previously concealed records and identified material inconsistencies that had been deliberately obscured by court officials and the District Attorney's Office (DAO).

197. The Plaintiff alleges that these civil rights violations were fraudulently concealed and could not have been reasonably discovered through the exercise of due diligence prior to January 2025. Accordingly, pursuant to the discovery rule and the doctrine of

fraudulent concealment, these claims are timely under 42 U.S.C. § 1983 and applicable Pennsylvania law.

**Tolling Based on Reasonable Reliance, Concealment, and Systemic Misrepresentation**

198. Although the Plaintiff had access to certain court orders and legal filings prior to 2025, he was unable to discern—and could not reasonably have discovered—the full extent of the fraudulent conduct, including the Philadelphia Family Court's unlawful docket manipulation and the interchangeable use of fabricated identities ("Hannah O. Edward" and "Olusola H. Edward"), until late-stage proceedings in January 2025.

199. The Plaintiff reasonably relied on the presumed integrity of the judicial process and the truthfulness of court officers. There was no apparent reason to suspect identity fraud or judicial record tampering until persistent anomalies surfaced and were cross-referenced with withheld materials. These acts were actively concealed through administrative obfuscation, selective use of names, and the mischaracterization of identity changes as "ministerial errors."

200. Because the misconduct was fraudulently concealed and only became apparent through diligent inquiry and investigation in 2025, the Plaintiff invokes the **discovery rule**, the **continuing violation doctrine**, and the **fraudulent concealment doctrine** to toll the applicable limitations period for all civil rights claims asserted herein.

**Continuing Misconduct and Concealed Identity Fraud**

201. The Defendants—including the DAO, Clerk of the Court, and Philadelphia Family Court—failed to document or justify the altered docket identity and refused to respond to the Plaintiff's formal challenges. Despite being repeatedly alerted to the use of

fraudulently fabricated identities, the court and DAO disregarded all objections, thereby suggesting willful participation or, at minimum, deliberate indifference and gross negligence.

202. The docket tampering described above was not an innocent or isolated clerical error; rather, it was a **substantial and unlawful alteration** with serious legal consequences. The Philadelphia Family Court, DAO, and Clerk of Court aided in obstructing the Plaintiff's ability to challenge fraudulent enforcement proceedings, thereby depriving him of due process and enabling the applicant's use of fabricated identities to secure federal funding under Title IV-D. This constitutes **case fixing, fraud upon the court, and a constitutional violation**.

203. The Defendants' failure to transparently document the applicant's identity manipulation and their refusal to correct the record—even after formal objections— indicates abuse of judicial process. These actions were not inadvertent but rather suggest deliberate misuse of court authority to facilitate identity fraud in violation of constitutional and statutory obligations.

**Clerk of Court's Complicity and Administrative Fraud**

204. The Plaintiff alleges that the Clerk of the Philadelphia Family Court, including Deputy Court Administrator Eric J. Assini, was aware that altering or interchanging names without legal authority is not permissible and constitutes serious procedural and legal violations. Individuals must consistently use their legal names in court. The interchanging of fraudulently fabricated identities—without legal process—

65

constitutes potential violations under 18 U.S.C. § 1028 (Identity Fraud) and supports civil liability under 42 U.S.C. § 1983.

205. The Clerk ceased to act as a neutral administrative officer and instead functioned as a **facilitator of judicial misconduct**. Despite knowing that court records reflected materially different identities ("Olusola H. Edward" and "Hannah O. Edward"), the Clerk took no action to correct the docket or investigate, thereby acting in concert with judges and DAO personnel to obscure identity fraud and obstruct justice.

206. The Defendants' conduct violated the Plaintiff's Fourteenth Amendment right to due process by failing to document or notify the Plaintiff of material docket alterations. The fraudulent use and concealment of fabricated identities, when challenged by the Plaintiff, were met with silence, resistance, or mischaracterization as "non-substantive errors"—despite the clear legal requirement that name changes in court records must be accomplished only through a formal judicial order with proper notice.

207. Under Pennsylvania law and the **Case Records Public Access Policy of the Unified Judicial System of Pennsylvania (Section 11.0 – Correcting Errors in Case Records),** substantive identity changes require documentation, court orders, and party notification. None of these were provided in this case. The alteration of the docket name was not a ministerial act but a substantive judicial manipulation carried out without legal authority.

208. A name change in the context of judicial proceedings directly impacts due process, notice, identity, and enforceability of court orders. Between 2020 and 2023, all orders, IWOs, and filings reflected the applicant's name as "Olusola Hannah Edward." Only in 2023 was the name switched to "Hannah O. Edward" without motion, justification,

or order. Despite the Plaintiff's repeated objections at every stage, the court and DAO

failed to investigate or correct the record.

209. This conduct constitutes **extrinsic fraud**, as defined in *United States v. Throckmorton*,

98 U.S. 61 (1878), and *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004), in that

it involved **deceptive acts outside the adversarial process** that deprived the Plaintiff

of the opportunity to contest jurisdiction and safeguard his rights.

210. Deputy Court Administrator Assini's attempt to classify this alteration as a "ministerial

error" is contradicted by the nature of the change and the legal impact. Knowingly

authoring such a misleading justification constitutes **fraud upon the court**, ultra vires

conduct, and a due process violation.

211. The Plaintiff respectfully requests that the Court recognize that all claims related to

the identity fraud, fraudulent docket alteration, and coordinated concealment by the

Defendants are subject to tolling under federal and state doctrines of discovery,

fraudulent concealment, and continuing violations, and are therefore timely filed.


**Judicial Misconduct, Due Process Violations and Case Fixing by Named Judges**

**Judge Leanne Litwin**

The Complaint avers that:

212. On September 1, 2022, in Case No. BC2205002 before the Philadelphia Family

Court, Judge Leanne Litwin determined the applicant's legal name to be **"Olusola**

**Hannah Edward"**, based on the Nigerian passport (No. A0323XXX), despite the

Plaintiff's contemporaneous challenges to the fabricated identity and birth date. The

hearing was procedurally deficient, rushed, and held without adequate opportunity

for the Plaintiff to be heard or present rebuttal evidence—resulting in a default judgment rendered on the basis of identity fraud and administrative manipulation. This conduct violated the Plaintiff's due process rights and appeared calculated to prioritize the Court's Title IV-D enforcement interests and assist the applicant in concealing identity fraud.

213. At a subsequent hearing on **November 15, 2022**, Judge Litwin reaffirmed her finding that "Olusola Hannah Edward" was the applicant's legal name, referencing the same Nigerian passport, as reflected in the hearing transcript at pages 6–13. However, subsequent court orders from the same Judge inconsistently referred to the applicant using alternate identities, namely "Olusola H. Edward" and later "Hannah O. Edward," without any legal justification, court order, or motion to support such a material alteration.

214. Orders dated September 1, 2022, and November 15, 2022, referenced the applicant as **"Olusola H. Edward"**, consistent with the Family Court docket in Case Nos. BC2205002 and 20-05641 between March 2020 and December 2022. These names were later altered in court orders—without explanation or legal process—to **"Hannah O. Edward"**, a separate fabricated identity with no legal basis.

215. In her **October 17, 2023**, trial court opinion to the Pennsylvania Superior Court, Judge Litwin reiterated that "Olusola Hannah Edward" was the applicant's valid legal name, based on the same Nigerian passport (No. A0323XXX). She claimed the Plaintiff failed to present credible evidence to the contrary at the September 1, 2022 hearing—a mischaracterization contradicted by the Plaintiff's continuous objections on record.

216. While Judge Litwin's opinion affirms the applicant's identity as "Olusola Hannah Edward," the Court simultaneously adopted and enforced orders under **"Hannah O. Edward,"** an identity not subject to judicial inquiry, evidentiary verification, or formal name change. The alternating use of these fabricated identities—particularly between "Olusola H. Edward" and "Hannah O. Edward"—created judicial inconsistency, procedural ambiguity, and compromised the integrity of the record.

217. On **February 6, 2024**, Judge Litwin issued a joint order with Judge Ford referring to the applicant as **"Hannah O. Edward"**, again without legal justification, motion, or hearing. This continued pattern of material alteration of identity records lacked statutory or procedural foundation and constitutes a form of identity fraud.

218. Again, on **May 2, 2025**, Judge Litwin issued a court order under the name "Hannah O. Edward," in direct contradiction to her prior rulings and appellate opinion affirming the identity as "Olusola Hannah Edward." These inconsistencies were not mere clerical mistakes but deliberate alterations without legal basis, reinforcing the Plaintiff's due process and fraud allegations.

219. Despite the Plaintiff's arguments that the applicant's official documents bore conflicting maternal names, fraudulent passports, and fabricated birth dates, Judge Litwin refused to address or remedy the fraud. The Court and the DAO ignored clear evidence of identity fraud and falsified records, depriving the Plaintiff of fair process.

220. Even accepting arguendo that the legal name was "Olusola Hannah Edward," Judge Litwin repeatedly issued orders under materially different names ("Olusola H. Edward" and "Hannah O. Edward"), without motion, hearing, or justification—

69

conduct that supports claims of administrative abuse, fraud upon the court, and denial of due process.

221. The interchangeable use of conflicting identities not only raises doubts about the validity of judicial orders and the Court's jurisdiction but also jeopardizes compliance with international obligations under the Hague Convention, where strict identity verification is fundamental. These inconsistencies rendered enforcement proceedings defective and constitutionally infirm.

222. Judge Litwin's unauthorized and concurrent use of distinct fabricated identities in official court orders is unsupported by law or fact, and constitutes **judicial misconduct, fraud upon the court, and potential violations of judicial ethics**. This conduct appears designed to obscure identity fraud and ensure continued eligibility for Title IV-D incentive funding at the expense of constitutional safeguards.

223. This pattern of misconduct by Judge Litwin constitutes **case fixing**, factual misrepresentation, and a knowing violation of the Plaintiff's due process rights. In addition to her adjudicatory role, she engaged in **administrative and non-judicial conduct**, including directing or approving alterations to the court docket outside formal proceedings. These ultra vires acts fall beyond the protection of judicial immunity.

224. On **November 15, 2022**, the Plaintiff attempted to submit **Certified Document Expert reports** exposing identity fraud. Judge Litwin denied their admission based on collateral estoppel and res judicata, relying on her earlier unilateral determination of identity without addressing newly presented evidence.

225. **Mr. Samuel Tolulope Ajayi** (the applicant's biological brother) and **Sandy Steven, CDE**, an Expert Witness and a Certified Document Examiner—were present in court, prepared to testify on the fabricated identities and forged documents. Judge Litwin denied both witnesses the opportunity to testify, violating the Plaintiff's right to present evidence and confront allegations.

226. Despite adjudicating that the applicant's name was "Olusola H. Edward," Judge Litwin subsequently issued multiple orders under the separate identity "Hannah O. Edward," which was never subject to proper evidentiary scrutiny or judicial determination.

227. In its **December 4, 2024** decision, the Pennsylvania Superior Court acknowledged discrepancies between the name used in the Hague Convention child support application and the Family Court docket, further substantiating the Plaintiff's claims of identity fraud and record tampering.

228. The Plaintiff does **not** seek reversal of any final state court judgment but instead presents this misconduct as part of a broader pattern of **due process violations, extrinsic fraud, and administrative abuse**. The suppression of evidence, inconsistent identities, and reliance on fraudulent records deprived the Plaintiff of meaningful judicial redress and violated his civil rights under federal law.

71

**Judge Holly Ford**

**Judicial Misconduct, Identity Fraud Facilitation, and Due Process Violations**

The Plaintiff further alleges:

229. The Plaintiff alleges that Judge Holly Ford of the Philadelphia Family Court, acting under color of state law in both her official and individual capacities, engaged in judicial misconduct, due process violations, and acts constituting fraud upon the court. Judge Ford repeatedly and unlawfully manipulated official court records by using multiple, inconsistent, and fraudulently fabricated identities for the same individual—specifically "Olusola H. Edward," "Olusola Hannah Edward," "Hannah O. Edward," and "Hannah Olusola Edward"—without legal justification, notice, or procedural safeguards.

230. On December 16, 2022, Judge Ford issued a court order identifying the applicant as "Olusola H. Edward."

231. On March 3, 2023, Judge Ford adjudicated that the applicant's factual and legal name was "Olusola Hannah Edward," based on purported passport documentation. She further stated on the record that the applicant's identity had been taken as "Olusola H. or Hannah Edward" for Pennsylvania Automated Child Support Enforcement System (PACSES) purposes, as documented in the transcript (03/03/2023, p. 7, ll. 6–25; p. 8, ll. 1–2).

232. Despite this adjudication, Judge Ford issued a court order the same day using the distinct identity "Hannah O. Edward," without any legal basis, contradicting her own findings.

233. On April 3, 2023, Judge Ford issued further court orders and correspondence reverting back to "Olusola H. Edward" as the applicant's identity.

234. On July 4, 2023, and August 23, 2023, Judge Ford issued court orders and correspondence identifying the applicant inconsistently as "Hannah O. Edward" and "Hannah Olusola Edward."

235. On October 17, 2023, in her trial court opinion to the Pennsylvania Superior Court, Judge Ford identified the applicant as "Hannah O. Edward," despite previously adjudicating "Olusola Hannah Edward" as the valid legal identity. No motion, evidence, or hearing supported this material alteration.

236. On February 6, 2024, Judge Ford (jointly with Judge Leanne Litwin) issued a court order identifying the applicant as "Hannah O. Edward," again without legal justification and in conflict with both judges' prior adjudications regarding the name "Olusola Hannah Edward," allegedly supported by Nigerian and Irish passports.

237. On March 4, 2025, Judge Ford issued another order identifying the applicant as "Hannah O. Edward," contradicting her March 3, 2023 adjudication and failing to provide any legal explanation for the inconsistency.

238. At the May 12, 2025 hearing (Case No. 866300106), Judge Ford acknowledged that different names— "Olusola H. Edward" and "Hannah O. Edward"—had been used interchangeably across court records without explanation, motion, evidentiary hearing, or correction. She claimed these discrepancies arose from the court's addition of an "AKA – Also Known As" designation, though no such designation was ever entered into the record, served on the Plaintiff, or supported by legal authority.

239. Deputy Court Administrator Eric J. Assini had previously described this change as a "ministerial error" in a January 13, 2025 letter, contradicting Judge Ford's subsequent claim on May 12, 2025, that "AKA" status had been applied.

240. At the hearing on May 12, 2025, the Plaintiff objected to these alterations and presented arguments showing that the identities in question were entirely fabricated. The Court rejected the objection and stated on the record: **"We recognize the same person, regardless of what the name usage is. And so, there is not a fraud," and "in court proceedings, people constantly give different names, and the name becomes 'a.k.a.' in the court records."** This was another attempt by the court to cover up the use of fabricated identities in the court proceedings.

241. These remarks reflect a knowing acceptance of fabricated identities and an unlawful departure from due process principles. The Court dismissed material identity inconsistencies without conducting an evidentiary hearing or requiring verification.

242. The Court's practice of treating fabricated names as equivalent or interchangeable— without legal basis—constitutes judicial misconduct and undermines the integrity of proceedings. See *United States v. Throckmorton*, 98 U.S. 61, 65 (1878) ("Fraud vitiates everything."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944).

243. The Plaintiff repeatedly objected and attempted to present evidence of identity fraud, including testimony from Mr. Samuel Tolulope Ajayi (the applicant's biological brother) and Sandy Steven, CDE (Certified Document Examiner). The Court denied both witnesses the opportunity to testify, depriving the Plaintiff of the right to present material evidence and confront critical fraud allegations.

244. At no time did the Defendant HOE/OHE or the DAO file a lawful name change petition, seek pseudonym authorization, or submit valid documentation establishing "Olusola H. Edward" or "Hannah O. Edward" as legally recognized identities. The court's repeated reliance on these identities—despite overwhelming evidence of fabrication and the absence of legal justification—supports a claim of identity fraud and fraud upon the court.

245. By treating contradictory identities as legally equivalent, issuing orders under inconsistent names, and dismissing objections without factual review, Judge Ford aided and abetted identity fraud. Her actions reflect administrative, non-adjudicative conduct outside the scope of judicial function and are not protected by judicial immunity.

246. Judge Ford also misrepresented the procedural status of the case on May 12, 2025, erroneously claiming that the matter had been resolved by the Pennsylvania Supreme Court. She later conceded the matter was still pending, further evidencing carelessness and a lack of factual control over the proceedings.

247. This conduct constitutes case fixing, obstruction of justice, and a violation of the Plaintiff's constitutional rights under the Fourteenth Amendment. The repeated, unjustified use of fabricated identities undermines the legal foundation of the proceedings and reflects institutional misconduct incentivized by Title IV-D funding.

**Judge Margaret Theresa Murphy (Ret.)**

**Fraud Upon the Court, Identity Misrepresentation, and Due Process Violations**

The Plaintiff states that:

248. The Plaintiff alleges that Judge Margaret Theresa Murphy (Ret.), formerly of the Philadelphia Family Court, acting under color of state law and in both her individual and official capacities, engaged in unlawful judicial misconduct and fraud upon the court by issuing court orders, Income Withholding Orders (IWOs), and related legal documents under multiple fraudulently fabricated identities, namely "Olusola H. Edward" and "Hannah O. Edward," between 2020 and 2024.

249. Judge Murphy used these distinct and mutually inconsistent identities concurrently and interchangeably in the same legal proceedings without any legal basis, without a court-authorized name change order, and without supporting documentation. These identities had no lawful recognition under the laws of the United States, Ireland, or Nigeria.

250. Between 2022 and 2024, Judge Murphy issued multiple IWOs simultaneously under both fabricated identities, thereby creating legal and factual confusion and enabling continued fraud in violation of the Plaintiff's due process rights. These orders lacked legal justification and furthered an unlawful scheme that defiled the judicial process.

251. This conduct constitutes case fixing, misrepresentation of facts, and unethical manipulation of court records, in direct violation of the Plaintiff's Fourteenth Amendment rights. By issuing orders under knowingly fraudulent names, Judge

Murphy undermined the integrity of the proceedings and created factual ambiguity that obstructed the Plaintiff's access to a fair hearing.

252. Judges are presumed to know and apply the legal requirement that parties use their correct legal names in all proceedings unless those names have been formally changed by court order and consistently reflected in official records. The deliberate and unauthorized use of multiple, fabricated identities—especially in family court and child support enforcement contexts—constitutes material misrepresentation, potentially amounting to obstruction of justice or fraud under 18 U.S.C. § 1028 and other federal statutes.

253. Judge Murphy's use of these identities, without evidentiary hearings or procedural due process, supports a finding of extrinsic fraud on the court. Her conduct, like that of Judges Litwin and Ford, enabled and perpetuated the use of fictitious identities in court records and enforcement actions, directly violating the Plaintiff's federal rights.

254. Philadelphia Family Court judges—Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.)—acted under color of state law and within a federally funded Title IV-D enforcement scheme. Their pattern of issuing legal orders under unverified, conflicting identities violated the Plaintiff's constitutional rights and constituted judicial misconduct, ethical violations, and ultra vires actions.

255. This repeated and unexplained inconsistency in judicial identification raises grave concerns regarding the integrity of the proceedings. A court that disregards its own factual findings regarding party identity, without explanation, undermines its own jurisdiction and violates litigants' rights to due process and meaningful participation.

256. As the U.S. Supreme Court has repeatedly held, the Fourteenth Amendment's guarantee of due process includes a right to fair and impartial proceedings, including the accurate identification of parties and the transparency of judicial findings. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009); *In re Gault*, 387 U.S. 1, 33 (1967).

257. Judges do not escape liability for enabling fraud by claiming ignorance. Willful blindness or deliberate disregard for identity fraud, especially when exercised under color of judicial authority, violates federal law and undermines the rule of law. The use of fabricated identities in international enforcement proceedings further triggers Hague Convention Article 22 refusal provisions for fraud, rendering such applications legally defective under UIFSA §§ 706, 708.

258. The intentional or reckless misidentification of a party—after a contrary judicial determination—constitutes fraud upon the court and a violation of due process actionable under 42 U.S.C. § 1983. See *Monroe v. Pape*, 365 U.S. 167 (1961); *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990).

259. The alteration or manipulation of identity designations in court dockets, particularly when performed without legal process or party notice, may also qualify as extrinsic fraud designed to deceive reviewing courts or manipulate jurisdictional outcomes. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant... it is a wrong against the institutions set up to protect and safeguard the public.").

260. Fraud upon the court exists when there is "a scheme to interfere with the judicial machinery itself," and it is particularly egregious where a judge facilitates or authorizes that scheme. The deliberate issuance of legal orders under fictitious identities directly implicates this doctrine.

261. These actions of Judges Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.) are not entitled to judicial immunity. Their participation in non-adjudicative, administrative misconduct—such as knowingly and intentionally issuing orders based on fabricated identities or overseeing fraud-laden enforcement proceedings without jurisdiction—falls outside the scope of judicial function and in the clear absence of all jurisdiction. See *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (limiting immunity to judicial acts within jurisdiction); *Forrester v. White*, 484 U.S. 219, 227–29 (1988) (excluding administrative acts from immunity).

262. Although the Code of Conduct for United States Judges does not create a private right of action, it remains highly persuasive in evaluating judicial impropriety and abuse of office. Canon 1 mandates that a judge "should uphold the integrity and independence of the judiciary." Canon 2 requires a judge to avoid impropriety and the appearance of impropriety in all activities and to ensure that personal, financial, or institutional interests do not compromise judicial duties.

263. Judge Murphy's conduct violated these canons and reflects a breach of ethical obligations and constitutional responsibilities. Her actions—when viewed in the context of systemic Title IV-D abuse, record manipulation, and identity fraud—support the Plaintiff's claims of judicial misconduct, constitutional violations, and fraud upon the court under federal law.

79

**Judicial Misconduct, Due Process Violations, and Case Fixing by Named Judges**

The Plaintiff alleges:

264. The Plaintiff alleges that Judges Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.), of the Philadelphia Family Court, acting under color of state law and in both their official and individual capacities, knowingly and willfully engaged in judicial misconduct, fraud upon the court, and case manipulation. Their conduct directly facilitated ongoing and systemic violations of the Plaintiff's constitutional rights, including denial of due process, enforcement based on fabricated identities, and administrative abuse within a federally funded Title IV-D enforcement scheme.

265. The actions of Judges Litwin, Ford, and Murphy were not judicial in nature and are therefore not protected by absolute judicial immunity. These acts included non-adjudicative, ministerial, and administrative misconduct—such as knowingly issuing and signing orders under fabricated identities, failing or refusing to verify party identity upon repeated and credible challenge, directing alterations of court dockets and records outside of adjudication, and suppressing evidence and filings that exposed identity fraud and procedural irregularities. Such conduct was undertaken in clear absence of jurisdiction and outside the traditional judicial role, rendering the acts ultra vires and actionable under 42 U.S.C. § 1983.

**DAO's Participation in Identity Fraud and Fraud Upon the Court**

## I. Systematic Use of Fabricated Identities in Court Filings

266. The Philadelphia District Attorney's Office ("DAO"), through District Attorney **Lawrence S. Krasner**, Assistant District Attorney **Lois Koscinski**, and Assistant District Attorney **Maurice Youkhanna**, knowingly filed pleadings and enforcement documents under the alternating, fraudulently fabricated identities **"Hannah O. Edward", "Olusola H. Edward" and "Hannah Edward."** These names were used interchangeably and concurrently, without any lawful name-change order or evidentiary basis, thereby depriving the Plaintiff of due process and violating state and federal law.

## II. September 14, 2022 False Filing and Witness Intimidation

267. On **September 14, 2022**, ADA Koscinski—purporting to verify the DAO's response to Plaintiff's Preliminary Objections—filed a sworn submission that:

    a) accused the Plaintiff of forgery and misrepresented his citizenship;

    b) maligned key witness **Samuel Tolulope Ajayi** by alleging an unsubstantiated attempted-murder indictment in Nigeria; and

    c) repeated personal data the DAO knew (or should have known) was fabricated.

268. No evidentiary support accompanied these claims. The allegations served to intimidate Mr. Ajayi, chill his testimony, and prejudice the Court against the Plaintiff.

### III. DAO's Subsequent Retraction and Identity Switching

269. In a sworn **May 5, 2023** attestation, ADA Koscinski disclaimed personal knowledge of the September 14 statements, asserting they were "client-authored." She simultaneously altered the defendant's name in that attestation from **"Olusola H. Edward"** to **"Hannah Olusola Edward,"** further advancing the identity-fraud scheme.

270. The DAO also tendered an unverified letter from Nigerian firm **Goshen Chambers**—itself rife with contradictory names ("Hannah Olusola Ajayi Edward," then "Hannah Olusola Edward") and lacking any legal name-change decree. The DAO's reliance on this letter, then its later disavowal, underscores knowing complicity in identity fraud.

### IV. Continuing False Statements and Record Manipulation (2023-2025)

271. ADA Youkhanna, appearing for the applicant in the Pennsylvania Superior Court (No. 2144 EDA 2023) and later in the Supreme Court of Pennsylvania, alternated among **"Olusola H. Edward," "Hannah O. Edward,"** and **"Hannah Edward."** These shifts—mirrored in Family Court dockets manipulated from "Olusola H." to "Hannah O." without any order—demonstrate a deliberate pattern of misrepresentation that obstructed the Plaintiff's defense and confused reviewing tribunals.

### V. Statutory and Ethical Violations

- **18 U.S.C. § 1001** (False Statements) – DAO filings contained knowingly false assertions.

- **18 U.S.C. § 1512(c)(2)** (Obstruction of Justice) – The identity switches and witness-intimidation tactics obstructed the Plaintiff's ability to present evidence.

- **18 U.S.C. § 1028(a)(7)** (Identity Fraud) – Use of multiple fabricated identities in court documents.

- **Fed. R. Civ. P. 11(b) & ABA Model Rule 3.3** – DAO attorneys verified filings without factual basis, later disavowing them.

Case law supports sanctions for such conduct: *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989); *Pope v. FedEx Corp.*, 138 F.3d 1363 (11th Cir. 1998).

## VI. Prosecutorial Acts Outside Absolute Immunity

272. The misconduct was **administrative and investigatory**, not advocative: filing unverified documents, manipulating SSNs, blocking challenges to jurisdiction, and concealing fraud. Such non-judicial activities fall outside absolute prosecutorial immunity and are actionable under **42 U.S.C. § 1983**.

## VII. Resulting Harm to Plaintiff

273. By leveraging fabricated identities, the DAO triggered erroneous IWOs, unlawful tax-refund offsets, credit-bureau reports, a lien on the Plaintiff's home, and passport denial—causing ongoing financial and reputational injury.

**Public Interest, Title IV-D Funding Abuse, and Fraud Against the United States**

274. **Financial-Motivation Allegation.** The Plaintiff alleges that Judges **Leanne Litwin, Holly Ford, and Margaret Theresa Murphy (Ret.)**; the Philadelphia Family Court (including its Clerk's Office); the Pennsylvania Department of Human Services, Bureau of Child Support Enforcement (**"DHS/BCSE"**); and the Philadelphia District Attorney's Office (**"DAO"**)—through DA **Lawrence S. Krasner**, ADA **Lois Koscinski**, and ADA **Maurice Youkhanna**—knowingly pursued and enforced a fraudulent child-support action for the primary purpose of securing federal incentive payments available under Title IV-D of the Social Security Act, **42 U.S.C. § 651 et seq.**

275. **Pattern of Due-Process Abuse.** To obtain or retain Title IV-D funds, these Defendants:

   (a) used fabricated identities ("Hannah O. Edward," "Olusola H. Edward" and a fabricated date of birth of July 11, 1970) despite repeated objections;

   (b) manipulated dockets—changing the applicant's name without motion, notice, or order; and

   (c) suppressed exculpatory evidence and obstructed witness testimony—thereby denying the Plaintiff due process.

276. **Federal Incentive Structure.** Title IV-D reimburses states for a percentage of enforcement costs and awards **performance-based bonuses** tied to the quantity of cases processed. 42 U.S.C. §§ 654, 658a; 45 C.F.R. §§ 302.34, 303.107. The larger the

caseload, the greater the federal reimbursement—creating a financial motive to push questionable cases through the system.

277. **Refusal to Investigate Fraud.** Even after receiving notice of forged passports, inconsistent names, and tampered records, DHS/BCSE, the DAO, and the Philadelphia Family Court continued to treat the case as valid—ensuring their eligibility for ongoing federal incentive dollars.

278. **Misuse of Federal Funds.** By processing knowingly fraudulent claims, these agencies:

   a) misrepresented case data to the U.S. Office of Child Support Enforcement,

   b) triggered unlawful IWOs and federal tax-refund offsets against the Plaintiff, and

   c) drew down federal funds under false pretenses, in violation of 18 U.S.C. § 666 (theft/bribery in federally funded programs) and the False Claims Act, 31 U.S.C. §§ 3729–3733.

279. **Coordinated Court Record-Tampering.** Court personnel altered the docket from "Olusola H. Edward" to "Hannah O. Edward" (and vice-versa) with no legal basis, concealing identity fraud and protecting continued Title IV-D funding.

280. **Conspiracy Allegation.** The same actors—judges, clerks, DHS/BCSE officials, and DAO lawyers—took parallel steps (identity swapping, docket edits, suppression of evidence) during 2022-2025, supporting an inference of agreement to defraud the United States and deprive the Plaintiff of constitutional protections. See **18 U.S.C. § 371** (conspiracy to defraud the United States).

281. **Public-Interest Exception to Laches.** Because the scheme involves misuse of federal funds and fraud on the court, equitable defenses such as laches are unavailable. *EEOC v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69 (3d Cir. 1984); *United States v. Summerlin*, 310 U.S. 414 (1940).

282. **Superior-Court Acknowledgment.** In **Superior Court opinion, Dec. 4 2024 (No. 2144 EDA 2023)**, the appellate court noted the presence of multiple identities in the docket—confirming tampering and substantiating the Plaintiff's fraud claims.

283. **Continuing Violation.** The misconduct is ongoing: altered dockets remain in place, fraudulent IWOs continue, and federal reimbursements tied to the case still accrue—triggering the **continuing-violation doctrine** for statute-of-limitations purposes.

284. **Public Harm and Federal Oversight.** The Defendants' conduct amounts to a deliberate misuse of taxpayer funds and an assault on the integrity of federally administered child-support programs. Such systemic abuse warrants referral to the U.S. Department of Justice and HHS-OIG including its sub-agencies—the Administration for Children and Families (ACF), the Office of Child Support Enforcement (OCSE), and the Office of Child Support Services (OCSS) for investigation under **28 U.S.C. § 517** and **42 U.S.C. § 1997a**.

**Key Legal Authorities Cited**

- 18 U.S.C. § 666 – Theft/bribery concerning programs receiving federal funds

- 31 U.S.C. §§ 3729–3733 – False Claims Act liability for submitting false statements to obtain federal money

- 42 U.S.C. §§ 651, 654, 658a – Title IV-D funding and incentive structure

- *EEOC v. A&P*, 735 F.2d 69 (3d Cir. 1984) – Public-interest bar to laches

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) – Fraud on the court

- *United States v. Summerlin*, 310 U.S. 414 (1940) – Sovereign not bound by laches

**Ongoing Harm and Procedural Concealment**

285. The Plaintiff did not discover the fraudulent manipulation of the court docket and use of fabricated identities until **January 2025**, despite having raised identity fraud concerns for several years. The concealment of these alterations deprived the Plaintiff of a meaningful opportunity to object or seek redress in a timely manner.

286. The **Defendants—DHS/BCSE, the Philadelphia Family Court and its Clerk, the First Judicial District of Pennsylvania, and the District Attorney's Office (DAO)**—have continued to enforce fraudulent child support orders and legal instruments based on fabricated identities, despite their knowledge of serious due process and procedural defects.

288. These enforcement actions remain ongoing and include, without limitation:

- **Unlawful wage and bonus garnishments**;

- **Liens on the Plaintiff's property**;

- **Denial of U.S. passport and international travel restrictions**;

- **Unlawful state and federal tax refund intercepts**; and

- **Reputational and credit-related harm** due to the unauthorized use and dissemination of false personal records.

289. The Defendants have **knowingly failed** to investigate or rectify these errors. They continue to enforce fraudulent orders without verifying the legal identity of the applicant or providing the Plaintiff with notice, documentation, or procedural safeguards. This pattern of misconduct constitutes **ultra vires action**, systemic negligence, and knowing facilitation of fraud.

290. The failure to notify the Plaintiff of altered records, to correct fabricated identity data, or to provide a procedural avenue for redress represents a **deliberate indifference** to constitutional rights, in violation of *Monell v. Dept. of Social Services*, **436 U.S. 658 (1978)**.

291. As a direct result of the Defendants' policies, practices, and omissions, the Plaintiff continues to suffer:

- **Severe financial harm**;
- **Emotional distress**;
- **Loss of liberty interests**; and
- **Deprivation of due process and equal protection** guaranteed under the **Fourteenth Amendment**.

292. The **continuing violation doctrine** applies here, as the challenged enforcement actions are not isolated, discrete incidents, but rather part of an ongoing pattern of unconstitutional conduct—including court record manipulation, fabricated identity

use, and ongoing financial enforcement. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

293. The **statute of limitations has not yet accrued**, as each day that the Defendants rely on and act upon fraudulent documents constitutes a **new and continuing violation** of the Plaintiff's rights. The unlawful conduct is ongoing, unremedied, and actively enforced as of the filing of this Complaint.

294. Furthermore, courts recognize the applicability of the continuing violation doctrine to claims involving **governmental concealment, procedural obstruction, and judicial fraud**, particularly where the harm continues and no corrective action has been taken. See *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980); *Cowell*, 263 F.3d at 293–94.

**Pattern and Practice of Constitutional Violations by Government Officials**

295. The Plaintiff alleges that officials within the **Philadelphia Family Court**, the **Pennsylvania Department of Human Services (DHS)** and its **Bureau of Child Support Enforcement (BCSE)**, and the **Philadelphia District Attorney's Office (DAO)** engaged in coordinated conduct that deprived him of his constitutional rights, including **procedural and substantive due process** under the **Fourteenth Amendment**.

296. This misconduct included the **repeated use of fabricated and conflicting identities**—namely, "Olusola H. Edward" and "Hannah O. Edward"—across judicial proceedings, Income Withholding Orders (IWOs), and enforcement actions. Such

actions resulted in material misrepresentation, record falsification, and court docket tampering that reflected a systemic failure to uphold the rule of law.

297. The violations described herein were not isolated events. Rather, they were part of a **sustained and systemic pattern and practice** within these government institutions, carried out under color of state law and pursuant to official policy, custom, or deliberate indifference.

298. The unconstitutional conduct of DHS and BCSE officials was not attributable to negligence or clerical error. Instead, it arose from **institutional policies, omissions, and directives** promoted or condoned by senior DHS officials, including **Secretary Valerie A. Arkoosh** and **Executive Deputy Secretary Andrew Barnes**, both named in their official and individual capacities.

299. Under their leadership, DHS and its Title IV-D enforcement units promulgated procedures that:

- Prioritized federal funding compliance and performance benchmarks over constitutional safeguards;

- Enabled the use of **unverified, inconsistent, or fabricated identities** in official enforcement actions;

- Failed to incorporate or enforce **basic identity verification protocols**; and

- Refused to investigate or remedy known violations, despite receiving formal notice from the Plaintiff and others.

300. These policies and customs **fostered a culture of impunity**, where due process violations were operationally normalized in service of Title IV-D performance goals, including the receipt of federal financial incentives under **42 U.S.C. § 654**.

301. The **failure to investigate identity discrepancies, disregard of forged documents, and suppression of procedural challenges** demonstrate a **deliberate indifference** to constitutional rights and a reckless disregard for the Plaintiff's liberty, property, and reputation.

302. Despite receiving repeated and credible notice of identity fraud and procedural violations, individual actors—including **judges, ADAs, DHS officials, and court clerks**—refused to take corrective action or even inquire into the irregularities. Instead, they **facilitated, perpetuated, or ignored** the ongoing fraud, thereby compounding the Plaintiff's injury.

303. The following Defendants participated in, or failed to stop, these unconstitutional acts:

- **Eric Assini**, Deputy Court Administrator and Clerk of the Family Court, who permitted or facilitated **court docket manipulation**;

- **District Attorney Larry Krasner, ADA Lois Koscinski**, and **ADA Maurice Youkhanna**, who **submitted or approved materially false filings** under fraudulent identities;

- **DHS/BCSE personnel**, who issued and enforced **IWOs based on fraudulent applications** and fabricated legal identities.

91

304. With respect to the DAO, the actions of ADA Koscinski, ADA Youkhanna, and DA Krasner were taken under **color of state law** and pursuant to municipal policy, practice, or custom. Accordingly, **Philadelphia County** is liable under ***Monell v. Department of Social Services*, 436 U.S. 658 (1978)** for constitutional violations committed by its employees in the administration of Title IV-D enforcement actions.

305. The **Office of the District Attorney of Philadelphia** served as a **final policymaker for Philadelphia County** in matters involving Title IV-D enforcement pursuant to its Cooperative Agreement with the **First Judicial District**, as authorized by **42 U.S.C. § 654(6)** and **45 C.F.R. §§ 302.34, 303.107**. The DAO's failure to comply with obligations under **Section IV(d) of the Agreement** and **45 C.F.R. § 307.13 (confidentiality and data accuracy requirements)** reflects a **policy or custom of deliberate indifference**, supporting municipal liability for systemic fraud, identity manipulation, and due process violations.

306. The conduct of Defendants—**Judges Litwin, Ford, and Murphy (Ret.), DA Krasner, ADAs Koscinski and Youkhanna, Clerk of Philadelphia Family Court,** and **Deputy Administrator Assini**—violated **clearly established constitutional rights** of which a reasonable official would have known, including:

- The Plaintiff's right to **procedural due process**;

- The right to **freedom from identity-based fraud and misrepresentation** in court;

- The right to be free from **unlawful seizure of property** through fabricated legal instruments.

307. These acts were **intentional, malicious, and executed outside the discretionary bounds of their lawful authority**. As such, the Defendants are not entitled to **qualified immunity**, which does not shield public officials who knowingly violate constitutional or statutory rights. See *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990); *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002).

**Equitable Tolling**

308. The Plaintiff first became aware of the **unlawful alteration of the court docket** and the **use of multiple fraudulently fabricated identities**—specifically, "Olusola H. Edward" and "Hannah O. Edward"—in official court records and legal proceedings **in January 2025**. Until that point, the Plaintiff was unaware of the time, nature, or scope of the unlawful acts committed by the Defendants.

309. The fraudulent identity usage and court record tampering were **deliberately concealed** from the Plaintiff by the Philadelphia Family Court, the DAO, and DHS/BCSE. These circumstances constitute **extraordinary concealment** and warrant **equitable tolling** of any applicable statute of limitations. See *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (holding that where fraud prevents timely suit, equitable tolling is appropriate).

310. The Plaintiff exercised due diligence throughout, repeatedly raising concerns about identity fraud and procedural irregularities. However, the Plaintiff **lacked access to key records and information** necessary to understand or assert the full scope of

constitutional and statutory violations until those violations were revealed through independent investigation and court filings in 2025.

311. The Plaintiff alleges that the Defendants jointly and fraudulently concealed their actions—including identity fraud, forged and inconsistent legal identities, court record tampering, and judicial abuse—from both the Plaintiff and relevant federal authorities. These actions culminated in the unlawful initiation and enforcement of child support proceedings under the **2007 Hague Convention**, without the Plaintiff's consent, knowledge, or opportunity to contest the jurisdiction or factual foundation of those proceedings. This constituted a denial of due process and a deprivation of rights under color of law.

312. Accordingly, the Plaintiff's claims under **42 U.S.C. § 1983** are timely filed and are **not barred by any statute of limitations**. The Defendants' ongoing use and enforcement of court orders grounded in fraud and identity manipulation—without affording the Plaintiff proper notice, hearing, or adjudication—constitute continuing violations of the Plaintiff's **due process** and **equal protection rights** under the **Fourteenth Amendment**.

313. The **doctrine of laches** is inapplicable. The Defendants' own **wrongful conduct— including concealment, fraud, record tampering, and obstruction of discovery— directly caused the Plaintiff's delayed filing**. Courts have repeatedly held that where delay is caused by the defendant's own misconduct, laches cannot bar suit. See *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–34 (1959); *Holmberg*, 327 U.S. at 396–97.

94

314. Moreover, the **"fruit of the poisonous tree" doctrine** applies. All judicial orders, garnishments, and administrative determinations flowing from the initial fraudulent use of fabricated identities and falsified documents are **derivative of constitutionally defective acts**. These consequences are therefore inadmissible and legally void. See *Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920). The continued reliance on these tainted proceedings violates the Plaintiff's rights and perpetuates unlawful government conduct.

315. The Defendants are **estopped from asserting prejudice** due to any delay. Their own coordinated obstruction, false filings, and suppression of exculpatory evidence **prevented earlier discovery and filing** of the Plaintiff's claims. See *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 681–82 (2014) (laches does not bar timely claims where defendants contributed to delay).

316. The Plaintiff reserves the right to amend, sever, or realign legal claims and factual allegations based on jurisdictional determinations and further factual development. The Plaintiff respectfully requests all equitable and legal relief as detailed in the **Prayer for Relief**.

**Clearly Established Law and the Defendants' Lack of Qualified Immunity**

317. The constitutional rights implicated in this action—including the right to procedural due process under the Fourteenth Amendment, the right to fair and impartial judicial proceedings, and the right to be free from judicial fraud and administrative tampering with court records—were **clearly established** at all relevant times.

95

318. It is well established that a person may not be deprived of liberty or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).

319. The Third Circuit has unequivocally held that "a public official may not knowingly use false evidence or suppress exculpatory information to secure a civil or criminal judgment." *See Halsey v. Pfeiffer*, 750 F.3d 273, 295–96 (3d Cir. 2014).

320. It is clearly established that the use of fabricated evidence, materially false documentation, or manipulated identity records in judicial proceedings constitutes a **violation of due process**. *See Wilkinson v. Austin*, 545 U.S. 209, 226 (2005).

321. The United States Supreme Court has further held that **altering court records** or maintaining knowingly false docket entries may violate the right to a fair tribunal and is **not shielded by judicial or qualified immunity**. *See Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980); *United States v. Lanier*, 520 U.S. 259, 271 (1997) (finding that qualified immunity does not apply where general constitutional principles make the unlawfulness of conduct "obvious").

322. In the Third Circuit, it is also clearly established that **administrative or supervisory officials may be held liable under 42 U.S.C. § 1983** if they affirmatively participate in a constitutional violation or **knowingly acquiesce in its continuation**. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

323. The Defendants, including judicial officers, court clerks, prosecutors, and administrative personnel, **knowingly used or facilitated the use of fabricated**

identities in official court proceedings, **ignored the Plaintiff's repeated objections**, and **permitted unlawful identity changes** without motion, notice, hearing, or factual justification. These actions violated **clearly established constitutional law** and deprived the Plaintiff of fundamental rights.

324. As a result, the Defendants are **not entitled to qualified immunity**. Their actions were neither judicial in nature nor objectively reasonable under existing legal standards, and they acted **outside the scope of their lawful authority** by engaging in fraud, concealment, and constitutional violations under color of state law.

**Compelled Use of a Fraudulent Birth Certificate—Ongoing Due-Process Violations and Harm to the Minor Child**

The Plaintiff states that:

325. On **September 1, 2022**, in *Philadelphia Family Court* (Case No. BC2205002), the Plaintiff petitioned to amend his child's U.S. birth certificate after discovering that the mother's name and date of birth on the record were **materially false**. The certificate is the very document DOJ Ireland transmitted on **Jan. 22 2020** in its fraudulent Hague-Convention application (Ref. No. LR 10.8.1842). At the hearing, the applicant (appearing by video) admitted she held **no original birth record** for herself; instead, she relied on a **self-authored affidavit** routed through the Nigerian Embassy to obtain a Nigerian passport reflecting the same false identity.

326. The record further shows the applicant's own sibling (Mr. Samuel Tolulope Ajayi) filed a sworn affidavit averring that the applicant's birth name is **"Hannah Olusola**

Ajayi," not" **Hannah O. Edward**", **"Olusola H. Edward" or "Hannah Edward"** and the date of birth of **July 11, 19XX** associated with these fabricated identities is also fabricated. The Document Expert and Expert Witness reports declined by the Philadelphia Family Court (Judge Litwin on November 15, 2022) also determined that any use of the last name **"Edward" and "Fajembola"** or first name of **"Olusola" is fraud.** The Family Court declined to consider the evidence—citing reasons including formality (lack of exemplification)—and dismissed the petition, so the fraudulent data remained on the child's birth record.

327.  That tainted certificate has been deployed to:

- trigger Title IV-D enforcement and interstate IWOs;
- support the 2007 Hague Convention filing; and
- interfere with the Plaintiff's parental rights.

The result is a continuing violation of both the child's and the Plaintiff's rights to identity integrity and due process. States have a legal obligation to record and preserve **vital records,** including accurate birth certificates. A state's refusal or failure to issue a valid birth certificate—or knowingly issuing a false one—may violate equal protection if it arbitrarily treats a child differently than others based on illegitimate or fraudulent factors. All states, including Pennsylvania, are required under **42 U.S.C. § 654(13)** and 45 C.F.R. § 302.15 to maintain accurate records for purposes of child support enforcement. Misuse of a falsified birth certificate by state actors may amount to **state-created danger** or **extrinsic fraud,** especially when used to deprive a child or parent of rights, such as custody or support.

328. Despite formal notice, **Philadelphia Family Court, the named judges, DHS/BCSE, DAO officials, and DOJ Ireland** have **knowingly upheld** the falsified certificate. Their objective: maintain jurisdiction, preserve Title IV-D incentive funding, and shield the underlying fraud.

329. Consequently, the minor child **O.S.O.** is compelled to live under a false legal identity, while the Plaintiff is forced to litigate and comply with orders rooted in fabricated records—producing ongoing legal, financial, and emotional harm.

330. This compulsion constitutes deliberate indifference and violates clearly established rights:

- **Familial integrity and identity** are protected liberty interests. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

- State actors may not "deliberately misrepresent a parent's relationship to a child." *Cox v. Roskelly*, 359 F.3d 1105, 1112 (9th Cir. 2004).

- Knowingly falsifying records to obtain or retain federal funds violates federal law. *Gonzalez v. City of Castle Hills*, 2021 WL 3616090 (W.D. Tex. 2021).

- Under *Troxel v. Granville*, 530 U.S. 57 (2000), the Supreme Court acknowledged the deep constitutional importance of familial relationships. ("The interest of parents in the care, custody, and control of their children… is perhaps the oldest of the fundamental liberty interests recognized by this Court."). Although Troxel focuses on parental rights, it reinforces the mutual familial integrity interest between parent and child.

- Falsifying or misrepresenting a child's birth identity implicates the **right to familial integrity** and **personal identity**, both protected by substantive due process. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause... against unwarranted state interference."); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing "a fundamental liberty interest of natural parents in the care, custody, and management of their child").

331. The refusal to correct the record—despite proof of fraud—illustrates an official **policy or custom** of prioritizing federal funding over constitutional duty, supporting Monell liability and individual-capacity claims.

332. Under **"fruit-of-the-poisonous-tree"** principles, every enforcement order or financial offset flowing from the falsified certificate is constitutionally defective and must be voided. *Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920).

**Timeliness and Public-Interest Considerations**

333. Proceeding **pro se**, the Plaintiff has organized these complex allegations into discrete counts as required by Rule 8 (a). Any perceived verbosity reflects the extraordinary breadth of the fraud scheme.

334. The Defendants' anticipated laches defense fails. Their own **fraudulent concealment**—altered dockets, forged identities, discovery obstruction—prevented earlier filing. See *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959).

335. The misconduct is **ongoing**: fraudulent Income Withholding Orders (IWOs), tax offsets, and negative credit reporting and so on remain in force today. Equitable doctrines therefore toll any limitations period, and courts routinely refuse laches where, as here, public interests in due process, informational privacy, and integrity of federally funded programs are at stake.

## CAUSES OF ACTION / LEGAL CLAIMS

The Plaintiff affirms that this action is brought exclusively under 42 U.S.C. § 1983 and related federal statutes for constitutional violations committed under color of state law. This Complaint asserts causes of action for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. The Plaintiff expressly reserves the right to pursue separate but related actions based on distinct legal theories—including fraud, identity-based misconduct, and statutory privacy violations—against different defendants or under alternative legal frameworks, such as common law, civil RICO, or international privacy statutes. These related claims are not duplicative and are asserted independently to preserve jurisdictional clarity, procedural integrity, and judicial economy.

### Capacity of Defendants and Title IV-D Enforcement Context

The following Counts are asserted against the named Defendants in both their individual and official capacities, as applicable.

Judicial Defendants are sued in their **individual capacities** to the extent their conduct was **non-judicial in nature**, undertaken in the **clear absence of jurisdiction**, or constituted **fraud upon the court**. They are sued in their **official capacities** solely for the purpose of seeking **prospective**

335. The misconduct and constitutional violations are **ongoing**, including issuance and relying on fraudulent identity records, court orders based on fabricated identities, unlawful Income Withholding Orders (IWOs), and improper enforcement actions such as tax offsets, adverse credit reporting – warrants equitable tolling, as courts routinely decline to apply laches where, as here, the public interest in due process, informational privacy, and the integrity of federally funded programs is at stake.

## CAUSES OF ACTION / LEGAL CLAIMS

The Plaintiff affirms that this action is brought exclusively under 42 U.S.C. § 1983 and related federal statutes for constitutional violations committed under color of state law. This Complaint asserts causes of action for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. The Plaintiff expressly reserves the right to pursue separate but related actions based on distinct legal theories—including fraud, identity-based misconduct, and statutory privacy violations—against different defendants or under alternative legal frameworks, such as common law, civil RICO, or international privacy statutes. These related claims are not duplicative and are asserted independently to preserve jurisdictional clarity, procedural integrity, and judicial economy.


**Capacity of Defendants and Title IV-D Enforcement Context**

The following Counts are asserted against the named Defendants in both their individual and official capacities, as applicable.

Judicial Defendants are sued in their **individual capacities** to the extent their conduct was **non-judicial in nature**, undertaken in the **clear absence of jurisdiction**, or constituted **fraud upon**

**the court**. They are sued in their **official capacities** solely for the purpose of seeking **prospective declaratory and injunctive relief**. The Plaintiff does **not seek to overturn or relitigate** any final state court judgment, but rather challenges unlawful conduct that violated federal rights **during and beyond adjudicatory proceedings**.

The Defendants from the **Philadelphia District Attorney's Office (DAO)**—including the District Attorney and Assistant District Attorneys—are sued in their **individual capacities** for actions taken in an **administrative and investigatory capacity**, under a **cooperative agreement** executed pursuant to the federal **Title IV-D child support enforcement program**. These actions, including the **transmission, use, and enforcement of fraudulent identity records**, were undertaken **outside the scope of protected prosecutorial discretion**. DAO officials are also sued in their **official capacities** to the extent that **prospective injunctive relief** is sought.

The Defendants from the **Pennsylvania Department of Human Services (DHS)**—including those acting through **intergovernmental cooperative agreements** with the **Domestic Relations Section of the Philadelphia Family Court** and the **County of Philadelphia**—are sued in their **individual capacities** for knowingly participating in the enforcement of **fraudulently fabricated identity records** and **materially false filings**. They are sued in their **official capacities** solely for the purpose of **injunctive and declaratory relief** to halt ongoing constitutional violations.

Officials of the **Philadelphia Family Court**—including **clerks, court administrators, and judicial officers**—acted pursuant to **Title IV-D cooperative enforcement agreements**, and are sued in their **individual capacities** for non-discretionary, non-judicial actions including:

- the **unlawful manipulation and alteration of court records**;

102

338. Forged birth certificates, passports, affidavits, and other materially false documents were introduced into legal proceedings, relied upon by judicial and administrative officers, and accepted without scrutiny or procedural safeguards.

339. The Plaintiff was denied meaningful notice, the opportunity to object, present material evidence, or be heard in a fair tribunal—hallmarks of procedural due process under the Fourteenth Amendment.

340. The underlying proceedings—including those involving Title IV-D child support enforcement and Hague Convention filings—relied on falsified identity information and tampered court records. These acts were undertaken knowingly and systemically by multiple state actors and agencies.

341. As part of this broader scheme, the Philadelphia Family Court, through its Clerk's Office and/or in collaboration with judicial officers acting outside their judicial capacity, unlawfully altered the official court docket by replacing the party name "Olusola H. Edward" with "Hannah O. Edward" birth associated to a single fabricated date of birth of July 11, 19XX This change was executed without a formal motion, legal name change, court order, hearing, or notice to the Plaintiff.

342. The Plaintiff received no opportunity to object to this administrative alteration. The substitution of identities on the docket materially impacted the Plaintiff's ability to raise jurisdictional and service-related defenses and enabled the enforcement of orders based on fictitious identities.

343. This unauthorized docket tampering constitutes a direct violation of the Plaintiff's constitutional right to procedural due process and reflects a broader pattern of administrative abuse and extrajudicial interference with access to fair proceedings.

344. The Defendants' actions—taken under color of law and pursuant to official policy or custom—deprived the Plaintiff of protected liberty and property interests without legal justification, including his right to a fair hearing, financial property, and reputational standing.

345. Although the underlying misconduct began prior to 2020, the Plaintiff did not and could not have discovered the falsified records and concealed identity alterations until January 2025, due to the Defendants' deliberate suppression and concealment of critical information. Equitable tolling and the continuing violation doctrine apply.

346. The conduct at issue was not a technical or procedural error, but rather a deliberate, arbitrary, and conscience-shocking misuse of governmental authority that violated clearly established constitutional rights, including:

- The Fourteenth Amendment right to procedural and substantive due process;

- The right to be free from fraudulent enforcement proceedings and administrative deception;

- The Fourth Amendment right to be free from unreasonable seizures (e.g., unlawful garnishments); and

- The Eighth Amendment right to be free from excessive fines and penalties.

339. With respect to the District Attorney's Office, DA Krasner, and ADAs Koscinski and Youkhanna, the challenged acts were not prosecutorial in nature, but administrative or fraudulent acts undertaken outside the scope of protected immunity. These included approval of false filings, concealment of identity-based fraud, and participation in administrative enforcement mechanisms under the Title IV-D program.

340. The Plaintiff's claims arise from well-settled constitutional principles, not subject to discretionary interpretation or qualified immunity. Defendants knowingly engaged in conduct that violated clearly established law and cannot now invoke immunity for acts of fraud, deception, or due process deprivation.


**COUNT II - Violation of Procedural and Substantive Due Process Under the Fourteenth Amendment – Coerced Participation and Use of Fabricated Identity**

**Legal Basis:** 42 U.S.C. § 1983; U.S. Const. amend. XIV

**Defendants**: *Individual Defendants from the District Attorney's Office and Judiciary (in their personal capacities); Philadelphia County (Monell liability), as applicable*

341. The Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

342. This Count arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 for violations of the Plaintiff's procedural and substantive due process rights stemming from his coerced participation in proceedings founded on knowingly fabricated identity records and falsified legal documentation.

343. At all relevant times, the Plaintiff repeatedly objected—verbally, in writing, and in open court—to the use of falsified identity records associated with a fabricated legal name, false date of birth, and fictitious parental identity attributed to Defendant HOE/OHE.

344. Despite these consistent objections, Defendants from the District Attorney's Office (DAO), including ADAs acting under administrative enforcement authority, and members of the judiciary proceeded with child support enforcement actions and judicial rulings under color of law, knowingly relying on the materially defective identity records.

345. The Plaintiff's participation in these proceedings was not voluntary but coerced under threat of contempt, incarceration, wage garnishment, and additional sanctions. Compliance was demanded under circumstances constituting legal duress (*vi coactus*), thereby depriving the Plaintiff of a meaningful opportunity to challenge the identity fraud or decline participation in a procedurally tainted process.

346. The misconduct by the DAO and judicial actors was not isolated or inadvertent. It reflected a deliberate pattern of ignoring credible evidence of identity fraud, refusing to permit expert testimony, suppressing material evidence, and maintaining the enforcement posture of Defendant HOE/OHE for institutional and financial purposes, including preservation of performance-based federal incentives under Title IV-D of the Social Security Act.

347. As a result, the Plaintiff was denied essential due process protections, including:

a) Proper notice and confirmation of the true identity and legal status of the opposing party;

b) An opportunity to contest the authenticity of fraudulent identity documents;

c) Access to an impartial tribunal; and

d) Protection from compelled compliance with unlawful court orders and falsified obligations.

348. Philadelphia County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as these constitutional violations resulted from a custom, policy, or practice of Title IV-D enforcement carried out through unverified identity records, administrative coercion, and judicial overreach. The enforcement framework was implemented through cooperative agreements between the County, the District Attorney's Office, and the Domestic Relations Section of the First Judicial District.

349. These Monell-implicating policies were executed under color of state law and maintained despite actual knowledge of due process violations and fabricated identity enforcement schemes.

350. As a direct and proximate result of this misconduct, the Plaintiff suffered substantial injuries including deprivation of liberty, reputational harm, emotional distress, financial loss, and ongoing constitutional violations.

351. These claims do not seek to relitigate or overturn any final state court judgment. Rather, they arise from and challenge discrete, independently actionable constitutional

violations that occurred during and beyond adjudicatory proceedings and which are redressable under 42 U.S.C. § 1983.

## COUNT III - Violation of Equal Protection Rights

**Legal Basis:** 42 U.S.C. § 1983; U.S. Const. amend. XIV

**Defendants:** *All Defendants (as applicable)*

352. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

353. This Count arises under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

354. The Plaintiff was treated differently from similarly situated individuals by Defendants who knowingly accepted false identity documentation, disregarded formal objections, and failed to enforce standard verification protocols required under federal and state law.

355. Despite submitting documentary evidence, expert witness reports, and sworn affidavits challenging the identity fraud, the Plaintiff's submissions were ignored or dismissed without proper review, while the contradictory, unsupported identity claims of Defendant HOE/OHE were accepted without scrutiny or adjudication.

356. The Plaintiff was systematically denied access to procedural safeguards and legal remedies that were afforded to other litigants, including:

a) access to evidentiary hearings;

b) the right to call witnesses;

c) fair adjudication of identity disputes; and

d) an impartial forum free from administrative tampering.

357. This disparate treatment lacked any rational basis, and was not justified by any compelling or legitimate governmental interest. Rather, it reflected arbitrary and discriminatory enforcement practices motivated by institutional interests, including federal performance-based funding under Title IV-D.

358. The Plaintiff alleges that the conduct of Defendants—including judicial officers, court administrators, Title IV-D enforcement agents, and DAO officials—was deliberately indifferent, selectively applied, and executed under color of state law.

359. The unequal treatment described herein deprived the Plaintiff of the equal protection of the laws, as guaranteed by the Fourteenth Amendment, and directly contributed to the Plaintiff's unlawful deprivation of liberty and property interests, reputational harm, and loss of access to due process.

360. These actions were not isolated or inadvertent. They constituted a conscious policy of favoring unverified identity claims tied to enforcement metrics, while suppressing challenges brought by the Plaintiff and denying him equal recourse through the legal system.

361. The Plaintiff further alleges that such actions constitute a pattern of arbitrary and conscience-shocking governmental misconduct in violation of well-settled constitutional principles. These included:

110

a) the right to equal protection under the Fourteenth Amendment;

b) the right to be free from unlawful seizure and financial penalties under the Fourth and Eighth Amendments; and

c) the right to administrative and judicial proceedings free from fraud and discrimination.

362. The Defendants from the District Attorney's Office, including DA Krasner, ADA Koscinski and ADA Youkanna, were not performing protected prosecutorial functions but acted in an administrative and investigatory capacity related to child support enforcement under cooperative agreements. Their conduct is not entitled to absolute immunity.

363. These claims rest on well-settled federal constitutional rights, and are not subject to discretionary immunity or good faith defenses, as the misconduct involved deliberate discrimination and continued reliance on knowingly falsified records.


**COUNT IV - Unlawful Seizure of Property**

> **Legal Basis:** 42 U.S.C. § 1983; U.S. Const. amend. IV
>
> **Defendants:** *All Defendants (as applicable)*

364. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

365. This Count arises under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983, based on the unlawful seizure of the Plaintiff's property, including wages, tax refunds, and other financial assets.

366. The Defendants knowingly initiated and enforced income withholding orders (IWOs), wage garnishments, tax refund offsets, and liens based on judicial and administrative orders that were procured through materially false identity records and fabricated legal documents.

367. These enforcement actions were executed without valid legal authority, without prior notice to the Plaintiff, and without any meaningful opportunity for the Plaintiff to be heard.

368. No valid or adjudicated judgment supported the seizures, and the orders issued were based on unverified or fraudulent identity submissions involving fabricated identities—namely, "Hannah O. Edward", "Olusola H. Edward", "Hannah Edward" and fabricated date of birth of July 11, 19XX—that were never lawfully adjudicated or properly introduced into the record.

369. These actions lacked probable cause and failed to meet the Fourth Amendment's standard for reasonable governmental seizure of private property.

370. The seizures were further carried out without compliance with basic procedural safeguards, including verification of party identity, valid service of process, and independent judicial review of the underlying claims. The Defendants acted in concert under color of state law to effectuate these takings for enforcement and funding purposes.

112

371. As a direct and proximate result of these unconstitutional seizures, the Plaintiff suffered significant financial loss, loss of liberty interest in his income, and reputational harm, without recourse to an impartial or procedurally adequate forum.

372. The Plaintiff did not and could not have discovered the falsified records and concealed actions that gave rise to this claim until January 2025, due to the deliberate suppression of material identity information, court record tampering, and obstruction of access to legal remedies by court personnel and enforcement officials.

373. Defendants from the District Attorney's Office, including DA Krasner, ADA Koscinski and ADA Youkanna, were not performing protected prosecutorial functions, but rather engaged in administrative and investigatory enforcement under Title IV-D cooperative agreements. These actions are not subject to prosecutorial immunity.

374. These claims rest on clearly established constitutional rights, including the right to be free from unlawful seizure and financial deprivation without due process or probable cause. The Defendants' actions are not shielded by qualified immunity and are actionable under 42 U.S.C. § 1983.

**COUNT V - Excessive Financial Penalties**

  **Legal Basis:** 42 U.S.C. § 1983; U.S. Const. amend. VIII

  **Defendants:** *All Defendants (as applicable)*

375. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

376. This Count arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983, based on the imposition and continued enforcement of excessive financial penalties against the Plaintiff without lawful authority or adjudicated justification.

377. The Defendants, acting under color of law, imposed and enforced garnishments, wage seizures, tax refund offsets, and other financial penalties derived from orders issued under fabricated and unverified identity records—including "Hannah O. Edward", "Olusola H. Edward", "Hannah Edward" and fabricated date of birth of July 11, 19XX —without affording the Plaintiff due process or adequate opportunity to contest the underlying validity of those obligations.

378. The financial penalties imposed were not based on lawful judicial findings and bore no rational relationship to any legitimate or adjudicated support obligation. These penalties were disproportionate in scope and impact, and were derived from materially fraudulent court filings and administrative enforcement acts.

379. The Defendants utilized automated and coordinated Title IV-D enforcement mechanisms—such as income withholding orders and federal tax intercept programs—to perpetuate garnishments and penalties without any ongoing judicial oversight, individualized review, or consideration of the Plaintiff's objections or supporting evidence.

380. The Plaintiff's repeated efforts to contest these penalties and challenge the underlying fraud were ignored or suppressed by court officials, enforcement personnel, and prosecutorial actors operating under Title IV-D cooperative enforcement authority.

114

381. These actions collectively violated the Plaintiff's clearly established right under the Eighth Amendment to be free from excessive fines and financial penalties not proportionate to any lawful adjudicated obligation.

382. Defendants from the District Attorney's Office, including DA Krasner, ADA Koscinski and ADA Youkanna, were not acting in a protected prosecutorial capacity. Their roles in transmitting, supporting, or failing to investigate the fraudulent filings and fabricated identities were administrative, investigatory, or otherwise outside the scope of protected advocacy and are not entitled to immunity.

383. As a direct and proximate result of the Defendants' actions, the Plaintiff suffered financial deprivation, reputational harm, emotional distress, and the ongoing enforcement of illegal and unconstitutional monetary penalties.

## COUNT VI - Fraud, False Claims, and Misrepresentation

**Legal Basis:** 31 U.S.C. § 3729 (False Claims Act); Predicate Offenses under 18 U.S.C. §§ 1001, 1028, 1031, 1341, 1343, 1512, 1519; Civil RICO – 18 U.S.C. §§ 1961–1968[11]

**Defendants:** *All Defendants (as applicable)*

384. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

---

[11] These statutes are referenced solely as predicate acts under RICO and the False Claims Act and are not pled as independent causes of action.

385. This Count arises from a continuing and coordinated scheme of fraud, misrepresentation, and unlawful concealment carried out by the Defendants—acting individually and collectively as part of a federally funded enforcement structure under Title IV-D of the Social Security Act.

386. The Defendants knowingly submitted and relied upon forged or materially falsified documents—including fabricated pay stubs, false identity records, fraudulent jurisdictional claim (based on fraudulent Irish Citizenship and Irish Passport), altered U.S. birth certificates, fraudulent passport information, and paternity acknowledgments—that were false, misleading, and knowingly submitted for use in judicial and administrative proceedings.

387. These knowingly false representations were transmitted by means of U.S. mail, wire communications, and electronic filing systems—both domestically and internationally—thereby constituting predicate acts of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343.

388. False claims were submitted to secure federal performance-based funding under Title IV-D through the U.S. Department of Health and Human Services (HHS), despite the presence of knowingly fabricated jurisdictional bases, including the false attribution of maternity, forged identity documents, and misrepresentation of the Plaintiff's legal obligations. The **National Vital Statistics System** (administered by HHS/CDC in conjunction with state vital records offices) mandates the issuance of legitimate birth records based on certified medical and parental documentation.

389. These acts also constituted the knowing use of false writings and altered public records under 18 U.S.C. §§ 1001, 1028, 1031, 1512, and 1519, and support civil liability under the False Claims Act, 31 U.S.C. § 3729 et seq., for the knowing submission of fraudulent claims to the United States.

390. While the Plaintiff does not seek to enforce criminal statutes or assert a private right of action under the referenced criminal provisions, these statutes serve as predicate offenses in support of the Plaintiff's civil claims, including claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.

391. The unlawful acts described above were not isolated but were part of a coordinated pattern of racketeering activity committed over the course of several years, with the common purpose of enforcing illegitimate child support obligations and concealing identity fraud in order to secure federal funding and protect jurisdictional authority.

392. The Plaintiff suffered concrete and particularized injury—including but not limited to wage garnishments, denial of U.S. passport renewal, reputational injury, tax offsets, and loss of access to credit—as a direct result of this fraudulent scheme.

393. The Defendants collectively functioned as an enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of interconnected actors from government agencies, courts, and public offices who acted as a continuing unit for the purpose of implementing the fraudulent scheme and suppressing the Plaintiff's objections and evidence.

394. The Defendants from the Philadelphia District Attorney's Office, including ADA Lois Koscinski and ADA Youkanna, were not engaged in protected prosecutorial functions.

Their acts were administrative and fraudulent in nature and fall outside the scope of any immunity doctrine.

395. The Defendants' conduct, including the continued enforcement of fraudulently procured court orders and reliance on falsified records, supports civil claims for fraud, submission of false claims to the U.S. government, and RICO predicate offenses.

## Count VII – Civil RICO Violations

**Legal Basis:** 18 U.S.C. §§ 1961–1968

**Defendants:** *All Defendants*

396. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

397. This Count arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The Plaintiff alleges that the Defendants conducted and participated in the affairs of an enterprise through a pattern of racketeering activity that resulted in direct injury to the Plaintiff's property and constitutional rights.

398. The enterprise, as defined in 18 U.S.C. § 1961(4), consisted of judicial officers, administrative staff, DHS/BCSE officials, DAO personnel, and foreign actors— including DOJ Ireland—who functioned as a continuing unit to execute and conceal a fraudulent identity-based child support enforcement scheme.

399. The predicate acts forming this pattern of racketeering include, but are not limited to:

- **Wire Fraud (18 U.S.C. § 1343):** Transmission of falsified identity documents and judicial orders electronically to domestic and foreign agencies in furtherance of the scheme;

- **Mail Fraud (18 U.S.C. § 1341):** Use of U.S. mail to transmit fabricated court orders, legal filings, and wage garnishment notices;

- **Identity Fraud (18 U.S.C. § 1028):** Fabrication and use of multiple false identities, including Hannah O. Edward", "Olusola H. Edward", "Hannah Edward" and fabricated date of birth of July 11, 19XX without lawful adjudication;

- **Obstruction of Justice (18 U.S.C. §§ 1512, 1519):** Suppression of material evidence, tampering with witness testimony, and alteration of court records;

- **Extortion Under Color of Official Right (18 U.S.C. § 1951):** Coercive enforcement of financial penalties and wage garnishments through fraudulent use of state authority;

- **Deprivation of Rights Under Color of Law (18 U.S.C. § 242):** Knowingly violating the Plaintiff's due process, privacy, and informational rights through unlawful enforcement mechanisms.

400. Specifically, the Defendants caused the Family Court docket to be fraudulently altered—replacing "Olusola H. Edward" with "Hannah O. Edward"—without legal process, hearing, or order. This was a foundational act that enabled fabricated identity records to be accepted as legally valid and used to justify enforcement actions.

401. These altered records were used in electronic filings, court mailings, and cross-border communications under the Hague Convention, constituting repeated acts of mail and wire fraud in furtherance of the fraudulent enterprise.

402. On or about September 14, 2022, Defendants DA Larry Krasner and ADA Lois Koscinski submitted a knowingly false court filing alleging that the Plaintiff's material witness, Mr. Samuel Tolulope Ajayi, was subject to criminal investigation in Nigeria and had threatened harm to the opposing party. This false allegation was designed to silence a critical witness and obstruct judicial proceedings, constituting **witness tampering under 18 U.S.C. § 1512(b)**.

403. The Defendants also engaged in **extortion under color of official right**, using fabricated legal orders to extract child support payments, intercept tax refunds, and garnish wages—despite lacking valid jurisdiction or lawful authority.

404. The predicate acts occurred continuously over multiple years and involved coordination across agencies, jurisdictions, and even international borders, satisfying the "pattern" requirement under 18 U.S.C. § 1961(5).

405. As a direct and proximate result of these acts, the Plaintiff suffered injury to property, including financial losses, wage garnishment, reputational harm, and denial of access to fair proceedings, as required for standing under **18 U.S.C. § 1964(c)**.

406. The Plaintiff does not seek to enforce any criminal statutes directly. The above provisions are cited solely as predicate acts in support of civil liability under **18 U.S.C. §§ 1962(c) and 1962(d)**.

407. The conduct described herein was administrative, investigatory, and coercive in nature—not protected by judicial or prosecutorial immunity. DAO personnel, Family Court officials, DHS/BCSE agents, and international actors functioned in a non-judicial and non-discretionary capacity to execute the fraudulent scheme.

## Count VIII – RICO Conspiracy

**Legal Basis:** 18 U.S.C. § 1962(d) – Conspiracy to Violate 18 U.S.C. § 1962(c)

**Defendants:** *All Defendants*

408. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

409. The Defendants knowingly conspired to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), by agreeing to participate in an unlawful enterprise aimed at defrauding the Plaintiff through the use of falsified identity records, fabricated legal instruments, and the manipulation of domestic and international enforcement mechanisms.

410. In furtherance of this conspiracy, the Defendants engaged in overt acts including:

- Use of interchangeable and unverified names "Hannah O. Edward," "Olusola H. Edward," and "Hannah Edward" in official proceedings without lawful adjudication;

- Issuance of judicial orders under these fabricated identities by Judges Litwin, Ford, and Murphy (Ret.);

- Filing of knowingly false documents by DA Krasner, ADA Koscinski, and ADA Youkhanna to sustain and legitimize fraudulent enforcement proceedings.

411. On or about September 14, 2022, DA Krasner and ADA Koscinski submitted a sworn court filing falsely alleging that Plaintiff's key witness, Samuel Tolulope Ajayi, was under criminal investigation in Nigeria and had attempted to harm the opposing party. This was done to intimidate, discredit, and silence exculpatory testimony—constituting an overt act of witness tampering in furtherance of the conspiracy.

412. These false and retaliatory allegations violated 18 U.S.C. §§ 1512(b) (witness tampering), 1001 (false statements), and 242 (deprivation of rights under color of law).

413. On November 15, 2022, despite receiving expert reports contesting the authenticity of documents, Judge Litwin refused to admit or consider this evidence, invoking res judicata. She nonetheless continued to issue orders using the fraudulent identity "Hannah O. Edward," facilitating the conspiracy and suppressing material evidence.

414. Each Defendant knowingly contributed to the enterprise by creating, concealing, transmitting, or enforcing fraudulent records and engaging in retaliation, obstruction, or misrepresentation to suppress challenges to the scheme.

415. The September 14, 2022 witness tampering incident was not isolated. It exemplified a coordinated effort by prosecutors and judicial officers to obstruct justice and preserve fraudulent enforcement proceedings—constituting predicate racketeering acts under 18 U.S.C. §§ 1341, 1343, 1512, 1028, and 242.

416. The conspiracy included acts such as unlawful docket alterations by court personnel substituting "Hannah O. Edward" for "Olusola H. Edward" without motion, order, or process. These changes were later transmitted via electronic filings, certified mail, and

cross-border correspondence to further the enterprise and extract financial and jurisdictional gains—supporting predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

417. All Defendants either had actual knowledge of or were willfully blind to the unlawful aims of the conspiracy, and each agreed—expressly or implicitly—to facilitate its execution through coordinated misconduct, in violation of 18 U.S.C. § 1962(d).

418. The Plaintiff suffered direct financial, reputational, and constitutional harm as a result of these conspiratorial acts and is entitled to civil remedies under 18 U.S.C. § 1964(c), including treble damages, costs, reasonable attorney's fees, and injunctive relief.

419. Certain Defendants, including but not limited to Judges Leanne Litwin, Holly Ford, and Margaret Murphy (Ret.); the Clerk of the Philadelphia Family Court; District Attorney Lawrence Krasner; and Assistant District Attorneys Maurice Youkhanna and Lois Koscinski, aided and abetted the RICO enterprise by knowingly providing material assistance, concealment, or procedural cover for unlawful acts undertaken by co-conspirators. This included the use and enforcement of fraudulent identity records, tampered court dockets, fabricated legal filings, and the administrative suppression of identity-related objections.

420. These Defendants—though not always the primary actors—had actual or constructive knowledge of the fraudulent nature of the enforcement actions and affirmatively assisted in their continuation. Their conduct constitutes aiding and abetting under civil conspiracy doctrine and supports their liability under 18 U.S.C. § 1962(d) for having knowingly agreed to and advanced the objectives of the RICO enterprise.

421. Aiding and abetting conduct included, but was not limited to: failing to investigate known identity inconsistencies; ratifying or concealing improper docket alterations; endorsing or processing forged documents; suppressing objections or exculpatory evidence; the use of fabricated identities, including "Hannah O. Edward" and "Olusola H. Edward," interchangeably by judicial officers to issue court orders without lawful adjudication; and the submission of legal filings by DA Krasner, ADA Koscinski, and ADA Youkhanna under inconsistent and unverified identities for Defendant HOE/OHE. These acts materially advanced the conspiracy and deprived the Plaintiff of due process, honest government services, and the right to have his lawful identity recognized and protected by officials acting under color of law.

422. These claims do not seek to relitigate or reverse final state court judgments, but challenge distinct, actionable conduct under RICO and § 1983.

423. DA/ADAs – The prosecutorial Defendants are not protected by immunity, as the acts alleged were administrative, investigatory, retaliatory, and fraudulent in nature, and performed outside the scope of protected advocacy.


**Count IV – Judicial Misconduct and Fraud Upon the Court**

      **Legal Basis:** 42 U.S.C. § 1983

      **Defendants:** *Judges Leanne Litwin, Holly Ford, Margaret Murphy (Ret.); Family Court Clerical and Administrative Officials*

424. The Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

425. This Count arises from non-judicial and administrative misconduct undertaken by the Defendant judges and Family Court officials under color of state law. The actions described—including docket tampering, use of fabricated identity records, and suppression of material evidence—were performed outside the scope of legitimate adjudicative functions and are not protected by judicial immunity.

426. The Defendant judges knowingly issued court orders based on identity records that were facially inconsistent, never verified through legal process, and challenged by the Plaintiff in sworn filings and expert reports. These orders were entered without any judicial determination of identity or notice to the Plaintiff of the altered legal identity of the opposing party.

427. On November 15, 2022, the Plaintiff submitted expert reports identifying substantial discrepancies in the applicant's documents used to obtain and enforce prior court orders. Judge Litwin rejected the admission of this expert evidence on grounds of collateral estoppel and res judicata, while continuing to issue orders under the unverified identities of name "Olusola H. Edward" and "Hannah O. Edward" interchangeably—identities that were never verified, subjected to adjudication or lawful legal change procedures.

428. The Defendant judges failed to conduct any hearing to determine the authenticity of the identity documents at issue and knowingly relied on a falsified administrative record. The refusal to allow expert testimony or weigh material identity evidence constituted suppression of exculpatory information and denial of a fair hearing.

429. Defendant judges and Family Court officials permitted and relied upon a fraudulently altered court docket in which "Hannah O. Edward" was substituted for "Olusola H. Edward" without motion, court order, or legal basis. This alteration, executed by clerical or administrative personnel, was knowingly adopted into subsequent court orders, enforcement documents, and proceedings by the Defendant judges.

430. These actions deprived the Plaintiff of his ability to challenge jurisdiction, raise defenses, and contest identity-based enforcement. They materially affected the legal process and were undertaken in bad faith to shield fabricated identity records from scrutiny.

431. The acts at issue—identity falsification, court docket tampering, and suppression of expert evidence—do not involve adjudicative decision-making and fall outside the protections of judicial immunity. See *Forrester v. White*, 484 U.S. 219, 227 (1988) (distinguishing judicial from administrative acts for purposes of immunity); *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (judicial immunity does not apply where a judge acts in the clear absence of jurisdiction).

432. The Defendant judges acted in concert with administrative personnel and knowingly perpetuated a pattern of judicially endorsed fraud. These acts rendered the court an instrument of fraud upon the Plaintiff and violated his due process and equal protection rights under the Fourteenth Amendment.

433. The misconduct described was not a procedural error, but a conscience-shocking abuse of administrative and judicial authority. It violated the Plaintiff's constitutional rights, including the right to due process, the right to a fair hearing, and the right to be free

from unlawful seizures and excessive financial penalties under the Fourth and Eighth Amendments.

434. Although the misconduct began prior to 2023, the Plaintiff could not have discovered the falsified records or administrative concealment until January 2025, due to deliberate obstruction and suppression by Family Court officials and Defendant judges.

435. These claims arise under well-established constitutional principles and are not subject to good-faith immunity or judicial discretion defenses. The Plaintiff seeks prospective relief and damages against the Defendant judges in their individual capacities to the extent their actions were non-judicial and ultra vires, and official capacity relief under *Ex parte Young*, 209 U.S. 123 (1908), for ongoing constitutional violations.

## Count X – Fraud by Clerk and Deputy Court Administrator

**Legal Basis:** 42 U.S.C. § 1983

**Defendants:** *Clerk of Philadelphia Family Court; Deputy Court Administrator Eric J. Assini*

436. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

437. This Count arises from the unlawful and nonjudicial administrative misconduct of the Clerk of the Philadelphia Family Court and Deputy Court Administrator Eric J. Assini, whose actions—executed under color of law—constituted fraud upon the court and violations of the Plaintiff's constitutional rights under the Fourteenth Amendment.

127

438. The Clerk of Court knowingly altered official docket entries to substitute the name "Olusola H. Edward" with "Hannah O. Edward" without any motion, judicial order, lawful name change, or statutory basis. This falsification of the court record was material and deliberate. It misrepresented the identity of a party, obscured jurisdictional defects, and enabled the enforcement of fraudulent court orders through the use of fabricated identity records.

439. These administrative acts were not ministerial in nature but instead constituted extrinsic fraud, carried out outside the adjudicative process and in the absence of any procedural safeguards. The docket alteration deprived the Plaintiff of notice, a meaningful opportunity to object, and the ability to challenge critical jurisdictional and service-related defects.

440. The fraudulent docket entry was later used to justify official court orders, wage garnishments, and Title IV-D enforcement actions. It was transmitted via official mailings, electronic filings, and cross-jurisdictional communications, and served as a foundation for broader constitutional violations described in Counts IX through XIV. These acts materially advanced a continuing scheme of identity fraud, procedural obstruction, and judicial concealment.

441. Deputy Court Administrator Eric J. Assini, when notified of the falsified docket and its material impact on the Plaintiff's rights, issued a misleading response characterizing the fraud as a mere clerical or ministerial error. This communication was false, and it was intended to deflect accountability and shield court personnel and judges from scrutiny or correction. The Plaintiff requested evidence of the ministerial

error, none was provided to date. And the ministerial error was not documented in the court docket.

442. Both the Clerk and Deputy Administrator acted with actual knowledge of the misrepresentations and the resulting harm to the Plaintiff. Their actions directly contributed to the concealment of fraud, the obstruction of corrective filings, and the denial of procedural fairness.

443. The Plaintiff's attempts to correct the record and raise objections were repeatedly blocked by administrative roadblocks, omissions, and deliberate suppression of evidence. These actions furthered the misuse of public authority for unlawful ends.

444. The conduct at issue was purely administrative, nonjudicial, and not entitled to absolute or qualified immunity. It involved deliberate acts of falsifying court records and issuing misleading communications in furtherance of a known fraud.

445. These actions constituted a conscience-shocking abuse of administrative authority and support liability under 42 U.S.C. § 1983 for violations of the Plaintiff's clearly established constitutional rights, including the right to due process and equal protection under the Fourteenth Amendment, and the right to be free from unreasonable seizures and excessive penalties under the Fourth and Eighth Amendments.

446. These claims are based on well-settled federal rights and are not subject to discretionary or good-faith defenses.

**Count XI – Fraudulent Administration and Abuse of the Title IV-D Program**

**Legal Basis:** 42 U.S.C. § 1983; False Claims Act (31 U.S.C. § 3729)

**Defendants:** *Pennsylvania Department of Human Services (DHS), Philadelphia Family Court, District Attorney's Office (DAO) Title IV-D Enforcement Agents*

447. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

448. This Count arises from the unlawful and fraudulent administration of the federally funded Title IV-D child support enforcement program by Defendants acting under color of state law. The Defendants, including DHS, Philadelphia Family Court, and Title IV-D enforcement agents from the DAO, knowingly relied on fabricated identity records and altered court dockets to initiate and maintain IV-D actions against the Plaintiff.

449. Specifically, the Defendants—through administrative and judicial personnel— fraudulently substituted the name "Hannah O. Edward" for "Olusola H. Edward" on the official court docket without any lawful name change petition, court order, or legal basis. This alteration was executed without notice, adjudication, or statutory authority, and it formed the factual and procedural foundation for subsequent child support enforcement proceedings.

450. These false records were used to support the initiation and continuation of Title IV-D enforcement actions, including wage garnishments, income withholding orders, and intergovernmental referrals under the Hague Convention. The falsified records were transmitted through interstate and international channels, entered into IV-D case

management systems, and incorporated into state and federal compliance reporting used to secure incentive payments and federal reimbursements pursuant to 42 U.S.C. §§ 658 and 658a.

451. The use of fabricated identity records, fraudulent docket entries, and knowingly false compliance certifications constituted deliberate misrepresentations in violation of federal law. These actions not only deprived the Plaintiff of due process but also corrupted federal enforcement databases and resulted in the unlawful receipt of federal funds.

452. DHS and the Philadelphia Family Court failed to supervise or discipline agents and judicial personnel engaged in the falsification of identity records, the manipulation of enforcement data, and the concealment of jurisdictional and procedural defects. This systemic failure of oversight enabled the continuation of fraud and supported an institutionalized practice of misreporting case information to federal agencies.

453. Title IV-D enforcement agents, operating under cooperative agreements between Philadelphia County and DHS/BCSE, knowingly submitted false compliance data and relied on fraudulent court records to maintain performance metrics and qualify for federal reimbursements. These actions were not protected by prosecutorial discretion or immunity, as they were administrative in nature and undertaken in furtherance of a fraudulent scheme.

454. As a direct and proximate result of these actions, the Plaintiff was subjected to unlawful income seizures, reputational harm, and procedural violations. The misuse of Title IV-D enforcement mechanisms to extract financial resources based on

131

falsified identities constitutes a violation of clearly established constitutional rights and supports liability under 42 U.S.C. § 1983.

455. Although the misconduct giving rise to this claim began before 2023, the Plaintiff did not and could not have discovered the falsified records or concealed administrative actions until January 2025, due to deliberate suppression by court personnel and government agencies.

456. The conduct alleged in this Count was administrative, fraudulent, and carried out under color of law. It is not entitled to judicial or prosecutorial immunity and supports claims under both § 1983 and the False Claims Act.

## Count XII – Individual Defendants' Due Process Violations and Fraud on the Court

**Legal Basis: 42 U.S.C. § 1983**

**Defendants:** *District Attorney Larry Krasner, ADA Lois Koscinski, ADA Maurice Youkhanna, Deputy Court Administrator Eric J. Assini*

457. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

458. This Count arises from non-prosecutorial, administrative, and investigatory misconduct committed by the District Attorney's Office (DAO) and court administration personnel under color of state law. The actions described herein— including docket tampering, identity falsification, and suppression of material

132

records—were non-adjudicative in nature and fall outside the scope of absolute immunity.

459. On September 14, 2022, ADA Lois Koscinski and DA Larry Krasner submitted a sworn response containing materially false allegations that were later contradicted by the record. This filing falsely alleged that the Plaintiff's material witness (Mr. Samuel Tolulope Ajayi) would face criminal indictment abroad and had engaged in violent conduct—claims made without evidentiary support and designed to obstruct testimony central to the Plaintiff's defense.

460. ADA Maurice Youkhanna, along with DA Krasner, knowingly used inconsistent and fabricated names—including "Hannah O. Edward," "Hannah Edward," and "Olusola H. Edward"—interchangeably in pleadings and appellate submissions. These submissions were made with actual or constructive knowledge of the underlying identity fraud and with the intent to confuse judicial fact-finding and suppress challenges to jurisdiction and legal identity.

461. The DAO, acting through Krasner, Koscinski, and Youkhanna, knowingly relied on and perpetuated the fraudulent alteration of the official Family Court docket, which had substituted the name "Hannah O. Edward" in place of "Olusola H. Edward" without any legal process, motion, or judicial order. Despite knowing that this substitution lacked lawful basis, the DAO used the altered docket to file enforcement pleadings, represent fabricated identities as legally valid, and mislead the courts and administrative agencies.

462. This conduct constitutes both a violation of the Plaintiff's procedural due process rights under the Fourteenth Amendment and fraud on the court. The deliberate use of falsified records, coupled with the suppression of identity challenges and expert reports, obstructed the impartial administration of justice and deprived the Plaintiff of a fair opportunity to be heard.

463. DA Larry Krasner, as the elected District Attorney, directly enabled, ratified, or failed to supervise this conduct. His approval or knowing inaction in the face of ongoing fraud renders him liable in both his individual and supervisory capacity under § 1983.

464. Deputy Court Administrator Eric J. Assini knowingly concealed the docket alteration through internal communications and misrepresented the fraud as a mere ministerial or clerical oversight, thereby obstructing efforts to correct the false records and further depriving the Plaintiff of procedural protections.

465. These actions were nonjudicial and non-prosecutorial in nature. They involved investigatory misconduct, administrative manipulation of court records, and fraudulent filings—none of which are entitled to immunity under established precedent.

466. The conduct described herein was not a procedural irregularity or isolated state law violation. It constituted a deliberate, arbitrary, and conscience-shocking abuse of public authority that directly violated the Plaintiff's constitutional rights, including due process, equal protection, and protections from unlawful seizures and excessive financial penalties.

467. The claims asserted herein are based on well-established federal constitutional rights and are not subject to discretionary or good-faith defenses.

468. The coordinated misuse of court records, fraudulent pleadings, and suppression of material facts by DAO officials and court personnel falls squarely within the scope of liability under 42 U.S.C. § 1983 and constitutes actionable fraud upon the court under established equitable doctrines.

## Count XIII – Abuse of Public Office in Administrative Enforcement Role

**Legal Basis:** 42 U.S.C. § 1983

**Defendants:** *Philadelphia District Attorney's Office (Title IV-D Capacity)*

469. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

470. This Count arises from the Philadelphia District Attorney's Office (DAO) acting under a cooperative Title IV-D agreement to perform administrative child support enforcement duties on behalf of the Pennsylvania Department of Human Services and Philadelphia Family Court. These functions were civil, ministerial, and investigatory in nature—not criminal prosecutions—and were carried out under color of state and federal law.

471. In this capacity, DAO officials engaged in non-prosecutorial conduct, including submission of false filings, use of fabricated identities, and participation in the

alteration of official court records, all for the purpose of initiating or perpetuating unlawful child support enforcement actions.

472. As part of this misconduct, DAO personnel—acting in concert with clerks, court administrators, and judicial officers functioning in non-judicial roles—facilitated the fraudulent alteration of the Philadelphia Family Court docket by substituting the name "Hannah O. Edward" for "Olusola H. Edward" without legal authority, judicial order, or any lawful name change proceeding. This unauthorized substitution was undertaken under color of official authority and formed the foundation for subsequent enforcement actions, including international transmission under the Hague Convention and domestic Title IV-D enforcement proceedings.

473. The use of this falsified docket and accompanying identity documents to initiate enforcement, trigger federal reimbursement, and mislead courts and agencies constituted extrinsic fraud. The alteration occurred outside the bounds of the judicial process and deprived the Plaintiff of meaningful opportunity to contest jurisdiction, identity, and notice.

474. DAO officials prioritized performance metrics, IV-D compliance targets, and funding incentives over procedural accuracy and due process. This misconduct directly undermined the Plaintiff's constitutional rights and corrupted administrative enforcement proceedings.

475. The DAO's administrative misconduct extended beyond domestic borders. It participated in cross-border communications and enforcement efforts under the

136

Hague Convention framework, using the fraudulent identity and docket records to mislead foreign authorities and deny the Plaintiff access to a fair hearing.

476. Because the conduct alleged in this Count was purely administrative and investigative in nature—and not core prosecutorial advocacy—the DAO is not shielded by prosecutorial immunity and is subject to liability under 42 U.S.C. § 1983.

477. The actions described herein were not mere procedural errors or state-level irregularities. Rather, they constituted deliberate, arbitrary, and conscience-shocking misuse of public authority that violated the Plaintiff's clearly established constitutional rights, including:

- The right to procedural due process and equal protection under the Fourteenth Amendment;
- The right to be free from unreasonable seizures under the Fourth Amendment; and
- The right to be free from excessive fines and economic coercion under the Eighth Amendment.

478. DA and ADA Defendants were not performing protected prosecutorial functions but instead engaged in administrative misconduct and fraudulent enforcement activity under color of law. As such, their conduct is not entitled to immunity and supports liability under § 1983.

**Count XIV – Systemic Identity Violations**

> **Legal Basis:** 42 U.S.C. § 1983; Fourth and Fourteenth Amendments

> **Defendants:** *All Defendants*

479. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

480. This Count arises from the unauthorized and fraudulent use of the Plaintiff's Social Security Number and other personally identifying information to enforce fabricated child support obligations under Title IV-D and related administrative enforcement mechanisms.

481. The Defendants—acting under color of law and in concert across multiple agencies and jurisdictions—used the Plaintiff's SSN and identity records without consent and without legal justification to initiate and perpetuate civil enforcement actions based on falsified legal instruments and identity records.

482. These false identity records were used to report fraudulent arrears to national credit bureaus, directly impairing the Plaintiff's creditworthiness, employment opportunities, and financial standing.

483. As a result of these fabricated obligations, the Plaintiff was subjected to federal enforcement measures, including passport denial under 42 U.S.C. § 652(k) and unlawful tax refund intercepts under 26 U.S.C. § 6402. These actions were based on knowingly false court orders and administrative filings relying on inconsistent and unverified personal identifiers.

138

484. Despite the Plaintiff's repeated objections and the submission of expert forensic evidence demonstrating identity fraud, the Defendants failed to correct the falsified records or cease enforcement based on fraudulent data. This refusal to act constituted deliberate indifference to constitutional rights and a conscious perpetuation of known administrative fraud.

485. These actions violated the Plaintiff's clearly established rights under the Fourth Amendment to be free from unlawful seizure of property and under the Fourteenth Amendment to due process and informational privacy. The use of fabricated identity records to trigger state and federal enforcement mechanisms deprived the Plaintiff of liberty and property interests without notice, hearing, or lawful adjudication.

486. Defendant prosecutors (DA Krasner, ADA Koscinski, ADA Youkhanna) were not performing protected prosecutorial functions, but rather acted in an administrative and investigatory capacity by transmitting fraudulent filings, participating in identity record falsification, and enforcing obligations based on unlawful records. As such, they are not entitled to prosecutorial immunity.

**Count XV – Conspiracy to Violate Civil Rights**

**Legal Basis:** 42 U.S.C. § 1983; 42 U.S.C. § 1985

**Defendants:** *Named State Actors, including Judges, Clerk, District Attorneys, and Court Administrator*

487. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

488. This Count arises from a coordinated conspiracy among state actors—including officials of DHS/BCSE, Philadelphia Family Court, Clerk of Court personnel, Judges Leanne Litwin, Holly Ford, and Margaret Murphy (Ret.), Deputy Court Administrator Eric J. Assini, District Attorney Lawrence Krasner, and Assistant District Attorneys Lois Koscinski and Maurice Youkhanna—to deprive the Plaintiff of clearly established constitutional rights under color of law.

489. The Defendants engaged in a consistent pattern of administrative and investigatory misconduct—not protected by judicial or prosecutorial immunity—including docket tampering, identity record falsification, suppression of filings, and misuse of fraudulent documents to initiate and perpetuate enforcement actions under Title IV-D and international treaty mechanisms.

490. While the Plaintiff lacks access to internal communications at the pleading stage, the uniform and sustained use of fabricated identities, the coordinated issuance and enforcement of defective orders, and the repeated obstruction of legal redress across multiple departments support a plausible inference of agreement among Defendants

to violate the Plaintiff's civil rights, as required under 42 U.S.C. § 1985(3). See *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

491. The Defendants collectively conspired under color of law to deprive the Plaintiff of due process, equal protection, and the right to be free from arbitrary and unlawful seizure of property, in violation of the Fourth, Fifth, and Fourteenth Amendments.

492. The conspiracy involved mutually reinforcing acts, including false identity filings, procedural suppression, court record falsification, and extrinsic fraud that concealed jurisdictional defects and misled federal, state, and international agencies.

493. U.S.-based Defendants knowingly processed and enforced foreign-originated identity records without lawful verification, and relied on these falsified materials to initiate and sustain cross-border enforcement proceedings—thereby facilitating international fraud and causing domestic injury within U.S. jurisdiction.

494. The misconduct was executed in non-adjudicative capacities—administrative, investigatory, and supervisory—and is not entitled to absolute or qualified immunity.

495. These coordinated actions included efforts to suppress Plaintiff's filings, discredit exculpatory witnesses, block expert evidence, and impede corrective review, further illustrating an ongoing pattern of obstruction and retaliation.

496. The conspiracy produced concrete and continuing harms to the Plaintiff, including unlawful garnishments, denial of travel rights, reputational injury, emotional distress, and the prolonged denial of legal remedies.

497. The coordinated conduct across multiple public offices and agencies constitutes a de facto conspiracy to violate civil rights, and was neither accidental nor isolated, but rather reflected an institutional pattern of fraud and abuse undertaken by government actors acting in concert.

498. These actions collectively amount to a conscience-shocking abuse of power, executed under color of state law, in violation of the Plaintiff's clearly established constitutional rights. The Plaintiff seeks relief under 42 U.S.C. § 1983 and § 1985.

499. DA/ADAs – The District Attorney and Assistant District Attorneys were not engaged in prosecutorial decision-making, but in administrative and fraudulent conduct lacking immunity.

500. These claims arise from violations of well-settled federal rights and are not subject to discretionary or good-faith defenses.

**Count XVI – Retaliation & Witness-Intimidation Under Color of Law**

> **Legal Basis**: 42 U.S.C. § 1983 (First & Fourteenth Amendments) • 18 U.S.C. §§ 1512(b), 1001, 242 (predicate acts)
>
> **Defendants:** *District Attorney Lawrence S. Krasner and Assistant District Attorney Lois Koscinski (individual capacities; official-capacity injunctive relief only)*

501. **Incorporation of Prior Allegations.** Paragraphs 1-497 are realleged as though fully set forth herein.

502. **Protected Activity & Material Witness.**

- The Plaintiff had a clearly-established First-Amendment right to petition the courts and to present testimony from material witness **Samuel Tolulope Ajayi**— the biological brother of "Hannah O. Edward/Olusola H. Edward"—concerning identity fraud central to this case.

503. **Knowingly False Sworn Filing.**

- On **14 September 2022** DA Krasner, through ADA Koscinski, filed a "Verified Response" in Philadelphia Family Court that:

  (a) asserted Mr. Ajayi would be **indicted in Nigeria** for a serious offence, and

  (b) alleged he had attempted to **"eliminate"** the applicant to conceal prior crimes.

- The Defendants possessed **no evidence**, correspondence, or investigative record to support these accusations.

504. **Intent & Effect.**

- The sworn falsehoods were designed to **discredit, intimidate, and chill** a key defense witness (Mr. Ajayi), thereby obstructing the Plaintiff's access to the courts and corrupting the truth-finding process.

- After the filing, Mr. Ajayi's willingness to testify diminished; the Plaintiff's ability to present exculpatory evidence was impaired.

505. **Constitutional Violations.**

- By submitting fabricated allegations under color of law, Defendants:

143

(a) **Retaliated** against protected speech and petitioning activity (First Amendment);

(b) **Obstructed** the Plaintiff's liberty interest in fair proceedings (Fourteenth Amendment procedural due process).

506. **Statutory Predicate Offences (showing malice & pattern).**

- **Witness tampering** – 18 U.S.C. § 1512(b): corruptly attempted to intimidate & deter a witness.

- **False statements** – 18 U.S.C. § 1001: knowingly filed materially false assertions in a matter within judicial jurisdiction.

- **Deprivation of rights** – 18 U.S.C. § 242: willfully deprived the Plaintiff of federal rights under color of state law.

- These serve as predicate acts for the RICO counts and underscore the absence of good-faith or immunity.

507. **No Absolute or Qualified Immunity.**

- The challenged conduct was **administrative & investigative**, not prosecutorial advocacy.

- Reasonable officials knew (or should have known) that fabricating criminal accusations to silence a witness is unconstitutional. *See Halsey v. Pfeiffer*, 750 F.3d 273, 295-96 (3d Cir. 2014).

508. **Injury.**

- The Plaintiff suffered: loss of critical testimony, continued enforcement of fraudulent orders, wage garnishment, reputational damage, emotional distress, and litigation costs—all proximately caused by Defendants' retaliatory acts.

509. **Relief Sought.**

- Compensatory and punitive damages against Defendants Krasner and Koscinski in their **individual capacities**;

- Declaratory and prospective injunctive relief against the DAO to bar further witness intimidation or false filings;

- Attorneys' fees and costs under 42 U.S.C. § 1988;

- Any additional relief the Court deems just and proper.

**Count XVII – Violation of the Hague Child Support Convention**

> **Legal Basis:** 2007 Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance; supporting claims under 42 U.S.C. § 1983, RICO (18 U.S.C. §§ 1961–1968), and the Due Process Clause **Defendants:** *All Defendants (as applicable)*

510. **Incorporation of Allegations.** The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

511. **Fraudulent Use of Hague Mechanism.**

- The Defendants jointly and severally invoked the Hague Child Support Convention based on materially false representations, including forged identity records, falsified court documents, and misrepresentations of **habitual residence**.

- The application transmitted to the U.S. via **DOJ Ireland**, under **Reference No. LR 10.8.1842**, relied on unverifiable names (e.g., "Olusola H. Edward") and documents that lacked legal authentication or legitimate identity verification.

512. **U.S. Defendants' Complicity.**

- U.S.-based enforcement actors—including **Title IV-D personnel**, judicial officers, and administrative officials—processed and executed the Convention request with **deliberate indifference** to obvious identity inconsistencies, unverified documentation, and fabricated data.

- Rather than investigating or rejecting the fraudulent submission, these actors incorporated the foreign application into domestic enforcement systems, resulting in wage garnishment, adverse credit actions, and systemic due process violations.

513. **Treaty and Constitutional Violations.**

- The wrongful invocation and enforcement of the Hague Convention in this context violated Articles **6, 7, 11, and 22** of the Convention, including mandatory identity verification, fraud safeguards, and procedural integrity requirements.

- This misuse of the treaty mechanism directly contributed to the Plaintiff's constitutional injuries, including deprivation of due process, property loss, and

reputational harm, actionable under **42 U.S.C. § 1983** and related statutory claims.

514. **Enterprise and Predicate Acts.**

- The conduct described herein was not isolated. It formed part of a **coordinated enterprise** spanning multiple years and involving:

    o fabricated identities and habitual residence claims,

    o use of forged documents in international transmission,

    o misuse of court dockets,

    o suppression of forensic evidence, and

    o reliance on administrative loopholes to execute fraudulent enforcement actions.

- These acts constitute **predicate offenses** under **18 U.S.C. §§ 1341, 1343, 1512, and 1028,** supporting the broader **RICO claims** set forth in Counts VII and VIII.

515. **Injury and Causation.**

- The Plaintiff suffered direct and ongoing harm—including illegal wage garnishment, denial of federal benefits (e.g., passport, tax refund intercepts), and reputational and emotional injury—proximately caused by the unlawful invocation and enforcement of the Convention using falsified records.

516. **Immunity Barred.**

- The actions taken by **DA Krasner, ADAs Koscinski and Youkhanna**, and other defendants were **administrative, ministerial, or fraudulent**, and thus fall outside the scope of judicial or prosecutorial immunity.

517. **Legal Relief.**

- The Plaintiff seeks declaratory relief regarding the invalidity of the Convention application, damages for resulting constitutional and financial injuries, and prospective injunctive relief to prevent further misuse of treaty enforcement based on fraudulent filings.

## Count XVIII – Violation of Constitutional Privacy and Familial-Integrity Rights

**Legal Basis**: 42 U.S.C. § 1983; Fourteenth Amendment (substantive due-process, liberty, and informational-privacy protections)

**Defendants:** *Philadelphia Family Court; Judges Margaret T. Murphy (Ret.), Holly Ford, and Leanne Litwin; Philadelphia District Attorney's Office (DAO); Pennsylvania DHS/BCSE officials – individual and official capacities (prospective relief)*

518. **Incorporation.** The Plaintiff realleges ¶¶1-517 above.

519. **Falsified Birth Record.**

- A U.S. birth certificate for minor O.S.O. lists the mother as **"Hannah O. Edward,"** a name the applicant admitted she created using a self-drafted embassy affidavit, not any original vital record.

- The same certificate (and non-matching identity on Nigerian passport numbered A0323XXXX and Irish passport numbered PD944XXXX) was the linchpin for the Hague Convention application transmitted 22 Jan 2020 (Ref. LR 10.8.1842) and for all subsequent Title IV-D enforcement.

520. **September 1 (BC2205002) & 15 Nov 2022 Hearings.**

- The Plaintiff petitioned to amend the certificate; the applicant conceded no original/legitimate document exists to validate her identity and did not produce any document in support of her claim.

- A sworn affidavit from the applicant's sibling confirmed her birth name was **Hannah Olusola Ajayi,** not "Olusola Hannah Edward" or "Hannah Olusola Edward" and her date of birth is March 24, 19XX and not July 11, 19XX.

- Judges nonetheless dismissed the petition on procedural grounds (lack of exemplification) without addressing the substantive fraud.

521. **Ongoing Official Reliance.** Despite actual notice that the U.S. birth certificate is false, the document associated with the Hague Convention application were forged and or fabricated and the applicant's identities in use are fraudulent, the Defendants (Philadelphia Family Court, DAO, DHS/BCSE) continue to:

149

- treat the forged U.S birth certificate, multiple fabricated identities and other supporting fraudulent documents as valid,

- report false data to IV-D databases and credit bureaus,

- impose wage garnishment, tax intercepts, passport denial, and other collateral sanctions against the Plaintiff.

522. **Constitutional Injury.**

- **Plaintiff:** loss of parental integrity, reputational harm, unlawful seizures of wages/property, and denial of fair process.

- **Child:** The compelled use of a fraudulent legal identity by public agencies and government officials constitutes a violation of the fundamental right to accurate familial status. Forcing the minor child, O.S.O., to maintain and rely upon a falsified United States birth certificate is contrary to the best interests of the child and violates core legal and constitutional protections. The Pennsylvania Department of Human Services (DHS), the Philadelphia Family Court, the District Attorney's Office of Philadelphia (DAO), and their respective officials are enforcing this falsified identity (birth certificate) not for lawful purposes, but to fraudulently obtain Title IV-D federal incentive payments, manipulate performance metrics under the federally supervised Title IV-D child support enforcement system, and sustain an unlawful enforcement scheme grounded in fabricated identity data and other fraudulent documents.

- The minor child, O.S.O., possesses a constitutionally protected liberty interest in maintaining a truthful and accurate legal identity, including the right to be

recognized under a valid and authentic birth certificate. This right arises under the Fourteenth Amendment's guarantee of **substantive due process** and **familial integrity**, as recognized by the United States Supreme Court and lower federal courts. The governmental issuance, enforcement, or perpetuation of a **falsified birth certificate** violates this fundamental right and causes ongoing harm to the child's legal identity, familial associations, and best interests.

- Governmental actors have an affirmative obligation to preserve the accuracy of vital records, and the misuse of falsified birth data implicates both **federal** and **state law**, as well as internationally recognized norms. When state and local agencies, acting under color of law, compel a child to rely upon a knowingly false birth certificate to advance enforcement objectives—such as securing federal funding under Title IV-D—they not only inflict harm on the child's identity and best interests but also violate well-established constitutional protections.

- Such state-imposed maintenance of false identity records violates clearly established liberty and privacy interests. *See Santosky v. Kramer*, **455 U.S. 745, 753 (1982)** (parent-child relationship); *Whalen v. Roe*, **429 U.S. 589 (1977)** (informational privacy); *Doe v. Moore*, **410 F.3d 1337, 1342-43 (11th Cir. 2005)** (due-process claim where state maintained inaccurate personal data).

523. **Non-Judicial Conduct / No Absolute Immunity.**

- The acts challenged—docket alterations, administrative refusals to correct the record, and continued enforcement—were ministerial or investigative, not adjudicatory.

- Judges and clerks who knowingly perpetuate fraud on the court act outside the scope of judicial immunity. *See Dennis v. Sparks*, **449 U.S. 24, 28-29 (1980).**

524. **Deliberate Indifference & Ongoing Harm.** The Defendants' conscious decision to preserve and deploy the fabricated identities, forged documents and falsified U.S. birth certificate—after repeated objections and unrebutted expert evidence—constitutes deliberate indifference to constitutional rights, resulting in continuing injury that tolls any limitations period.

525. **Relief Sought.** Plaintiff requests:

- Declaratory judgment that the certificate is constitutionally invalid;

- Injunctive relief barring further enforcement predicated on the falsified record and directing correction with vital-records authorities;

- Compensatory and punitive damages for economic and emotional harm;

- Attorneys' fees and any other just relief under 42 U.S.C. § 1988.

**Count XIX – Policy and Supervisory Liability for Constitutional Violations**

> **Legal Basis:** 42 U.S.C. § 1983
>
> **Defendants:** *Philadelphia County; Valerie A. Arkoosh (individual and official capacities); Andrew Barnes (individual and official capacities); Larry Krasner (individual and official capacities)*

526. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

527. The Defendant Philadelphia County, acting through its District Attorney's Office (DAO) and Domestic Relations Section (DRS) pursuant to a Title IV-D cooperative agreement with the Pennsylvania Department of Human Services (DHS), maintained policies, customs, or widespread practices that violated constitutional rights.

528. These unconstitutional practices included:

   a) Accepting and acting upon forged or inconsistent identity records without verification or due process;

   b) Failing to implement adequate training, supervision, or procedural safeguards to ensure accuracy in Title IV-D child support enforcement; and

   c) Prioritizing federal performance metrics and funding incentives over constitutional compliance.

529. These failures were not isolated lapses but reflected a pattern of deliberate indifference, persisting even after the Plaintiff's formal objections, identity evidence, and expert reports were submitted.

530. As a direct result of these policies and supervisory failures, fraudulent and constitutionally defective enforcement actions were carried out against the Plaintiff, including wage garnishment, seizure of assets, credit harm, and loss of parental and identity rights, in violation of the Fourth, Eighth, and Fourteenth Amendments.

531. Defendant Valerie A. Arkoosh, as Secretary of DHS, and Andrew Barnes, as Executive Deputy Secretary, exercised final policymaking authority over Pennsylvania's Title IV-D child support enforcement structure, including oversight of the cooperative agreement with Philadelphia County.

532. These Defendants failed to supervise or correct known enforcement abuses, despite having actual or constructive knowledge of identity manipulation, improper docket alterations, and fraudulent filings occurring under DHS-supervised programs.

533. Defendant Larry Krasner, as District Attorney of Philadelphia, and DAO leadership including (Child Support Unit Supervisor), exercised final administrative authority over the DAO's execution of Title IV-D functions pursuant to the legal-services agreement with the First Judicial District.

534. The DAO Supervisory Defendants either established, ratified, or failed to correct policies and practices that:

a) Permitted the use of inconsistent or unverified identity records in enforcement filings;

b) Suppressed objections or withheld evidence challenging identity fraud;

c) Encouraged enforcement tactics aimed at maximizing federal incentive payments under 42 U.S.C. §§ 658 and 658a.

535. These supervisory actions and omissions were administrative, not advocative. They are therefore not shielded by prosecutorial immunity.

536. The DAO Supervisory Defendants had actual or constructive knowledge of ongoing constitutional violations, based on Plaintiff's September 1, 2022 transcript submission (BC2205002), prior filings, and repeated identity-related objections. They failed to act, constituting deliberate indifference under § 1983.

537. The failure of Arkoosh and Barnes to remedy these known systemic deficiencies and the DAO's internal failure to supervise or discipline Title IV-D enforcement actors, directly enabled the continuation of unlawful seizures, deprivation of due process, and identity fraud-based enforcement.

538. Philadelphia County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the unconstitutional policies and practices described herein were the moving force behind the violations of Plaintiff's federally protected rights.

539. These actions and omissions by Arkoosh, Barnes, and Krasner constitute individual-capacity liability under § 1983, and their continued enforcement of an unlawful system supports official-capacity claims for prospective injunctive and declaratory relief.

540. The misconduct described herein was not a mere procedural deficiency or violation of state policy but constituted a deliberate, arbitrary, and conscience-shocking abuse of authority under color of state law.

155

541. The actions of DAO actors, including DA Krasner and his subordinates, were non-judicial, administrative, and investigatory. As such, they are not protected by absolute prosecutorial immunity.

## Count XX – Municipal Liability Under Monell

**Legal Basis:** *42 U.S.C. § 1983*

**Defendant:** *Philadelphia County (Official Capacity)*

542. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

543. Philadelphia County is a local government entity subject to suit under 42 U.S.C. § 1983. It is responsible for administering Title IV-D child support enforcement through its agencies and contractual relationships with the Pennsylvania Department of Human Services (DHS) and the First Judicial District, including Philadelphia Family Court's Domestic Relations Division.

544. Under the federally supervised Title IV-D program, the Philadelphia District Attorney's Office (DAO) entered into a Cooperative Legal Services Agreement with the First Judicial District to provide legal services in child support enforcement. This interagency cooperation—funded and managed in part by the County—enabled DAO personnel to initiate, litigate, and administer Title IV-D obligations.

545. Through this County-authorized enforcement structure, DAO and Family Court personnel carried out administrative and legal actions, including cross-border filings

and enforcement under the Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance.

546. The actions of DAO officials—including the submission and enforcement of fraudulently fabricated identity records, the invocation of international and federal enforcement mechanisms based on unverified data, and the use of forged or conflicting identity documents in judicial and administrative proceedings—were undertaken pursuant to official County policy or custom, not as discretionary prosecutorial acts.

547. The Plaintiff was compelled under fear of incarceration and other known punishment to participate in proceedings founded on fraudulent identity records and fabricated court documents. Despite repeated objections and presentation of credible evidence, DAO officials and Family Court clerks continued to enforce obligations without verifying the legitimacy of the identity data or correcting false records.

548. These actions were not isolated or aberrational. They reflected institutional policies or widespread customs, including:

- Failure to verify the authenticity of identity records used in enforcement;

- Knowingly permitting the interchangeable use of inconsistent or fictitious names in legal pleadings and filings;

- Acquiescence to docket tampering and administrative fraud in furtherance of enforcement objectives;

- Use of unverified documents to pursue federal Title IV-D incentives tied to performance benchmarks.

549. Philadelphia County failed to provide adequate training, oversight, and internal controls to ensure constitutional compliance in its Title IV-D enforcement program, thereby demonstrating deliberate indifference to known risks of constitutional injury.

550. These failures were a moving force behind the deprivation of the Plaintiff's constitutional rights under the Fourteenth Amendment (due process and equal protection), the Fourth Amendment (unlawful seizure of wages), and the Eighth Amendment (excessive financial penalties).

551. The Plaintiff does not seek reversal of any final state court order but challenges the County's unconstitutional practices and administrative enforcement mechanisms that operated outside lawful judicial authority and procedural safeguards.

552. As a result of Philadelphia County's unconstitutional policies, practices, and omissions, the Plaintiff has suffered ongoing injury, including wrongful wage garnishment, compelled participation in fraudulent proceedings, and infringement on familial integrity.

553. As part of the municipal custom, policy, or practice challenged herein, the Pennsylvania Department of Human Services (DHS), the Philadelphia Family Court, and the District Attorney's Office of Philadelphia (DAO), acting pursuant to interagency cooperative agreements and under color of state law, have compelled the public and governmental use of a knowingly fraudulent legal identity in connection with child support enforcement proceedings. This conduct has resulted in the

systemic violation of the Plaintiff's and minor child's fundamental right to accurate

familial status, a constitutionally protected interest under the Due Process Clause.

554. Specifically, the continued enforcement of a falsified United States birth certificate

for the minor child, O.S.O., serves no lawful governmental purpose and is contrary

to the best interests of the child. Instead, these Defendants and their officials have

perpetuated the use of the fraudulent identity to unlawfully obtain Title IV-D federal

incentive payments, manipulate IV-D performance metrics, and maintain a fabricated

enforcement framework under the federally supervised Title IV-D child support

enforcement system. This pattern of conduct reflects deliberate indifference to

constitutional rights and constitutes an actionable municipal policy or practice under

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**Violation of the Child's Right to Accurate Identity and Familial Status**

554a. The minor child, O.S.O., possesses a constitutionally protected liberty interest in

maintaining a truthful and accurate legal identity, including the right to be

recognized under a valid and authentic birth certificate.[12]

554b. This right arises under the Fourteenth Amendment's substantive due process

protections and the doctrine of familial integrity, which safeguard both parent and

child from state-imposed distortions of their legal relationship and personal

identity.[13]

---

[12] See *Nguyen v. INS*, 533 U.S. 53, 67–68 (2001) (recognizing government's interest in accurate biological and legal parentage); see also *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (protecting familial bonds under due process).
[13] See *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (liberty interest in parent-child relationship); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (constitutional protection of family integrity).

554c. The continued enforcement and governmental use of a knowingly falsified United States birth certificate—through the Title IV-D enforcement apparatus administered by DHS, Philadelphia Family Court, and the DAO—violates these rights and inflicts ongoing injury on the minor child (O.S.O).

554d. Governmental actors, acting under color of law and pursuant to municipal custom, have no legitimate interest in perpetuating false identity records. Their conduct is instead directed at securing federal incentive payments under Title IV-D, inflating performance metrics, and sustaining an unlawful enforcement framework reliant on fabricated personal data.

554e. These actions deprive the child (O.S.O) of legal accuracy regarding parental identity, diminish the child's long-term legal interests, and contradict the statutory obligation of public agencies to maintain accurate vital records.[14]

554f. The harm to O.S.O. is further aggravated by the County's failure to implement identity-verification safeguards or correct falsified documentation despite repeated notice.

554g. This conduct also violates widely recognized international norms protecting a child's right to identity.[15]

554h. These practices are attributable to Philadelphia County and its agents and constitute a policy, custom, or practice actionable under *Monell v. Department of Social*

---

[14] See 35 P.S. § 450.205 (Pennsylvania's duty to maintain accurate vital records); 28 Pa. Code § 1.3 (prohibiting falsification of records); 42 U.S.C. § 654(13); 45 C.F.R. § 302.15 (federal requirements for state vital records integrity under Title IV-D).

[15] Convention on the Rights of the Child, Art. 8(1) (1989) ("States Parties undertake to respect the right of the child to preserve his or her identity, including nationality, name and family relations..."). While not self-executing in the United States, this provision reflects internationally accepted legal principles.

*Services*, having caused identifiable constitutional injury to both the Plaintiff and the minor child.[16]

555. The Plaintiff seeks prospective declaratory and injunctive relief against Philadelphia County to halt further constitutional violations, and to compel the implementation of identity-verification protocols and administrative safeguards in Title IV-D enforcement.

## REQUEST FOR INVESTIGATIVE AND OVERSIGHT REFERRAL

The Plaintiff respectfully requests that this Honorable Court refer the matters raised herein to the appropriate federal investigative and oversight authorities, based on compelling and well-supported allegations of systemic constitutional violations, fraud upon the court, and the misuse of federally funded child support enforcement mechanisms by state and local actors acting under color of law.

The factual record establishes a coordinated, cross-institutional pattern of misconduct involving judges, prosecutors, court administrators, and Title IV-D enforcement personnel. This misconduct includes the use and preservation of fabricated identities, submission of falsified court records, administrative fraud, obstruction of justice, and the exploitation of federal and treaty-based enforcement systems for unlawful purposes—all resulting in the ongoing deprivation of the Plaintiff's federally protected rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

---

[16] *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978) (municipal liability attaches where official policy or custom causes constitutional injury).

Accordingly, the Plaintiff respectfully requests that this Court recommend or initiate referrals to the following federal agencies:

- **U.S. Department of Justice – Civil Rights Division**

  For investigation into systemic violations of civil and constitutional rights, including due process violations, misuse of personal data, and enforcement actions based on falsified identity records and court documents. The record reflects a recurring pattern of judicial and prosecutorial misconduct in violation of constitutional guarantees and federal privacy safeguards.

- **U.S. Department of Justice – Public Integrity Section and the Federal Bureau of Investigation (FBI) – Public Corruption Unit**

  For investigation into potential criminal violations, including:

  o **Fraud upon the court** and obstruction of justice under **18 U.S.C. §§ 1503, 1512**;

  o **Aggravated identity theft** and fraudulent use of government documents under **18 U.S.C. §§ 1028, 1028A**;

    ❖ In *Dubin v. United States*, 599 U.S. 317 (2023), the Supreme Court held that aggravated identity theft requires the use of another's identity to be "at the crux" of the unlawful conduct, not incidental. The Plaintiff alleges that state and local officials, acting under color of law, knowingly used fabricated identity records—including a false name, date of birth, and SSN—to initiate and enforce Title IV-D proceedings and invoke international jurisdiction under the Hague Convention. This identity misuse was not tangential, but the operative vehicle of the constitutional deprivations asserted in this

action under 42 U.S.C. § 1983, including violations of due process, equal

protection, and informational privacy.

- o  Submission of **materially false information in official proceedings** and

  suppression of exculpatory evidence.

- **U.S. Department of Health and Human Services – Office of Inspector General (HHS-OIG)**

  For audit and compliance review of misuse of federal funds under Title IV-D of the Social

  Security Act by:

  - o  The Pennsylvania Department of Human Services (DHS),

  - o  The Bureau of Child Support Enforcement (BCSE),

  - o  Philadelphia County and its Family Court – Domestic Relations Division,

  - o  The Philadelphia District Attorney's Office.

  - o  The review should assess the submission of falsified compliance data, improper

    federal reimbursement claims, and performance-based incentive fraud.

The basis for these referrals includes, but is not limited to:

- The enforcement of administrative and judicial orders based on fabricated identity records

  and forged documents;

- The unlawful use of inconsistent or fictitious names in court dockets, support orders, and

  official filings, without adjudication, due process, or verification;

- Deliberate suppression of evidence and obstruction of Plaintiff's efforts to obtain redress;

- Unauthorized use and disclosure of the Plaintiff's personally identifiable information (PII)

  in violation of constitutional and statutory protections;

- Receipt and retention of federal funds based on falsified records, violating federal reporting

  and fraud-prevention standards.

In addition, the Plaintiff requests that this Court notify the **U.S. Central Authority** and relevant treaty enforcement bodies to prevent continued misuse of international enforcement mechanisms based on the fraudulent Hague Convention application submitted by **DOJ Ireland (Reference No. LR 10.8.1842)**, which contained materially false identity information and violated procedural safeguards under the 2007 Hague Child Support Convention.

In light of the systemic, multi-agency misconduct and ongoing harm detailed in this Complaint, the Plaintiff respectfully requests that this Court issue a formal referral order or, in the alternative, make a judicial recommendation under its inherent, equitable, and supervisory powers to ensure that appropriate federal oversight, investigation, and remedial action are undertaken.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff, *pro se*, respectfully requests that this Court enter judgment in his favor and against the Defendants **as follows** (while observing the limits of sovereign, judicial, and prosecutorial immunity):

**Preliminary Relief Scope Disclaimer**

To clarify the nature of relief sought and ensure compliance with constitutional limitations and Eleventh Amendment jurisprudence:

- The Plaintiff **does not seek monetary damages** against any agency or department of the Commonwealth of Pennsylvania, including the **Pennsylvania Department of Human Services (DHS/BCSE)** or the **Philadelphia Family Court**, which are considered arms of the state and thus immune under the **Eleventh Amendment**.

- These Defendants are named **solely for the purposes of prospective declaratory and injunctive relief**, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), to address and prevent **ongoing constitutional violations**.

- The Plaintiff seeks **monetary damages only from**:

    1. **Individual Defendants** in their **personal capacities**, to the extent their conduct was **ultra vires, administrative, investigatory, or otherwise outside protected judicial or prosecutorial functions**;

    2. **Municipal entities**, including **Philadelphia County**, which are not entitled to sovereign immunity, for **policies, practices, or customs** that were the **moving force** behind the alleged constitutional violations, as recognized in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

- The Plaintiff also seeks prospective declaratory and injunctive relief to remedy ongoing violations of the minor child O.S.O.'s constitutionally protected right to accurate legal identity and familial integrity, without asserting any claim for monetary damages on the child's behalf.

## A. Compensatory Damages

- The Plaintiff seeks compensatory damages only against (1) individual Defendants in their personal capacities and (2) municipal entities not shielded by sovereign immunity, in an amount to be determined at trial, for:

    o The violation of the Plaintiff's constitutional rights under 42 U.S.C. § 1983;

    o Financial loss, reputational damage, emotional distress, and other tangible or intangible injuries resulting from the Defendants' unlawful conduct;

165

- The creation, use, and enforcement of falsified court records, forged identity documents, and the unauthorized dissemination of personal and sensitive information.

- The Plaintiff reserves the right to amend the damages request to reflect ongoing or newly discovered harms resulting from retaliatory conduct, reputational exclusion, or continued reliance on fraudulent records during the pendency of this action.

## B. Punitive Damages

- The Plaintiff seeks punitive damages **only** against those individual Defendants whose conduct was willful, malicious, or undertaken with reckless disregard for the Plaintiff's constitutional and statutory rights, including:

  - Fraud on the court;

  - Knowingly enforcing false identity and support records;

  - Obstructing redress or suppressing exculpatory information;

  - Engaging in record tampering, identity theft, or retaliation.

- Punitive damages are not sought against government agencies or municipal entities and shall be awarded only to the extent permitted by applicable law.

## C. Declaratory Relief

- Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and 42 U.S.C. § 1983, the Plaintiff seeks declaratory relief that:

  - The continued enforcement of court orders, wage garnishments, or child support obligations based on falsified identity records violates the Plaintiff's rights under the Fourteenth Amendment;

- o The fabricated birth certificate naming "Hannah O. Edward" as mother of O.S.O., and all legal actions based upon it, are constitutionally defective and continue to cause ongoing harm;

- o Philadelphia County, through the DAO and its enforcement mechanisms, maintained unconstitutional customs and policies actionable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978);

- o The DAO failed to adhere to federal confidentiality and verification standards in child support enforcement, including 45 C.F.R. § 307.13.

- The continued governmental use and enforcement of the falsified birth certificate for child O.S.O. violates the child's independent constitutional right to accurate legal identity and familial status, as detailed in ¶¶ 77a–77d.

## D. Injunctive Relief

The Plaintiff requests prospective injunctive relief enjoining the Defendants, in their **official capacities**, from:

- Continuing any enforcement activity based on fabricated identities, forged records, or tampered court dockets;

  - o Using or disseminating the falsified birth certificate identifying "Hannah O. Edward" as the mother of O.S.O.;

  - o Misusing the Plaintiff's Social Security Number or other identifiers to generate false arrears, tax intercepts, credit reports, or passport holds;

  - o Refusing to correct known falsehoods in court, agency, or intergovernmental databases.

- The Plaintiff further seeks orders directing the Defendants to:

167

- o  Correct the birth certificate and all related administrative or enforcement records;

- o  Notify relevant agencies—domestic and international—of the corrected identity and nullification of the fraudulent records;

- o  Implement verification safeguards to prevent recurrence.

- Injunctive relief is also sought to protect the minor child's ongoing constitutional right to a truthful legal identity and to prevent future enforcement of government records known to be false or fabricated, consistent with the standing and harm outlined in ¶¶ 77a–77d.

## E. Equitable Relief

- The Plaintiff requests equitable relief including:

- o  Correction or expungement of all dockets, enforcement orders, and records falsely associating the Plaintiff with fabricated identities;

- o  Sealing or removing from public access any unauthorized court filings or documents containing false identity data or misused personal identifiers;

- o  Remediation of the Plaintiff's credit, benefit, and legal status in federal and state databases (e.g., SSA, NCIC, PACSES, passport systems);

- o  Post-judgment compliance reporting by Defendants, including certifications that fraudulent records have been purged and safeguards implemented;

- o  Appointment of a Special Master or magistrate judge to monitor compliance, if warranted.

- Equitable remedies are also requested to secure the legal identity of the minor child, O.S.O., including correction of vital records and elimination of government documents or databases that continue to associate the child with a fraudulent parental identity.

## F. Costs and Fees

The Plaintiff requests:

- o  Reimbursement of all out-of-pocket litigation expenses incurred as a *pro se* litigant (e.g., filing fees, mailing, service of process, document production);

- o  Attorney's fees under 42 U.S.C. § 1988 should counsel later appear and the Plaintiff prevail;

- o  Reimbursement of reasonable legal costs incurred in prior related proceedings, to the extent caused by Defendants' misconduct;

- o  Leave to submit supplemental evidence of costs post-judgment pursuant to Fed. R. Civ. P. 54(d).

## G. Pre- and Post-Judgment Interest

The Plaintiff seeks interest on all monetary awards as allowed by law.

## H. Sanctions and Referrals

The Plaintiff respectfully requests that the Court:

- o  Enjoin DA Larry Krasner, ADA Jennifer Koscinski, and ADA Mark Youkhanna from further participation in any administrative or judicial proceeding involving the fraudulent records or identities at issue;

- o  Refer the matter to the following investigative and disciplinary agencies:

  1. The **Civil Rights Division** and **Public Integrity Section** of the U.S. Department of Justice;

  2. The **Federal Bureau of Investigation (FBI)** – Public Corruption Unit;

3. The **Office of Professional Responsibility (OPR)**, U.S. DOJ;

4. The **Office of Inspector General (OIG)**, U.S. Department of Health and Human Services;

5. The **Disciplinary Board of the Supreme Court of Pennsylvania** and the **Pennsylvania Judicial Conduct Board**;

6. The **U.S. Department of State** and appropriate treaty oversight authorities regarding misuse of Hague Convention mechanisms.

## I. Additional Relief

- The Plaintiff additionally requests such further relief as may be necessary to protect the minor child, O.S.O., from the continued enforcement of government records based on falsified identity information, including orders to correct or annul any records—judicial or administrative—that reflect the false parental designation. This relief is sought solely to protect the child's constitutional rights under the Fourteenth Amendment and does not include a claim for monetary damages on the child's behalf.

- Such other and further relief as this Court deems just, equitable, and appropriate.

## Limitations on Relief Sought

The Plaintiff does **not** seek monetary damages against any agency or department of the Commonwealth of Pennsylvania, including the **Pennsylvania Department of Human Services** or the **Philadelphia Family Court**, in their **official capacities**, in accordance with the Eleventh Amendment. All damages are sought **only against** municipal entities and individuals **sued in their personal capacities**. Equitable and injunctive relief is requested against state officers in their **official capacities** under *Ex parte Young* to prevent **ongoing violations of federal law**. This action

is brought exclusively under **42 U.S.C. § 1983**. The Plaintiff does **not** seek to relitigate or overturn any final state court judgment.

## **CONCLUSION**

The Plaintiff has set forth a detailed and well-supported civil rights action under **42 U.S.C. § 1983**, demonstrating that the Defendants, acting under color of state law, deprived the Plaintiff of clearly established rights secured by the Constitution and laws of the United States. These deprivations include violations of due process and equal protection under the **Fourteenth Amendment**, obstruction of justice through **fraud upon the court**, and the unlawful use of fabricated identities and falsified records to initiate and enforce civil proceedings without lawful jurisdiction.

The factual record establishes a coordinated and sustained scheme involving judicial officers, prosecutorial staff, and administrative enforcement personnel who collectively weaponized state power for unlawful ends. This misconduct includes, but is not limited to, the misuse of **Title IV-D child support enforcement mechanisms**, identity manipulation, falsification of court dockets, and other conscience-shocking abuses of governmental authority. These actions fall outside the protection of judicial and prosecutorial immunity where fraud, ultra vires conduct, and violations of constitutional rights are evident.

In light of the continuing nature of the harm, the systemic failures in oversight and accountability, and the compelling public interest in redressing unconstitutional misuse of government power, the Plaintiff respectfully requests that this Court:

- **Permit this action to proceed** beyond the pleading stage;

171

- **Grant declaratory and injunctive relief** to halt the ongoing constitutional and statutory violations;

- **Award compensatory and punitive damages** in an amount to be determined at trial;

- **Refer this matter to appropriate federal investigative and oversight bodies** for further review and enforcement action; and

- **Grant such other and further relief** as this Court deems just and proper under law and equity.

The Plaintiff further asserts that all claims are timely under the doctrines of **equitable tolling**, **fraudulent concealment**, and the **continuing violation doctrine**, and that no adequate remedy exists at law absent this Court's intervention.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Oyekunle Stephen Oyelakin, Pro Se

1722 Shelmire Avenue

Philadelphia PA 19111

Oyelakin1@yahoo.com

215-868-3075

**Dated:**

172

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Oyekunle Stephen Oyelakin

Plaintiff

          V.

Civ No._____

**JURY TRIAL DEMANDED**

Pennsylvania Department of Human Services ("DHS/BCSE");

Family Court Division of the Court of Common Pleas of

Philadelphia, First Judicial District of Pennsylvania

("Philadelphia Family Court");

Clerk of the Philadelphia Family Court;

Judge Leanne Litwin;

Judge Holly Ford;

Judge Margaret Theresa Murphy (Ret.);

Philadelphia County;

District Attorney's Office of Philadelphia ("DAO");

District Attorney Lawrence Krasner;

Assistant District Attorney Maurice Youkhanna;

Assistant District Attorney Lois Koscinski;

Eric J. Assini, Esq., Deputy Court Administrator, First Judicial

District of Pennsylvania;

Valerie A. Arkoosh;

1

Andrew Barnes.

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND RELATED RELIEF.

This memorandum is submitted in support of the Plaintiff's federal complaint pursuant to 42 U.S.C. § 1983 for constitutional violations and related misconduct committed under color of state law.

## TABLE OF CONTENTS

1. PRELIMINARY STATEMENT...................................................................................12

2. INTRODUCTION ...............................................................................................13

3. JURISDICTION AND LEGAL BASIS ...................................................................16

4. LEGAL ARGUMENTS.......................................................................................18

    I. Violations of Constitutional Rights Under 42 U.S.C. § 1983...................................18

    II. Judicial Misconduct, Fraud on the Court, and Docket Tampering.............................26

    III. Fraudulent Filings and Obstruction by DAO, DA and Assistant District Attorneys..........32

    IV. Hague Convention and UIFSA Jurisdictional Defects...........................................39

    V. Monell Liability and Institutional Misconduct...................................................42

    VI. Doctrinal and Legal Defenses Addressed.......................................................49

    VII. Responses to Harlow v. Fitzgerald (1982) and Qualified Immunity Defense ...............60

    VIII.  In Opposition to the Defendant's assertion of the good faith defense........................61

    IX. Eleventh Amendment Immunity...................................................................64

    X. RICO CLAIMS (18 U.S.C. §§ 1961–1968)............ ...............................................66

    XI. Discovery Rule...........................................................................................68

    XII. Relief Sought and Justification for Rule 5.1 Notice..............................................72

    XIII. Inapplicability of the Doctrine of Laches........................................................72

    XIV. Summary of Statutory Violations..................................................................75

    XV. Constitutional Violations Summary...... ........................................................77

XVI. Violations of the code of conduct for United States Judges — Canon 1 and Canon 2..........79

XVII. Fraudulent Alteration of Court Records, Misuse of Administrative Authority,

and Resulting Constitutional Violations……………..…………………………....……82

XIII. Supervisory Liability of State-Level Defendants Arkoosh and Barnes Under 42

U.S.C. § 1983……………………………………………………………………...85

5. CONCLUSION………………………….…………….…………………………86

## <u>TABLE OF AUTHORITIES</u>

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)........................................................................23

Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989) .............................................................34

Ashburn v. Anne Arundel County, 306 Md. 617 (1986)................................................................51

Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014)......... ...............…...........86

Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)........... .................……...........24

Blessing v. Freestone, 520 U.S. 329 (1997)...................................................................13

Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)…….......... ..................……...........55

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)...........................................26, 28, 32, 78

Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)…… ...........…..........81

Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999)......... ..............…...........85

Christopher v. Harbury, 536 U.S. 403 (2002) .......................................................................72, 78

City of Newport v. Fact Concerts, 453 U.S. 247 (1981)…….......... ...............…..........…..87

Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006)  .............................................................30

Cooper v. Aaron, 358 U.S. 1 (1958) .......................................................................................60

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) .......................................30, 36, 50

County of Sacramento v. Lewis, 523 U.S. 833, 846–49 (1998) ......... ...............…...........…..18

Delaware State College v. Ricks, 449 U.S. 250 (1980) ................................................................50

Dennis v. Sparks, 449 U.S. 24 (1980)……………….. …………………………………….…….83

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)………………………..16

Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993) ……………………………………………….31

Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010). ……………………………………………38

EEOC v. Great Atl. & Pac. Tea Co., 735 F.2d 69 (3d Cir. 1984) ……………………………72, 74

Erickson v. Pardus, 551 U.S. 89, 94 (2007)……………………………………………………..14

Estelle v. Gamble, 429 U.S. 97, 106 (1976)……………………………………………………..14

Ex parte Young, 209 U.S. 123 (1908)……… …………..15, 39, 54, 55, 56, 57, 61, 62, 64, 65, 86

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ……………………………58

Fisher v. United States, 425 U.S. 391 (1976) ……………………………………………………52

Forrester v. White, 484 U.S. 219 (1988)……………………………27, 32, 37, 52, 53, 60, 61, 80, 81, 83

Fuentes v. Shevin, 407 U.S. 67 (1972)……………………………………………………………19

Gallas v. Supreme Court of Pa., 211 F.3d 760, 769–70 (3d Cir. 2000)……………………… …..53

Giglio v. United States, 405 U.S. 150 (1972)……………………………………………………63

Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231 (1959)……………………………………73

Goldberg v. Kelly, 397 U.S. 254, 267 (1970)………………………………………19, 60, 63, 77, 83

Gonzaga University v. Doe, 536 U.S. 273 (2002) ………………………………………………28

Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159

(3d Cir. 2010)…………….................................................................................16, 58, 59

Hafer v. Melo, 502 U.S. 21 (1991)....................................................54, 57, 64, 65, 84, 87

Haines v. Kerner, 404 U.S. 519 (1972) ...........................................................................14

Hamdi v. Rumsfeld, 542 U.S. 507 (2004) ........................................................................19

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ....................................................................62

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)…………..27, 29, 33, 70, 84

Herring v. FDIC, 82 F.3d 282 (1994) ..............................................................................71

Herring v. United States, 424 F.3d 384 (2005) ..........................................................23, 30

Holmberg v. Armbrecht, 327 U.S. 392 (1946) ...........................................30, 49, 73, 74

Hope v. Pelzer, 536 U.S. 730 (2002)........................................................................61, 62

Jones v. Three Rivers Mgmt. Corp., 394 A.2d 546 (Pa. 1978)…………………………….51

Imbler v. Pachtman, 424 U.S. 409, 430 (1976) ……………………………………………….55

Kach v. Hose, 589, F.3d 626, 634 (3d Cir 2009)………… …….……………………………35

Kalina v. Fletcher, 522 U.S. 118, 129–30 (1997) ……………….…………………………….55

King v. United States, 576 F.2d 432 (2d Cir. 1978) ...................................................31

Kingsland v. Dorsey, 338 U.S. 318 (1949)………………………………………………....31

Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)… …..………………….….…16, 59, 82

Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000)……………………………………………………51

Lassiter v. Department of Social Services, 452 U.S. 18 (1981)......................................................19

Liteky v. United States, 510 U.S. 540 (1994) ...........................................................................20

Mapp v. Ohio, 367 U.S. 643 (1961)…………….. ……...................................................56

Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 174 (3d Cir. 2017)……………....................61

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)................................................19, 22, 60, 63, 77, 83

McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009)…………………..………………24

Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250 (2016) ............................49

Mireles v. Waco, 502 U.S. 9 (1991).......................................................................52, 53, 60, 80, 83

Monasky v. Taglieri, 589 U.S. 68, 76–77 (2020)…………………………….…………………42

Monroe v. Pape, 365 U.S. 167 (1961).......................................................................................38

Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998) ...............................................................74

Mooney v. Holohan, 294 U.S. 103 (1935) ...........................................................................60, 63

Monell v. Department of Social Services, 436 U.S. 658 (1978)..................................24, 25, 45, 84

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).......................................................50

Odd v. Malone, 538 F.3d 202, 211 (3d Cir. 2008) …………………………….…………...…….55

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994) …………..36, 50

Pearson v. Callahan, 555 U.S. 223, 232 (2009) ……………………………………….…..…..61

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) ................................................... ..........24, 46

Pope v. Federal Express Corp., 138 F.3d 1363 (11th Cir. 1998) ....................................................34

Powell v. Zuckert, 366 F.2d 634, 637 (D.C. Cir. 1966)…………………………………………73

Pulliam v. Allen, 466 U.S. 522, 541–42 (1984)……………………………………………………54

Rotella v. Wood, 528 U.S. 549 (2000)…................................................................................68

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)………… …………………… …………16

Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978)…..........................................................71

Steffel v. Thompson, 415 U.S. 452, 458 (1974)…………… …………………………………....49

S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)…....................................................................66, 67

Stump v. Sparkman, 435 U.S. 349 (1978)…..........................................................52, 60, 79

Tumey v. Ohio, 273 U.S. 510 (1927)…...............................................................................17

Turner v. Rogers, 564 U.S. 431 (2011) …...........................................................................22

United States v. Beggerly, 524 U.S. 38, 47 (1998)…… …….…………………………...29, 74, 84

United States v. Summerlin, 310 U.S. 414 (1940) ......................................................................74

United States v. Throckmorton, 98 U.S. 61 (1878)……………………………….…...29, 70, 82

Village of Willowbrook v. Olech, 528 U.S. 562 (2000)…………………………………………78

Wong Sun v. United States, 371 U.S. 471 (1963) ................................................................28, 67

Zinermon v. Burch, 494 U.S. 113 (1990)…..............................................................18, 20, 27, 61

**U.S. Statutes**

18 U.S.C. § 1001 ....................................................................................16, 34, 39, 75

18 U.S.C. § 1028 .......................................... ……………………………………..16, 75

18 U.S.C. §§ 241, 286, 371, 1028A, 1031, 1037, 1506, 1519 ......................................75

18 U.S.C. § 1341 ...............................................................................................16, 75

18 U.S.C. § 1343 ...........................................................................................15, 59, 75

18 U.S.C. § 1503 ...........................................................................................16, 33, 76

18 U.S.C. § 1512 ...........................................................................................15, 39, 75

18 U.S.C. § 1621 ...............................................................................................35, 76

18 U.S.C. § 1961 .............................................................................................66, 67, 68

18 U.S.C. § 1962 .......................................................................................16, 66, 75, 76

18 U.S.C. § 1964 .......................................................................................16, 68, 72, 76

28 U.S.C. § 1331 ............................................................................................... 16, 59

28 U.S.C. § 1343……………………………………………………………………..16, 59

28 U.S.C. § 1391 ............................................................................................... 16

31 U.S.C. § 3123 ....................................................................................................76

31 U.S.C. § 3729 .......................................................................................16, 66, 76

42 U.S.C. § 1983 ...........2, 13, 14, 16, 18, 22, 23, 24, 27, 29, 31, 35, 38, 45, 46, 50, 53, 55, 64, 66

42 U.S.C. § 1985 ......................................................................................... 16, 31, 72

42 U.S.C. § 1986 .....................................................................................................75

42 U.S.C. § 408 ......................................................................................................76

42 U.S.C. §§ 651, , 652, 658a .....................................................................................76

42 U.S.C. § 654 ......25

42 U.S.C. § 659a ......41

**International Treaties**

Hague Convention ......39, 40, 41, 76

**Public Laws**

Pub. L. No. 113-183 ......41

**Constitutional Provisions**

First Amendment......78

Fourth Amendment ......21

Fifth Amendment ...... 18, 19, 63

Eighth Amendment......22

Fourteenth Amendment ...... 18, 19, 21, 63

Eleventh Amendment......64

**Ethical Codes / Judicial Conduct**

ABA Model Rule 3.3 ......35

Canon 1 and Canon 2 (Code of Conduct for U.S. Judges) ......79, 80

**Federal Regulations**

45 C.F.R. § 302.34 ...... 25

45 C.F.R. § 307.13 ...... 24

## 1. PRELIMINARY STATEMENT

This action exposes systemic constitutional violations under color of state law, including due process deprivations, misuse of fabricated identities in judicial proceedings, and unlawful enforcement actions orchestrated through state and local agencies. These abuses reflect a pattern of non-judicial misconduct, administrative fraud, and willful disregard of civil rights safeguards guaranteed by the U.S. Constitution. The Plaintiff refers this matter to the U.S. Department of Justice Civil Rights Division and relevant oversight bodies, and respectfully urges media, legal watchdogs, and civil rights organizations to examine the broader implications for judicial accountability and the integrity of federally funded enforcement systems.

In addition, this civil rights complaint implicates the unlawful manipulation of racial and ethnic identity and the misuse of international mechanisms—including the 2007 Hague Convention on the International Recovery of Child Support—executed through materially false records and improper court proceedings. These violations were carried out pursuant to official policies, practices, and customs of state and municipal entities, giving rise to Monell liability. The Plaintiff further refers this matter to the U.S. Department of State, the HHS Office of Inspector General, and appropriate Congressional committees, and calls upon international legal observers and civil society to investigate this pattern of treaty abuse, identity-based fraud, and systemic constitutional harm.

## 2. INTRODUCTION

- The Plaintiff, Oyekunle Stephen Oyelakin, respectfully submits this Memorandum of Law in support of his Complaint seeking relief for extensive violations of his constitutional rights under 42 U.S.C. § 1983, federal statutes, and international treaty obligations.

- This case arises from fraudulent proceedings initiated under the Hague Child Support Convention from Ireland by "Olusola Hannah Edward" (herein referred as "Applicant") using fraudulently fabricated identity, falsified document, forged document and the use of multiple fraudulently fabricated identities without any legal justification in collusion with government actors in Pennsylvania and Ireland. The applicant and the Defendants used multiple inconsistent identities and fraudulently fabricated identities in issuing court orders, income withholding orders and other legal documents, knowingly and unlawfully tampered with court records to enforce defective child support orders, depriving the Plaintiff of due process, equal protection, and judicial fairness. The Defendants' misconduct included:

    o Fraudulent identity manipulations,

    o Alteration of official court dockets to conceal fraud,

    o Judicial fraud and case fixing,

    o Abuse of federal Title IV-D funding mechanisms.

- As the Supreme Court explained in *Blessing v. Freestone*, 520 U.S. 329, 343 (1997), Title IV-D is "a federal-state cooperative program" designed to ensure that states operate child support programs "in substantial compliance" with federal requirements. It does not create a private right to enforcement in individual cases. See also *Wehunt v. Ledbetter*, 875 F.2d 1558, 1563 (11th Cir. 1989) (Title IV-D "was not intended to create an individualized right to enforcement

but rather a system of state accountability.") However, *Blessing* does not insulate state officials from § 1983 liability where there are underlying constitutional violations, such as fraud, due process deprivations, or misuse of federal programs under color of state law.

- This action does not seek appellate review or reversal of any state court judgment but instead asserts independent federal claims arising from including identity fraud, obstruction of justice which led to constitutional violations.

- This Complaint is submitted **pro se**, and as such is entitled to liberal construction. **Rule 8 of the Federal Rules of Civil Procedure** provides that pleadings must "be construed so as to do substantial justice." The United States Supreme Court has long held that a pro se complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

- Courts have reaffirmed this principle, emphasizing that pro se litigants are entitled to special solicitude, and their pleadings must be read liberally to allow meritorious claims to be heard. Courts recognize that in the context of pro se litigation, technical errors should not bar access to justice. The Supreme Court has made clear that pleadings filed by pro se litigants must be liberally construed and evaluated under less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

- The Plaintiff respectfully requests that this Honorable Court evaluate the claims herein with the full measure of judicial consideration afforded to pro se litigants, in keeping with long-standing precedent and the interest of substantial justice. The Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and any further relief the Court deems just and equitable.

- All individual Defendants are sued in both their individual and official capacities to the extent permitted by law. Claims for monetary relief are sought only against individual Defendants in their personal capacities, and claims for injunctive and declaratory relief are directed to official capacities under Ex parte Young.

- The Plaintiff does not seek retrospective injunctive relief against judicial decisions, but prospective relief against ongoing violations and declaratory findings where applicable.

- The Plaintiff does not ask this Court to reassess or invalidate any state court decision. Instead, the allegations concern how the state court was misled through fabricated submissions by the DAO, including how the state Judges were using multiple fabricated identities interchangeably and concurrently to issue court orders, and the unlawful document manipulation. These acts of fraud on the court occurred outside the normal adjudicative process and therefore actionable under federal law.

- The Plaintiff currently proceeds pro se, exercising the right to self-representation under 28 U.S.C. § 1654. The Plaintiff reserves the right to retain legal counsel at any stage of these proceedings, and will file appropriate notice with the Court upon doing so.

- The Plaintiff possesses extensive evidentiary documentation, including but not limited to Certified Document Expert reports, formal Expert Witness reports, and supporting materials such as official records, correspondence, and court filings. These materials will be disclosed and submitted in accordance with the Federal Rules of Civil Procedure, including Rule 26(a)(1) and Rule 26(a)(2), at the appropriate stages of this litigation. The Plaintiff reserves the right to amend or separate legal claims as necessary based on jurisdictional rulings and further evidence.

## 3. JURISDICTION AND LEGAL BASIS

- This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 based on violations of 42 U.S.C. §§ 1983, 1985, and 1986. The Plaintiff also asserts claims under civil RICO, 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c), and the False Claims Act, 31 U.S.C. § 3729. Federal criminal statutes referenced herein—including 18 U.S.C. §§ 1001, 1028, 1341, 1343, 1503, 1512[1], and others—are not pled as standalone causes of action, but are cited as predicate offenses and pattern evidence of racketeering activity under RICO, and as factual support for the systemic constitutional violations committed under color of state law.

- Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions—including identity fraud, manipulation of court records, obstruction of justice, and civil rights violations—occurred in this District. The Defendants are headquartered, employed, or took official actions in this District while acting under color of state law.

- This action is independent of any state court appeal and challenges distinct federal claims outside the scope of any state judgment[2]. Under the **Rooker-Feldman doctrine**, federal courts lack jurisdiction to review final judgments of state courts. See *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). However, the doctrine does not apply where plaintiffs assert **independent claims** based on misconduct by state actors that deprived them of a meaningful opportunity to litigate. See *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004).

---

[1] The Plaintiff does not assert a private right of action under any criminal statute; such references are provided exclusively to establish predicate acts for civil RICO and or systemic fraud.

[2] Child Support Action with reference number No. LR.10.8.1842, and corresponding to Docket No. 20-05641 and PACSES Case No. 866300106

- As mentioned, the Plaintiff does not seek to overturn or nullify a state court judgment. Instead, the claims here arise from **extra-judicial conduct and fraud perpetrated outside the state court's decision-making process**, which is not barred by the Rooker-Feldman doctrine.

- The Complaint alleges with particularity the factual basis for claims of fraud and conspiracy, including dates, identities, specific documents used, and the overt acts of each Defendant. These allegations are well beyond mere conclusions and are entitled to be taken as true at this stage.

- Under Article III, Section 1, the federal judiciary is entrusted with the authority to adjudicate constitutional claims and enforce compliance with federal law and international treaty. The Plaintiff seeks relief for deprivations of federal rights that fall squarely within this Court's Article III jurisdiction.

- This Court has jurisdiction over this action pursuant to Article III, Section 2 of the United States Constitution, which extends the judicial power of the federal courts to all cases arising under the Constitution, the laws of the United States, and treaties made under their authority.

- The Plaintiff has Article III standing to pursue this action. He suffered concrete and particularized injuries—including financial loss, reputational harm, and deprivation of due process—traceable to the Defendants' conduct and redressable by this Court. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167 (2000).

- Unless otherwise specified, all individual Defendants are sued in both their individual and official capacities.

- No claims are asserted under criminal statutes unless expressly permitted by civil enforcement provisions such as RICO or the False Claims Act. All criminal statutes referenced herein are

cited solely as predicate acts supporting civil RICO liability and/or to demonstrate unlawful conduct within the meaning of 42 U.S.C. § 1983, not as standalone causes of action.

- While pro se pleadings are held to less stringent standards, the Complaint satisfies all required elements under **Rule 8(a)** and, where applicable, **Rule 9(b)**. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

- Even under Rule 9(b), courts allow a degree of flexibility for pro se litigants when the facts pled, as here, contain sufficient specificity and are supported by documentary exhibits. See *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

## 4. LEGAL ARGUMENTS

### I. Violations of Constitutional Rights Under 42 U.S.C. § 1983

#### A. Due Process Violations (5th and 14th Amendments)

The Supreme Court has repeatedly held that where state actors engage in conscience-shocking or arbitrary conduct that results in deprivation of liberty or property interests without due process, such conduct is actionable under 42 U.S.C. § 1983. See *County of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998); *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990). Plaintiff does not allege mere state procedural violations or negligence, but deliberate and egregious actions that violated his federally protected rights.

Federal courts have found in Zinermon v. Burch, 494 U.S. 113 (1990) that State officials can violate due process even if a post-deprivation remedy exists, when they had the ability to prevent the deprivation. Also, County of Sacramento v. Lewis, 523 U.S. 833 (1998) – Introduced the "shocks the conscience" standard for substantive due process violations.

The Plaintiff's right to procedural due process under the Fifth and Fourteenth Amendments was violated by the Defendants' fraudulent manipulation of judicial proceedings. The Defendants, acting under color of state law, failed to provide a fair opportunity for the Plaintiff to contest:

- Fraudulent claims submitted under fraudulently fabricated identities,

- Tampered court records and altered dockets,

- Defective child support enforcement actions based on manipulated documentation.

- The use of multiple fabricated identities in issuing court orders, income withholding orders, legal and other filings without any legal justification.

These actions deprived the Plaintiff of rights secured by the Fourteenth Amendment as recognized in Fuentes v. Shevin, 407 U.S. 67 (1972). The Supreme Court has held that due process requires fair procedures and an impartial tribunal before depriving any person of life, liberty, or property. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 267–71 (1970).

Litigants are entitled to a fair and impartial tribunal under the Due Process Clause of the Fourteenth Amendment. The Supreme Court in *Tumey v. Ohio*, 273 U.S. 510 (1927), held that judicial impartiality is fundamental to due process, particularly where a judge has a direct or indirect interest in the outcome.

- Lassiter v. Department of Social Services, 452 U.S. 18 (1981)—The right to due process includes legal representation in cases affecting fundamental rights.

- Hamdi v. Rumsfeld, 542 U.S. 507 (2004) – The government cannot detain or take property without affording the person due process.

- Marshall v. Jerrico, Inc., 446 U.S. 238 (1980) – Judicial bias or fraudulent manipulation of court procedures violates due process.
- Sniadach v. Family Finance Corp., 395 U.S. 337 (1969) – Wage garnishment without due process is an unconstitutional deprivation of property.

Here, the Defendants deprived the Plaintiff of:

- Opportunity to verify and contest the legal identities of the party bringing claims against him,
- An opportunity to contest fraudulent evidence,
  - The deliberate fabrication of evidence implicates "the fundamental due process right to a fair trial." Richards v. County of San Bernadino, 39 F.4th 562, 527 (9 Cir. 2022).
  - As held in Zinermon v. Burch, 494 U.S. 113 (1990): Due process requires meaningful opportunity to be heard, which was denied here.
- Transparent and unbiased judicial proceedings.

The Defendants' actions amounted to procedural fraud and judicial abuse, rendering the legal proceedings constitutionally defective. Additionally, judicial behavior reflecting favoritism or collusion can meet the threshold for constitutional violation under *Liteky v. United States*, 510 U.S. 540 (1994), where the Court clarified that "deep-seated favoritism or antagonism" may support a finding of bias.

The Defendants deprived the Plaintiff of the ability to contest fraudulent evidence, and a meaningful opportunity to be heard, in violation of the Fifth and Fourteenth Amendments. These constitutional violations are further demonstrated and elaborated in Sections II (Judicial

Misconduct) and IV (Hague Convention Violations), which describe the same acts under both domestic due process and international treaty frameworks.

## B. Equal Protection Violations (14th Amendment)

The Equal Protection Clause prohibits government actors from treating similarly situated individuals differently without a legitimate basis. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). The Defendants treated the Plaintiff differently by:

- Allowing fraudulent filings and enforcement actions based on fraudulently fabricated identities,
- Failing to investigate obvious inconsistencies,
- Using manipulated records against the Plaintiff while affording procedural protections to the other party.

Such discriminatory treatment denied the Plaintiff equal protection under the law.

## C. Unlawful Seizure of Property (4th Amendment)

The Defendants unlawfully seized the Plaintiff's property through:

- Garnished wages,
- Tax refund seizures,
- Enforcement of fraudulent or defective court orders.

These actions constitute unlawful government seizures in violation of the Fourth Amendment, which protects against unreasonable searches and seizures. *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969).

**D. Excessive Financial Penalties (8th Amendment)**

The Defendants subjected the Plaintiff to ongoing and excessive financial penalties by:

- Enforcing defective child support orders based on fraud,

- Repeatedly garnishing wages and tax refunds without legal justification.

Such penalties violate the Eighth Amendment's prohibition against excessive fines, as recognized in *Timbs v. Indiana*, 586 U.S. __ (2019).

**E. Violation of Due Process (Individual § 1983 Liability)**

The Fourteenth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. Procedural due process requires adequate notice, a meaningful opportunity to be heard, and a fair tribunal. (*Mathews v. Eldridge*, 424 U.S. 319 (1976)).

In *Turner v. Rogers*, 564 U.S. 431 (2011), the Supreme Court held that child support enforcement proceedings implicate serious due process concerns, especially when liberty or financial interests are at stake. Here, Defendants Judges Litwin, Ford and Murphy (Rtd.), ADA Lois Koscinski, ADA Maurice Youkanna, DA Larry Krasner, and Deputy Clerk Eric Assini deprived the Plaintiff of these protections by:

- o Submitting false sworn filings based on fabricated identities and forged documents;

- o Issuing defective court orders, income withholding orders and opinions using the applicant's multiple fabricated identities without any legal justification;

- o Concealing docket manipulation;

- o Refusing to investigate or remedy verifiable fraud.

This conduct was not merely negligent—it constituted deliberate misconduct under color of law that directly caused the Plaintiff to suffer illegal enforcement actions and loss of property without constitutionally required procedures.

## F. Fraud Upon the Court and Conspiracy to Deprive Civil Rights

Fraud upon the court arises where an officer of the court deliberately engages in conduct that corrupts the judicial process. Such fraud includes "the most egregious misconduct directed to the court itself," including fabrication of evidence, issuing defective court orders, tampering/unlawful manipulation of dockets, or intentional concealment of material facts. (*Herring v. United States*, 424 F.3d 384, 386–87 (3d Cir. 2005)).

Judges Litwin, Ford and Murphy (Rtd.) issued court orders and opinion using fabricated identities despite the notification and warnings, DA Krasner, ADA Koscinski and ADA Maurice Youkanna made filings to court using fabricated identities, DA Krasner and ADA Koscinski's verified September 14, 2022 filing contained false information under oath and was later disavowed. Deputy Court Administrator, Assini issued a letter mischaracterizing clear docket manipulation as a mere "ministerial error." These coordinated acts interfered with the Plaintiff's right to a fair and impartial tribunal and corrupted the judicial process.

A conspiracy under § 1983 exists where two or more actors, acting under color of law, agree to and do commit an act that violates constitutional rights. (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). The actions of these officials clearly reflect coordinated intent to deny the Plaintiff access to the courts and fair hearing and are actionable under § 1983.

### G. Monell Liability Against Philadelphia County

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when an official policy, custom, or the actions of a final policymaker cause a constitutional violation. The Plaintiff is not asserting liability under a respondeat superior theory, but instead pleads that Philadelphia County maintained a **de facto policy or custom** of ignoring identity inconsistencies, tampering with legal records, and enabling enforcement actions through fraudulent and defective documents.

Courts in the Third Circuit recognize Monell liability where plaintiffs plead patterns of misconduct and deliberate indifference. See *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). The Plaintiff also alleges **failures to investigate and correct known violations**, which constitute deliberate indifference rising to the level of official policy.

Furthermore, this Complaint identifies actions and ratifications by individuals with final policymaking authority, including supervisory judges and enforcement officers within DHS/BCSE and the DA's Office, whose failure to intervene or correct the constitutional violations satisfies Monell's policymaker standard. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

The Office of the District Attorney of Philadelphia acted as a final policymaker for Philadelphia County with respect to Title IV-D enforcement actions under the terms of the Cooperative Agreement with the First Judicial District. The DAO's failure to comply with federal and state confidentiality obligations, as required by Section IV(d) of the Agreement, 45 C.F.R. § 307.13, reflects a policy, custom, or deliberate indifference on the part of Philadelphia County in its administration of federally funded child support

24

enforcement mechanisms. This conduct supports Monell liability for fraud and systemic due process violations committed under color of law and through federally supervised programs.

The doctrine of municipal liability applies where a government's policies, customs, or failure to train led to the constitutional deprivation[3].

Philadelphia County entered into a cooperative agreement with the Philadelphia District Attorney's Office to perform administrative child support enforcement under Title IV-D of the Social Security Act. This delegation of administrative function, authorized by 42 U.S.C. § 654(6) and 45 C.F.R. §§ 302.34, 303.107, places responsibility on the County for supervising the DAO's Title IV-D enforcement actions.

The following policies, customs, or failures constitute grounds for Monell liability:

- o   Enforcement of support orders based on fabricated identities;
- o   Lack of verification of identity documents or supporting filings;
- o   Legal filing under multiple fabricated identities;
- o   Submitting fraudulent document into the court record;
- o   Failure to investigate fraudulent filings despite repeated notice;
- o   Deliberate indifference to known procedural violations and constitutional harms.

Philadelphia County, through its DAO Title IV-D enforcement unit, allowed these unconstitutional practices to continue unchecked. The County's failure to supervise, train, or investigate was a moving force behind the deprivation of the Plaintiff's rights.

---

[3] *See Monell v. Department of Social Services, 436 U.S. 658 (1978).*

25

The Philadelphia Family Court, DHS/BCSE, and District Attorney's Office each maintained and implemented longstanding policies, customs, or practices of:

- o accepting and enforcing child support and court orders based on fabricated identity records;

- o refusing to investigate or correct fraudulent submissions despite formal challenges;

- o manipulating docket entries to conceal misconduct; and

- o failing to train staff and prosecutors on procedures for verifying identity and due process compliance.

These institutional failures demonstrate deliberate indifference to constitutional rights and directly caused the injuries alleged.

## II. Judicial Misconduct, Fraud on the Court, and Docket Tampering

### A. Judicial Misconduct by Judges Litwin, Ford, and Murphy

Judges are constitutionally obligated to maintain impartiality and uphold the integrity of the judicial process. *In re Murchison*, 349 U.S. 133 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

Judge Margaret Murphy, prior to retirement, signed several conflicting income withholding orders alternating between 'Olusola H. Edward' and 'Hannah O. Edward' without conducting any hearing or requiring verified identification before the name change. Judge Murphy's entry of multiple conflicting orders without identity verification directly enabled the initiation of fraudulent support actions. Her orders created the initial jurisdictional foundation for ongoing fraudulent enforcement actions. This direct participation in the use

26

of fabricated identities makes her personally responsible for initiating the due process deprivations that followed.

As discussed in Section I.A, the knowingly use of inconsistent identities without legal justification and manipulated court docket constitutes a systemic due process violation. Here, these acts are emphasized as judicial misconduct constituting fraud and abuse of judicial process actionable under § 1983 and not shielded by judicial immunity.

## B. Fraudulent Alteration of Court Dockets and Clerk's Role

The Clerk of the Philadelphia Family Court unlawfully altered official court dockets by:

o   Changing the legal identity of the applicant from "Olusola H. Edward" to "Hannah O. Edward" without legal process or notification[4],

o   Facilitating the use of inconsistent identities in court orders and enforcement actions.

Administrative manipulation of court records constitutes fraud upon the court, obstructing justice, and denying the Plaintiff a fair legal process. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

The Clerk of Court's deliberate alteration of docketed party names from 'Olusola H. Edward' to 'Hannah O. Edward' without notice or judicial order caused the Plaintiff's inability to challenge the correct party, created procedural confusion, and enabled the enforcement of fraudulent proceedings. This administrative conduct was a proximate cause

---

[4] This conduct was administrative and extrajudicial in nature and is therefore not protected by absolute immunity. See Forrester v. White, 484 U.S. 219 (1988).

of the deprivation of the Plaintiff's property and rights under *Zinermon v. Burch*, 494 U.S. 113 (1990).

Deputy Court Administrator Eric J. Assini further concealed this misconduct by mischaracterizing the tampering of the court record as a "ministerial error," despite its material legal impact. This false characterization obstructed the Plaintiff's efforts to challenge the fraud.

  o Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) – Extreme bias or manipulation of court proceedings violates due process.

  o Gonzaga University v. Doe, 536 U.S. 273 (2002) – Individuals have a right to sue for violations of federally funded programs, such as child support enforcement.

  o United States v. Windsor, 570 U.S. 744 (2013) – Government agencies cannot act beyond their statutory authority or violate federal law.

- **Tainted Legal Outcomes Arising from Fraudulent Acts**

The Defendants' allowing the use of fabricated identities interchangeably and concurrently, false documentation, and manipulated court filings as the foundation for legal proceedings. Under the common law doctrine of fraud, any order or judgment procured through intentional deception is defective. Fraud vitiates all that it touches. Further, the evidentiary exclusion principle known as the **"fruit of the poisonous tree"** doctrine, while rooted in Fourth Amendment jurisprudence, is equally instructive in cases involving systemic fraud.

As established in *Wong Sun v. United States*, 371 U.S. 471 (1963), and *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), the exclusion of tainted evidence is necessary to deter government misconduct and preserve judicial integrity. Here, all legal actions —

including child support orders, wage garnishments, and administrative enforcement — are products of an initial fraud. As such, they are derivative and constitutionally defective.

## C. Case Law Supporting Fraud Upon the Court Claims

Federal courts recognize fraud upon the court where officials:

- o Manipulate records,

- o Submit false evidence,

- o Mislead judicial proceedings.

See *United States v. Throckmorton*, 98 U.S. 61 (1878); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

Such fraud:

- o Tainted the integrity of the legal proceedings,

- o Supports independent claims under 42 U.S.C. § 1983,

- o Requires judicial intervention to restore the integrity of court proceedings.

## Statute of Limitations for Fraud Upon the Court

- Fraud upon the court is considered "equitable in nature" and not subject to ordinary statutes of limitations in many jurisdictions, including federal courts.

- Courts have consistently held that there is no statute of limitations for fraud upon the court, recognizing it as a distinct and exceptional doctrine aimed at preserving the integrity of judicial proceedings.

- o See *United States v. Beggerly*, 524 U.S. 38, 47 (1998) (distinguishing between ordinary fraud and fraud on the court, noting the latter has no strict time bar if brought within a "reasonable time").

- o See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) (fraud on the court justifies relief regardless of time if it undermines the judicial process).

- o See also *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005).

- Even if a limitations period were to apply, the Plaintiff's claims remain timely under the Continuing Violation Doctrine. This doctrine provides that where a defendant's conduct constitutes an ongoing or repeated violation that continues to inflict harm, the statute of limitations does not begin to run until the violation ceases. See *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (recognizing that claims involving "continual unlawful acts" may be timely if the violation is ongoing); *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (noting that continuing violations may keep claims alive if harm continues into the limitations period).

- Equity bars the Defendants from benefiting from their own wrongdoing. It would be contrary to principles of justice and fairness to allow the use of fraudulent filings to go unchallenged merely because time has passed, especially when the harm continues and the Plaintiff had no full and fair opportunity to correct the record earlier due to defendants' own concealment and procedural obstruction. See *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (equity tolls the statute of limitations until the fraud is discovered or should have been discovered with reasonable diligence).

- The Plaintiff's claims are timely under the **discovery rule**, as the full extent and pattern of the fraudulent scheme—particularly the use of fabricated identities, altered court records,

and international enforcement fraud—was not and could not have been discovered with reasonable diligence until January 2025, when the unlawful court docket manipulation and the use of multiple fabricated identities for enforcement action, court orders and legal filings were discovered.

**Federal Procedural Standard**

- **Federal Rule of Civil Procedure 60(d)(3)** have held that there is no fixed time limit for raising fraud upon the court, as it implicates the fundamental integrity of judicial proceedings.

### D. Conspiracy to Deprive Rights Under 42 U.S.C. § 1983

- Under Kingsland v. Dorsey, 338 U.S. 318 (1949), courts have ruled that state officials engaged in fraudulent judicial actions can be liable under 42 U.S.C. § 1983.

- Here, court officials and DAO coordinated use of multiple identities to enforce fraudulent judgments deprived the Plaintiff of constitutional rights, falling squarely within 42 U.S.C § 1983 claims.

- Where state actors or officials are involved, these acts support a civil conspiracy claim under 42 U.S.C. § 1985(3) and a civil rights violation under 42 U.S.C. § 1983, as in Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993). Additionally, tampering with court dockets to conceal fraud or identities obstructs justice and further evidences systemic misconduct, as acknowledged in King v. United States, 576 F.2d 432 (2d Cir. 1978).

- These authorities confirm that identity fraud, when coordinated with others or facilitated by officials, is actionable as a conspiracy to violate constitutional rights and as fraud upon the court.

### E. Judicial Bias and Manipulation Violates Due Process

- *Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)* established that judicial misconduct or bias violates due process when it creates an unfair legal proceeding.
- Court officials' use of multiple, conflicting identities and tampering with court records undermines the legitimacy of court proceedings and amounts to judicial bias or deliberate misconduct.

## III. Fraudulent Filings and Obstruction by DAO, DA and Assistant District Attorneys

### A. Fraudulent Submissions by ADA Lois Koscinski and DA Krasner

On September 14, 2022, Assistant District Attorney Lois Koscinski, on behalf of the DA Krasner and the Philadelphia District Attorney's Office (DAO), filed a response in Philadelphia Family Court attaching an undated letter from "Goshen Chambers," a Nigerian law firm. This document:

- Introduced fraudulent claims about the Hague Convention applicant's identity, listing conflicting names such as "Hannah Olusola Ajayi Edward" and "Hannah Olusola Edward" without verified legal documentation,
- Was submitted under oath by ADA Koscinski, misleading the Court into relying on fraudulently fabricated identity claims.
- Assistant District Attorney (ADA) Koscinski and DA Krasner made materially false and inflammatory allegations concerning Mr. Samuel Tolulope Ajayi, the biological

32

older brother of the applicant and a material witness for the Plaintiff. Under oath, ADA Koscinski alleged that Mr. Ajayi would be indicted by Nigerian authorities for a serious offense and falsely asserted that he had attempted to "eliminate" the applicant to conceal crimes he allegedly committed in Nigeria prior to his emigration to the United States. This was an attempt to manipulate the court proceedings, intimidate and silent the witness.

When the Plaintiff formally challenged the authenticity of this submission, ADA Koscinski:

- Denied authorship of the filing in a May 8, 2023, letter,
- Altered the Defendant's name in official DAO records without legal justification.

This pattern of submission, denial, and manipulation of material facts constitutes obstruction of justice in violation of 18 U.S.C. § 1503 and fraud upon the court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

## B. Fraudulent Submission by DA Krasner and DAD Youkanna

DA Krasner and ADA Youkanna engaged in submitting legal fillings to the Philadelphia Family Court using inconsistent and simultaneous use of multiple distinct fraudulently fabricated identities ("Olusola H. Edward", "Hannah O. Edward" and "Hannah Edward") for the applicant, despite knowing of the Plaintiff numerous challenges regarding the fraudulent identities which the DAO has refused to investigate fully and his involvement in the case since March 2023.

## C. Fraud Upon the Court – Verified Filing by DA Krasner and ADA Koscinski Followed by Denial of Content

The U.S. Supreme Court has long held that courts possess **inherent authority to sanction fraud upon the court** and bad faith conduct by litigants and counsel. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Court affirmed that bad faith litigation tactics— including misrepresentations and abuse of the judicial process—warrant sanctions, including dismissal and fee awards. The Court emphasized that "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 44.

In *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989), the First Circuit affirmed dismissal of a case where a party filed a verified complaint with a forged document and later attempted to distance themselves from that filing. The court held that such conduct was "a near-classic example of fraud upon the court" and stressed that parties "must suffer the consequences of that scheme." *Id.* at 1118.

Similarly, in *Pope v. Federal Express Corp.*, 138 F.3d 1363 (11th Cir. 1998), the Eleventh Circuit upheld dismissal where a party submitted a sworn affidavit and later denied its authenticity, ruling that "a plaintiff's attempt to perpetrate a fraud on the court is sufficient to justify dismissal of the entire action." *Id.* at 1372.

Here, ADA Lois Koscinski submitted a verified court filing in her official capacity as an officer of the court on behalf of DA Krasner and representative of the District Attorney's Office. The filing under oath contained material factual representations later disavowed, following the Plaintiff's formal challenge and public records request. Such conduct is prohibited under:

- o **Federal Rule of Civil Procedure 11(b)** – prohibiting the filing of documents not grounded in fact or law;

- o **18 U.S.C. § 1001** – prohibiting knowingly false or fraudulent statements;

- o **18 U.S.C. § 1621** – prohibiting perjury under oath; and

- o **ABA Model Rule 3.3** – requiring candor toward the tribunal.

The deliberate act of verifying a filing and later disowning it obstructs the administration of justice and constitutes fraud upon the court. Courts have consistently held that such conduct justifies the imposition of sanctions, nullification of proceedings, and, where appropriate, disciplinary referrals.

## D. The Complaint Is Timely Under the Continuing Violation and Delayed Harm Doctrines

The Defendants may argue that certain events underlying the Plaintiff's claims—such as the sworn false allegations filed by Assistant District Attorney Koscinski on September 14, 2022—fall outside the applicable limitations period for claims brought under 42 U.S.C. § 1983. However, this argument is without merit. The Plaintiff's claims are timely because the harm stemming from these acts has continued through the present and constitutes part of an ongoing pattern of constitutional and statutory violations.

➢ **Applicable Limitations Period**

Federal courts apply the state's personal injury statute of limitations to claims brought under § 1983. In Pennsylvania, the applicable statute of limitations is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). While the limitations period generally begins

when a plaintiff knows or should know of the injury, courts recognize exceptions in cases involving ongoing or continuing harm.

➤ **Continuing Violation Doctrine Applies**

The "continuing violation doctrine" allows claims that would otherwise be time-barred to proceed where the wrongful conduct is part of an ongoing pattern and at least one act falls within the statutory period. As the Third Circuit explained in *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001), the doctrine is applicable where a defendant's conduct is part of a continuing practice, and the most recent act in the series occurred within the limitations period.

Here, the false and retaliatory filing made by ADA Koscinski was not an isolated event, but rather a component of a broader scheme to intimidate material witnesses, interfere with the Plaintiff's access to testimony, and perpetuate fraudulent legal proceedings. The effects of this conduct—namely, the deterrence of witness participation, reputational harm, and the obstruction of justice—continue to impair the Plaintiff's rights. This pattern includes additional conduct that falls well within the statutory window, preserving the claim's timeliness.

➤ **Delayed Harm and Equitable Tolling Also Support Timeliness**

Even if the retaliatory act occurred more than two years before the filing of this Complaint, the doctrine of **delayed harm** recognizes that a cause of action may accrue not at the time of the defendant's act, but when the injury or its full effects are realized. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994). The Plaintiff's ongoing inability to secure material witness cooperation and the enduring prejudice to judicial fairness constitute such delayed or continuing harm.

36

Alternatively, equitable tolling may apply where the defendant's conduct prevented the Plaintiff from asserting the claim in a timely manner or where extraordinary circumstances existed. The deliberate misrepresentation and manipulation of witness credibility by a public official under color of law supports equitable relief from strict limitations application.

**Accordingly**, the Plaintiff's claims based on the September 2022 incident are timely, either as part of a continuing violation, through the delayed harm doctrine, or under principles of equitable tolling. The inclusion of these events in the Complaint is both appropriate and necessary to demonstrate the systemic nature of the misconduct at issue.

Additionally, **equitable tolling** is warranted due to the Defendants' active **fraudulent concealment** of material facts, including suppression of filings, misrepresentation of identity documents, and systemic obstruction of the Plaintiff's ability to obtain relief through normal judicial or administrative channels.

### E. Identity Manipulation by ADA Maurice Youkhanna and DA Krasner

ADA Maurice Youkhanna and DA Krasner, acting under color of state law, are sued in both their individual and official capacities for knowingly participating in acts constituting identity fraud, record tampering, and obstruction of justice. Specifically:

- o Filed briefs and motions under alternating identities[5],
- o Submitted inconsistent filings before the Superior Court and the Supreme Court of Pennsylvania,

---

[5] This conduct was administrative and extrajudicial in nature and is therefore not protected by absolute immunity. See Forrester v. White, 484 U.S. 219 (1988).

- o Contributed to the confusion and misrepresentation of the Defendant's legal identity.

Such deliberate manipulation of party identities undermines judicial integrity and violates the Plaintiff's due process rights under the Fourteenth Amendment. This misconduct also constitutes fraud on the court and violates ethical obligations under Pennsylvania Rules of Professional Conduct.

**F. Institutional Complicity by District Attorney Lawrence Krasner**

As head of the DAO, District Attorney Lawrence Krasner:

- Failed to supervise or correct his subordinates' fraudulent submissions,
- Allowed the DAO to continue using conflicting identities in official proceedings,
- Participated in the perpetuation of fraud upon the court.

Government officials who knowingly participate in, or fail to prevent, constitutional violations are liable under 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167 (1961).

District Attorney Larry Krasner, as final policymaker for Title IV-D enforcement under the Cooperative Agreement with Philadelphia County, had actual and constructive knowledge of the repeated identity manipulation, fraudulent filings, and unlawful docket activity performed by his subordinates. Despite the Plaintiff's formal challenges, Right-to-Know requests, and repeated legal filings identifying these constitutional violations, Krasner failed to initiate any corrective investigation, disciplinary action, or withdrawal of the fraudulent court submissions.

His deliberate inaction directly allowed the enforcement of fraudulent court orders and deprivation of Plaintiff's property and due process rights. This makes him personally liable

under *Monroe v. Pape*, 365 U.S. 167 (1961), and supervisory liability standards established in *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010).

### G. Legal Consequences of DAO's Conduct

The DAO's actions:

- o Obstructed the Plaintiff's ability to challenge fraudulent proceedings,

- o Contributed to judicial fraud,

- o Violated federal statutes including 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 1512 (Obstruction of Justice).

These actions fall outside the scope of prosecutorial immunity because:

- o The DAO engaged in administrative fraud, not legitimate advocacy,

- o Fraudulent filings and manipulation of court records are not protected functions.

See *Forrester v. White*, 484 U.S. 219 (1988); *Ex parte Young*, 209 U.S. 123 (1908).

## IV. Hague Convention and UIFSA Jurisdictional Defects

The Plaintiff does not seek redress from any foreign sovereigns; rather, he asserts that domestic officials and agencies misused international treaty procedures to commit constitutional violations actionable under federal law.

The Plaintiff does not bring any direct claims against foreign sovereigns, agencies, or entities such as the Department of Justice of Ireland. Instead, the Hague Convention and UIFSA are raised here solely to demonstrate how U.S.-based defendants—including the DAO, DHS/BCSE, and the Philadelphia Family Court and their officials misapplied and misused international treaty procedures and relied upon fraudulent foreign-origin documents to deprive the Plaintiff of his federal constitutional rights. These violations are asserted solely

against domestic officials and agencies acting under color of state law in their administration and enforcement of treaty obligations.

While the facts regarding identity fraud, defective court orders and court record manipulation have been discussed in Sections I and II, this Section focuses specifically on how those same acts violate international treaty obligations and UIFSA jurisdictional requirements, giving rise to distinct but related claims beyond domestic constitutional violations.

## A. The Hague Application and Due Process Mandate

The 2007 Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance requires that child support applications:

- o Involve a child who is habitually resident in a Contracting State (Articles 2(1) and 10),
- o Be transmitted through that State's Central Authority (Article 9),
- o Be based on accurate and verifiable identity information (Article 11).

The applicant, Olusola H. Edward fraudulent actions, including identity manipulation, identity fraud, use of multiple fraudulently fabricated identities, improper filings, use of fraudulent Ireland banking information, use of a falsified U.S. birth certificate, and procedural fraud, constitute violations of the Hague Convention's provisions. The Hague Child Support Convention embeds due process considerations within its framework and seeks to balance the need for efficient international enforcement of support orders with the fundamental principles of due process. It does this by:

- o  Respecting the jurisdictional rules of participating countries.

- o Allowing for the refusal of enforcement when orders violate fundamental public policy.

Therefore, although the convention is designed to make international child support recovery more efficient, it also has built-in safeguards to protect people's due process rights. The convention's provisions aim to create a system that facilitates international child support recovery while respecting fundamental fairness.

**Fraudulent Habitual Residence Claims Render the Hague Application Unlawful**

The 2007 Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance (the "Convention") establishes that an application for child support must involve a child and applicant who is habitually resident in a Contracting State. This requirement is a jurisdictional cornerstone for both initiating and enforcing support obligations across international boundaries. See Hague Maintenance Convention, Arts. 2(1), 10.

The Convention further provides that a Contracting State may refuse recognition or enforcement of a decision if "the decision was obtained by fraud in connection with a matter of procedure. See id., Art. 22(b).

In the United States, the Convention was implemented through the Preventing Sex Trafficking and Strengthening Families Act, Pub. L. No. 113-183[6] (2014), and codified in part at 42 U.S.C. § 659a and through the Uniform Interstate Family Support Act (UIFSA).

---

[6] Pub. L. No. 113-183 refers to the Preventing Sex Trafficking and Strengthening Families Act, which was signed into law by President Obama on September 29, 2014.

Although the Convention does not define "habitual residence," courts interpreting the term—both internationally and within the United States—have consistently held that it refers to the child's actual home, characterized by a meaningful degree of integration and stability in the environment. The analysis is fact-sensitive and context-dependent.

In *Monasky v. Taglieri*, 589 U.S. 68, 76–77 (2020), the U.S. Supreme Court affirmed that the determination of habitual residence must be based on the totality of the circumstances, not on parental intent or formal documentation alone. Relevant factors include the child's physical presence, the duration and quality of residence, and the integration into the social and familial environment. Where documentation supporting a claim of habitual residence is false or misleading, the jurisdictional foundation necessarily collapses.

In the present case, the applicant Olusola Hannah Edward, acting in concert with the Department of Justice (Ireland), the Philadelphia Family Court, DHS/BCSE, and the District Attorney's Office (DAO), fraudulently asserted that the child, O.S.O. and herself were lawful habitually resident in Ireland, a Contracting State. This claim was premised on a series of materially false and fabricated documents, including:

o   Fraudulently obtained Irish citizenship and passport for the applicant,

o   Conflicting and inconsistent identity documents,

o   A forged and invalid U.S. birth certificate for the child, and

o   A fraudulently obtained U.S. passport (No. 4727433XX) used to establish and assert habitual residence abroad.

These misrepresentations formed the basis of a defective application under the Hague Convention, transmitted through Ireland's Central Authority, resulting in an improper and jurisdictionally defective support determination. This is where the due process commenced before the state actors and agencies took over.

Pursuant to Articles 2(1) and 10, the Convention applies only where the child is habitually resident in a Contracting State and where the application is transmitted through that State's Central Authority in compliance with Articles 5–9. Accordingly, jurisdiction under the Convention is contingent upon a lawful and factually accurate establishment of habitual residence in the requesting State at the time of the application or judgment.

Where, as here, the assertion of habitual residence is predicated on fraud, any resulting jurisdiction or determination is invalid. The applicant, Olusola H. Edward, DOJ Ireland[7], DHS/BCSE[8], and the DAO, submitted fraudulent materials in support of the Hague application, including:

- o A falsified U.S. birth certificate for the child,

- o A fraudulently obtained U.S. passport,

- o Fraudulent Irish citizenship and residency claims,

- o Conflicting identity documents under multiple assumed names.

These misrepresentations invalidate the jurisdictional foundation of the Hague application and violate Articles 22(b) and 30(4)(b) of the Convention, which permit refusal of enforcement

---

[7] Plaintiff does not seek to impose liability on any foreign government or foreign official. Rather, this case arises from the misuse of foreign records by U.S.-based actors acting under color of state law, who used or accepted these documents in violation of Plaintiff's constitutional rights.

[8] For clarity, "DHS/BCSE" refers to the Pennsylvania Department of Human Services (DHS) and its internal division, the Bureau of Child Support Enforcement (BCSE). DHS is the sole named defendant; BCSE is referenced only in its operational role administering the Title IV-D child support program.

where the order was "obtained by fraud and deception in connection with a matter of procedure. The child support agencies and state actors were notified of the fraud but decided to continue the fraud and violate the Plaintiff due process rights.

## B. UIFSA Jurisdictional Requirements Were Not Met

The Uniform Interstate Family Support Act (UIFSA 2008), codified in Pennsylvania and all U.S. states, mirrors the Hague Convention's requirements by mandating:

- o Verification of identity,
- o Verification of habitual residence,
- o Compliance with jurisdictional and procedural standards.

Under UIFSA § 706(b), U.S. tribunals must refuse to recognize foreign support orders obtained through fraud. The Defendants' reliance on falsified documents and fraudulent habitual residence claims violates the Plaintiff rights and UIFSA and renders the support orders constitutionally defective under Pennsylvania law.

## C. Legal Precedent on Habitual Residence Fraud

Courts have held that fraudulent claims of habitual residence in the Hague Convention process violates the Plaintiff's due process rights as well as invalidate jurisdiction under international conventions. See *Monasky v. Taglieri*, 589 U.S. ___ (2020), which requires a fact-sensitive inquiry into the child's actual, lawful, and stable residence.

Here, the fraudulent documents used to establish the child's supposed habitual residence in Ireland:

- o Were fabricated,

    o  Relied on falsified U.S. birth records and identity records (U.S. passport)[9],

    o  Misled U.S. and Irish authorities into asserting false jurisdiction.

## D. Public Policy and Due Process Implications

Recognition or enforcement of a foreign order obtained through fraud is manifestly incompatible with public policy under Article 22(a) of the Hague Convention. Such fraud:

    o  Undermines U.S. sovereignty and judicial integrity,

    o  Deprives citizens like the Plaintiff of due process,

    o  Corrupts the treaty enforcement process.

U.S. courts are obligated to refuse enforcement of fraudulent foreign orders to protect constitutional rights and uphold the rule of law. To be clear, the Plaintiff seeks no relief against foreign governments or foreign officials. The claims presented herein concern only the constitutional violations committed by domestic defendants who, in enforcing the Hague Convention and UIFSA provisions, failed to exercise proper judicial and administrative safeguards, relied on fraudulent submissions, and thereby violated the Plaintiff's rights under the U.S. Constitution and federal civil rights laws.

## V. Monell Liability and Institutional Misconduct

### A. Legal Standard for Monell Liability

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), municipalities and government entities may be held liable under 42 U.S.C. § 1983 when constitutional violations arise from:

---

[9] The Plaintiff in this case, does not seek redress from foreign governments or invoke jurisdiction over foreign officials; rather, these foreign records were introduced and misused by domestic officials under color of state law within the jurisdiction of this Court.

      o  Official policies,

      o  Established customs or practices,

      o  Actions of final policymakers.

Municipal liability extends to state and local agencies, including courts, child support enforcement bodies, and prosecutorial offices, when their policies or practices directly cause constitutional harm.

The DAO's repeated use of inconsistent identities over a multi-year period, failure to conduct internal investigations, and continuation of enforcement despite formal complaints illustrates a pattern of deliberate indifference amounting to municipal policy under *Monell*.

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), is a landmark United States Supreme Court case concerning municipal liability under 42 U.S.C. § 1983. As the Supreme Court clarified in *Pembaur v. City of Cincinnati*, 'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy concerning the subject matter in question.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

The Supreme Court has established that a municipality can be held liable under Section 1983 for a single decision made by an official with final policymaking authority—*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

While municipalities are not liable under Section 1983 for the torts of their employees based solely on the theory of *respondeat superior* (as established in *Monell v. Department of Social Services*), they can be held liable when the employee's action represents official policy.

## B. Pattern and Practice of Fraudulent Court and Agency Conduct

The Defendants, Philadelphia Family Court, DHS/BCSE, and DAO engaged in an institutionalized pattern and practice of:

- o Using inconsistent and fraudulent identities in court proceedings,
- o Tampering with court records and dockets to conceal fraud,
- o Issuing and enforcing child support orders based on fabricated identities and manipulated documentation,
- o Securing Title IV-D federal incentive funds through fraudulent claims.

This conduct constitutes a custom or practice actionable under Monell, as it reflects:

- o Repeated, systemic misconduct,
- o Deliberate indifference to the constitutional rights of litigants,
- o Institutional complicity in fraud and obstruction of justice.

## C. Title IV-D Funding Abuse as a Motivating Factor

The Social Security Act, 42 U.S.C. § 651 et seq., provides federal reimbursement (Title IV-D funding) to states that enforce child support obligations.

The Defendants exploited this program by:

- o Pursuing fraudulent enforcement actions;
- o Manipulating records to qualify for federal incentives;
- o Utilizing multiple fabricated identities interchangeably and concurrently to issue court orders without legal basis;
- o Ignoring due process and jurisdictional requirements to secure funding.

47

Such financial reimbursement motivated the Plaintiff's due process violation and corrupted the integrity of the child support enforcement process and incentivized misconduct at the institutional level.

### D. DAO's Role in Institutional Misconduct

The DAO's filing of fraudulent documents, manipulation of identity records, and obstruction of Plaintiff's challenges reflect:

- o    A deliberate policy or practice of suppressing judicial accountability,
- o    A failure to correct known fraudulent filings,
- o    Institutional participation in constitutional violations.

This makes DAO liable under Monell for its role in:

- o    Supporting fraudulent proceedings,
- o    Facilitating judicial misconduct,
- o    Knowingly enforcement of defective child support actions,
- o    Denying the Plaintiff due process and equal protection.

### E. Municipal and Agency Liability Established

Because the Philadelphia Family Court, DHS/BCSE, and DAO:

- • Acted pursuant to institutional practices and policies,
- • Failed to correct known constitutional violations,
- • Benefited from federal funding based on fraudulent enforcement, they are liable under Monell for the deprivation of the Plaintiff's constitutional rights.

In addition to the claims for damages and prospective equitable relief, the Plaintiff seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Federal courts are

empowered to "declare the rights and other legal relations of any interested party" where an actual controversy exists. The present controversy—concerning misuse of identity, fraudulent court records, and ultra vires state conduct—falls squarely within that scope. Declaratory relief is warranted to establish the invalidity of unlawful administrative and judicial acts and to prevent further constitutional injury. See *Steffel v. Thompson*, 415 U.S. 452, 458 (1974) ("The Declaratory Judgment Act was designed to provide a form of relief that is neither coercive nor intrusive, yet anticipatory of litigation.").

## VI. Doctrinal and Legal Defenses Addressed

### A. Equitable Tolling and Continuing Violation Doctrine Apply

The Plaintiff did not discover the full extent of the fraudulent docket alterations and fabricated identity records until January 2025. As such, all claims are timely under the discovery rule and continuing violation doctrine.

- o Equitable tolling applies where government actors conceal fraud or obstruct discovery of constitutional violations. See *Holland v. Florida*, 560 U.S. 631 (2010); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946).

- o The Plaintiff did not discover the unlawful docket alterations and fraudulent identity usage until January 2025. The Defendants' concealment and ongoing enforcement of fraudulent orders warrant tolling of any statute of limitations defense.

- o Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250 (2016) - The Supreme Court clarified that extraordinary circumstances beyond the Plaintiff's control can warrant equitable tolling.

- Equitable tolling ensures that procedural technicalities do not bar meritorious constitutional and federal statutory claims from being heard. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

- A statute of limitations under 42 U.S.C. § 1983 may be equitably tolled where the Plaintiff was unaware of the underlying constitutional violation due to concealment or extraordinary obstacles. In *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), the Third Circuit held that fraudulent concealment of constitutional violations justifies tolling.

- As previously discussed, the ongoing nature of the Defendants' misconduct—such as repeated defective enforcement actions, continued unlawful wage garnishments, and the persistent use of altered records—constitutes a continuing violation that tolls the limitations period. This doctrine ensures that constitutional injuries resulting from a repeated pattern of unlawful conduct remain actionable[10].

- The Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,117 (2002), held that a pattern of violations may allow for older claims to be considered if at least one act occurred within the limitations period.

- The **continuing violation doctrine** also applies because the constitutional and statutory violations were not isolated events but part of a **pattern of ongoing misconduct** and concealment, including continued use of fraudulent identities and enforcement mechanisms well into the limitations period.

---

[10] See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–118 (2002) (holding that ongoing discriminatory acts can extend limitations period in civil rights claims); *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (applying the continuing violations doctrine to equitable tolling in § 1983 cases); *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (distinguishing between present effects and present violations).

○ Finally, **equitable tolling** applies when a defendant's fraudulent concealment prevents timely filing. See *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). The Defendants' use of multiple fabricated identities, fraudulent and or documents, obstruction of access to records, docket manipulations/tampering and administrative suppression tactics establish the necessary grounds for tolling.

## B. Public Duty, No Duty, Moral Wrong, and Foregone Conclusion Doctrines Rejected

### I. Public Duty Doctrine

The Defendants exceeded their public duties by engaging in direct, harmful conduct against the Plaintiff. *Ashburn v. Anne Arundel County, 306 Md. 617 (1986)* (holding that a public entity may be held liable where a special duty arises through affirmative acts of misconduct). The Defendants breached their legal duty by actively participating in fraudulent proceedings and manipulating court records, which made them liable under 42 U.S.C. § 1983.

### II. No Duty Doctrine

The Defendants assumed a duty by processing fraudulent filings and manipulating records, thereby breaching their obligations. *See Jones v. Three Rivers Mgmt. Corp., 394 A.2d 546 (Pa. 1978)* - (finding that a duty exists where an entity assumes a responsibility that affects an individual's rights). The Defendants may attempt to invoke the No Duty Doctrine, arguing that they had no legal duty to correct errors or prevent fraudulent filings. However, courts recognize that when an entity or official undertakes an action that increases harm or violates a statutory duty, the doctrine does not apply. The No-Duty Doctrine does not apply because the Defendants had statutory obligations to maintain accurate court records,

prevent fraudulent enforcement actions, and ensure equal protection of the law and due process.

## III. Moral Wrong Doctrine

Fraud, identity manipulation, and obstructing justice are moral wrongs that bar any equitable defense. *See Morissette v. United States, 342 U.S. 246 (1952)* - (establishing that intent to commit a wrongful act negates any defense of ignorance). The fraudulent actions constitute moral wrongs that cannot be excused or overlooked under legal doctrines.

## IV. Foregone Conclusion Doctrine

Courts cannot accept manipulated records or fraudulently fabricated identities as a foregone conclusion. Due process requires independent verification. *See Fisher v. United States, 425 U.S. 391 (1976)* - (holding that a court cannot assume facts as foregone conclusions without independent verification).

## C. Immunity Defenses Fail

### I. Judicial Immunity Does Not Protect Administrative or Fraudulent Acts

Judges Litwin, Ford, and Murphy acted outside their judicial capacity by:

o Knowingly issuing orders based on fraudulently fabricated identities interchangeably,

o Participating in administrative fraud.

Judicial immunity does not apply to administrative or ultra vires acts. See *Forrester v. White*, 484 U.S. 219 (1988); *Mireles v. Waco*, 502 U.S. 9 (1991).

Judicial immunity applies only to actions taken in a judicial capacity and within a court's jurisdiction. See *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). However, it does not shield judges from **non-judicial acts or conduct undertaken in the clear absence of jurisdiction**. See *Forrester v. White*, 484 U.S. 219, 229 (1988); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

The Plaintiff alleges that the judges acted not in their adjudicative roles, but in administrative and investigatory capacities—issuing orders under known fabricated identities with no legal basis, ignoring evidence of fraud, and authorizing enforcement without lawful jurisdiction. These actions fall outside the protections of absolute judicial immunity. The Third Circuit has held that immunity does not extend to administrative functions that are not part of the adjudicative process. See *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769–70 (3d Cir. 2000).

Judges Litwin, Ford, and Murphy engaged in non-judicial administrative conduct, including ratifying docket alterations, issuing contradictory identity-based orders without a hearing, and ignoring sworn notice of identity fraud. These actions were outside the adjudicative function and constituted procedural fraud, which courts have repeatedly held are not protected by absolute judicial immunity. See *Forrester v. White*, 484 U.S. 219 (1988); *Mireles v. Waco*, 502 U.S. 9 (1991).

## II. Judicial Immunity Does Not Bar Declaratory or Injunctive Relief

The Plaintiff acknowledges the doctrine of judicial immunity may bar claims for damages against judicial officers in their individual capacities. However, judicial immunity **does not extend to claims for prospective declaratory or injunctive relief** under 42 U.S.C. § 1983

where a declaratory decree was violated or where declaratory relief is otherwise unavailable. See *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). This principle remains valid as codified with statutory limitations in 42 U.S.C. § 1983, which explicitly states:

> "...in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Here, the Plaintiff seeks **declaratory relief** establishing that the judicial orders issued under fraudulently fabricated identities and fraudulent pretenses were defective and violated Plaintiff's constitutional rights.

The Plaintiff further seeks **injunctive relief** to prevent future enforcement of such orders, which continue to cause harm. Because no declaratory decree was ever issued in the Plaintiff's favor and no adequate declaratory relief was available through the state courts—due to fraud and jurisdictional defects—this case satisfies the statutory exception, and judicial immunity is not a bar to the equitable relief sought herein.

## III. Prosecutorial Immunity Does Not Protect Fraud or Administrative Misconduct

ADA Koscinski, ADA Youkhanna, and DA Krasner engaged in:

- o Submitting fraudulent evidence,
- o Denying authorship,
- o Utilizing multiple fabricated identities in legal filings;
- o Manipulating court proceedings and records.

These acts are administrative, not prosecutorial, and are **not protected by immunity**. See *Ex parte Young*, 209 U.S. 123 (1908); *Hafer v. Melo*, 502 U.S. 21 (1991).

Absolute prosecutorial immunity applies only to conduct 'intimately associated with the judicial phase of the criminal process. See *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Courts distinguish between **core prosecutorial functions**, which are protected, and **investigative or administrative misconduct**, which is not. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 129–30 (1997).

The Plaintiff alleges that the Defendants engaged in misconduct prior to and outside of any formal prosecution—including the misuse of fabricated identities and suppression of filings—not as courtroom advocates, but as **investigators and administrators**. Such conduct is not afforded absolute immunity and is properly subject to liability under 42 U.S.C. § 1983.

Even when acting within an agency such as the District Attorney's Office, state actors performing administrative or investigative roles do not enjoy absolute immunity. See *Odd v. Malone*, 538 F.3d 202, 211 (3d Cir. 2008).

**Sovereign Immunity Does Not Bar Claims for Prospective Injunctive Relief**
The Plaintiff seeks injunctive and declaratory relief to correct fraudulent records and halt ongoing due process violations. Such relief is permitted under the Ex parte Young exception. See *Ex parte Young*, 209 U.S. 123 (1908).

**D. DHS/BCSE lack of immunity.**

DHS/BCSE are not immune from liability because:

- Fraud and due process violations remove any claims of immunity.

- The Monell liability applies, as their policies/customs resulted in constitutional violations.

  o Under Ex parte Young (1908), the Plaintiff seeks injunctive relief, eliminating sovereign immunity.

DHS/BCSE participated in fraudulent enforcement proceedings, making their actions administrative and commercial and not subject to sovereign immunity. Docket tampering is an administrative act; the Clerk does not have absolute judicial immunity.

## E. Constitutional Taint and the Exclusion of Derivative Violations

The Plaintiff's constitutional due process claims under 42 U.S.C. § 1983 are further supported by the **fruit of the poisonous tree** doctrine, which prohibits state actors from benefiting from constitutionally tainted actions. The Supreme Court in *Mapp v. Ohio*, 367 U.S. 643 (1961), emphasized that illegally obtained evidence and its derivatives violate fundamental fairness and must be excluded.

Here, state actors (including court officers, prosecutors, and Title IV-D agencies) used or relied on data and documents obtained through unconstitutional means — including fabricated identities, improper data sharing, and denial of procedural safeguards. Any enforcement order derived therefrom constitutes an extension of the original constitutional violations.

The Plaintiff is entitled to § 1983 relief because the state's continued enforcement of fraudulent orders — rooted in unconstitutional and fraudulent acts — constitutes an

ongoing violation of the Plaintiff's due process, and equal protection. The fruits of those acts are not merely inadmissible, but affirmatively unlawful under the Constitution.

## F. Sovereign Immunity (For State Agencies)

The Philadelphia Family Court and the DA's Office acted under DHS/BCSE oversight to extend liability to DHS/BCSE. DHS/BCSE, as state agencies, are generally protected by sovereign immunity under the Eleventh Amendment.

However, they lose immunity if:

a.  The state waived immunity by participating in federally funded programs.

b.  The Plaintiff seek injunctive relief (not just money damages) under Ex parte Young, 209 U.S. 123 (1908).

c.  The agency acted beyond legal authority (ultra vires acts)—it knowingly enforced fraudulent and defective child support orders by violating due process.

d.  DHS/BCSE participated in fraud and due process violations and are not protected under sovereign immunity because constitutional rights violations and fraud are unlawful acts.

Sovereign immunity, as recognized under the Eleventh Amendment, bars suits in federal court against states and state agencies for retrospective monetary relief. See *Alden v. Maine*, 527 U.S. 706 (1999); *FDIC v. Meyer*, 510 U.S. 471 (1994). However, it does not bar suits for **prospective injunctive relief** against state officials in their official capacities. See *Ex parte Young*, 209 U.S. 123 (1908). Additionally, **state officials sued in their**

**individual capacities** for violations of federal law are not protected by sovereign immunity. See *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

The Plaintiff seeks no monetary damages against DHS or BCSE. Instead, the Complaint asserts claims for prospective relief against individual state officials for continuing violations of constitutional and federal statutory rights. Such claims are explicitly permitted under federal law and fall outside the protection of sovereign immunity.

## G. Rooker-Feldman Doctrine Inapplicable

Rooker-Feldman does not bar federal review where claims involve fraud[11]. However, Plaintiff's claims:

      o   Arise from independent federal statutory and constitutional violations,

      o   Challenge fraudulent conduct, not the state court judgment itself.

See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010).

The Rooker-Feldman doctrine defense is inapplicable here because the Plaintiff is **not seeking appellate review or reversal** of a state court judgment. Rather, the Plaintiff challenges **independent constitutional violations and extrinsic fraud** committed by state officials—conduct which lies outside the scope of the doctrine. As the Supreme Court held in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), Rooker-Feldman "is confined to... cases brought by state-court losers complaining of injuries caused

---

[11] See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 167 (3d Cir. 2010); Nesses v. Shepard, 68 F.3d 1003, 1004 (7th Cir. 1995).

by state-court judgments and inviting district court review and rejection of those judgments. That is not the case here.

The Plaintiff's injuries stem from **fraudulent conduct** by state actors—including docket tampering, fabrication of identities, and misuse of federal enforcement mechanisms—which occurred **outside the adjudicative function** of the state court. These acts caused **distinct injuries** that would be actionable even if no final judgment had been entered. As clarified by the Third Circuit in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010), federal jurisdiction is proper where the plaintiff "presents an independent claim, even one that denies a legal conclusion reached by the state court."

Moreover, the Plaintiff's claims fall within the recognized exception to the Rooker-Feldman doctrine where the alleged misconduct consists of deceptive practices that obstructed the Plaintiff's ability to fully and fairly present their claims in state court—such as identity manipulation, document falsification, and concealment of critical evidence by court officials. These types of allegations are distinct from mere dissatisfaction with a prior judgment and instead challenge the integrity of the process itself. See *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("If a federal plaintiff asserts as a legal wrong an allegedly fraudulent act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.").

The Plaintiff's injury is not caused "by the judgment" itself, but by **fraudulent and unconstitutional conduct** that corrupted the judicial process. Thus, Rooker-Feldman is inapplicable, and federal jurisdiction under 28 U.S.C. §§ 1331 and 1343 is proper.

The relief sought does not seek to overturn or disturb a final state court judgment but instead addresses injuries stemming from deceptive and unlawful conduct—such as identity manipulation and procedural irregularities—carried out outside the court's adjudicative role, including administrative and ministerial acts.

At all relevant times, the rights to fair notice, due process before deprivation of property, and freedom from fraudulent court process were clearly established under Supreme Court precedent, including but not limited to *Goldberg v. Kelly*, *Mathews v. Eldridge*, and *Mooney v. Holohan*. No reasonable official could believe that issuing court orders using multiple identities interchangeably and concurrently or under the designation of AKA and making legal filings knowingly with false identity records or altering judicial dockets was lawful.

## VII. Responses to Harlow v. Fitzgerald (1982) and Qualified Immunity Defense

The Defendants may attempt to invoke Harlow v. Fitzgerald, 457 U.S. 800 (1982) to claim qualified immunity, arguing that they acted within their official capacities. However, this defense does not apply for the following reasons:

- **Fraud, Identity Manipulation, and Document Forgery Are Not Official Acts** – Qualified immunity does not protect actions that involve intentional fraud, conspiracy, or extrajudicial misconduct. Courts have held that such conduct falls outside the scope of official duties.

- **Established Constitutional Rights Were Violated** – The Supreme Court has repeatedly affirmed that the right to due process, access to evidence, and a fair trial are fundamental rights that government officials cannot ignore (see Cooper v. Aaron, 358 U.S. 1 (1958)).

- **Judicial Immunity Does Not Apply to Acts Outside Jurisdiction** – Judicial immunity does not extend to non-judicial acts or actions taken in the absence of jurisdiction[12].

- Judicial and prosecutorial immunity does not apply when government officials engage in fraudulent or administrative misconduct (See Forrester v. White, 484 U.S. 219 (1988) and Ex parte Young, 209 U.S. 123 (1908)).

- Qualified immunity protects government officials only where their conduct does not violate clearly established statutory or constitutional rights. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts must deny qualified immunity when: (1) the Plaintiff alleges a violation of a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

- In this case, the Plaintiff alleges intentional misconduct, including fabrication of official records, concealment of identity fraud, and denial of access to legal recourse. These actions violated rights that were clearly established under longstanding federal precedent. See *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). A reasonable official would have known that such acts were unconstitutional. The Third Circuit has rejected qualified immunity when defendants engage in conduct that clearly exceeds lawful authority. See *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174 (3d Cir. 2017). The Plaintiff's claims meet this standard.

---

[12] See Stump v. Sparkman, 435 U.S. 349 (1978); Forrester v. White, 484 U.S. 219 (1988); Mireles v. Waco, 502 U.S. 9 (1991).

## VIII.  In Opposition to the Defendant's assertion of the good faith defense.

The good faith defense is inapplicable wherein the Defendants—Philadelphia Family Court, DHS/BCSE, and the DAO and their officials knowingly engaged in due process violations. The good faith defense is precluded when government officials act with intentional misconduct, exceed their lawful authority, or violate established constitutional rights.

### A. The good faith defense does not apply to intentional misconduct or due process violation.

A fundamental limitation of the good faith defense is that it does not extend to intentional violations of constitutional rights.

### Supreme Court Precedent

- Harlow v. Fitzgerald, 457 U.S. 800 (1982) – Established that qualified immunity does not protect officials who knowingly violate established rights. In this case, the fraudulent use of multiple identities and manipulation of court records constitutes such a violation.

- Hope v. Pelzer, 536 U.S. 730 (2002) – Held that officials are liable when their conduct is unlawful, even if there is no identical precedent. Here, the Defendants' actions in fraudulently altering court records and using multiple identities violate due process rights.

**B. Acting outside legal authority precludes the good faith defense.**

Officials are not entitled to claim good faith when they act outside their legal

authority, as the Defendants did in this case by facilitating fraudulent identity use

and due process violations.

**Supreme Court Precedent**

- Ex parte Young, 209 U.S. 123 (1908) – Ruled that state officials who act outside the

  law are personally liable and cannot invoke official immunity. The Defendants' actions

  in manipulating legal proceedings exceeded their lawful authority.

- Scheuer v. Rhodes, 416 U.S. 232 (1974) – Held that officials are not immune when

  their actions are unauthorized and unconstitutional.


**C. Due process violations negate good faith defense.**

The Defendants' fraudulent conduct directly resulted in a denial of due process

rights under the Fifth and Fourteenth Amendments.

**Supreme Court Precedent**

- Goldberg v. Kelly, 397 U.S. 254 (1970) – Established that due process requires fair

  hearings and valid procedures. Fraudulent court actions, such as altering identities,

  deprive individuals of their right to a fair hearing.

- Mathews v. Eldridge, 424 U.S. 319 (1976) – Reinforced that due process violations

  invalidate government actions.

### D. Willful deception and collusion bar the good faith defense.

The Defendants knowingly engaged in willful deception, colluding to manipulate court proceedings, precluding any good faith claim.

**Supreme Court Precedent**

- Giglio v. United States, 405 U.S. 150 (1972) – Held that intentional deception by government actors violates due process.

- Mooney v. Holohan, 294 U.S. 103 (1935) – Established that government officials cannot intentionally mislead courts and claim immunity.

The Defendants—Philadelphia Family Court, DHS/BCSE, and the DAO and their officials cannot rely on the good faith defense because they knowingly violated established constitutional rights, including due process, fraud upon the court eliminates any claim to good faith protection, their actions exceeded lawful authority, rendering them personally liable, they engaged in willful deception, identity fraud, and collusion, which the Supreme Court has ruled precludes good faith protection. Since their conduct was intentional, fraudulent, and unconstitutional, they should be held accountable under 42 U.S.C. § 1983 and related federal statutes.

## IX. Eleventh Amendment Immunity

### A. Exception for Injunctive Relief – Ex Parte Young Doctrine

Although Eleventh Amendment immunity generally bar claims for monetary damages against state agencies, it does not prevent claims for injunctive relief against state officials.

The Ex parte Young doctrine (209 U.S. 123 (1908)) allows a plaintiff to sue state officials in their official capacities for prospective injunctive relief when the officials engage in ongoing constitutional violations. Moreover, state officials may be sued for **damages in their personal capacities** under 42 U.S.C. § 1983. See *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

In this case, the Plaintiff challenges ongoing violations, including defective enforcement actions, issuing court orders using fabricated identities, fraudulent alterations of court records, identity manipulation, and denial of due process. As these violations are continuing, the Ex parte Young exception permits the Plaintiff to seek injunctive relief to:

- o   Correct fraudulent records and enforce proper documentation,

- o   Prevent the continuation of constitutional violations,

- o   Stop unlawful enforcement actions based on fraudulent court orders.

The Plaintiff challenge any state court ruling and does not seek retrospective monetary damages against the Pennsylvania Department of Human Services or BCSE in their official capacities. Rather, the Plaintiff seeks prospective relief to stop ongoing unconstitutional practices, and monetary damages from the individual defendants acting outside the scope of their lawful authority. This aligns with the *Ex parte Young* exception and the personal-capacity exception to Eleventh Amendment immunity.

## B. Liability of Individual Defendants in Their Capacities

- • While state agencies and officials are generally immune from suits for monetary damages in their official capacities, they may be sued in their capacities for unconstitutional conduct. In Hafer v. Melo, 502 U.S. 21 (1991), the Court held that

state officials can be personally liable for constitutional violations if they act outside the scope of their lawful authority or engage in misconduct.

Under Hafer v. Melo, 502 U.S. 21 (1991), state officials are personally liable when they:

- o Act outside the scope of their lawful authority.

- o Violate established constitutional rights.

- o Engage in fraudulent or malicious misconduct.

The Plaintiff has alleged that state officials, including District Attorneys, Judges and court officers, engaged in fraud, identity manipulation, and due process violations. These personal actions are not protected by Eleventh Amendment immunity, and individual defendants may be held liable under § 1983 for:

- o Due process violations (Fifth and Fourteenth Amendments).

- o Fraudulent manipulation of identity and court records.

- o Participation in a scheme to defraud the Plaintiff through fabricated evidence and forged documents.

## C. Congressional Abrogation and State Waiver

The State of Pennsylvania has not waived its Eleventh Amendment immunity for claims brought under 42 U.S.C. § 1983. Additionally, Congress has not abrogated state sovereign immunity under § 1983. Therefore, the Plaintiff's claims for monetary damages against state agencies such as the Philadelphia Family Court, and DHS/BCSE are barred. However, the Plaintiff may still pursue claims based on other federal statutes, including the RICO Act (18

U.S.C. §§ 1961–1968) and False Claims Act (31 U.S.C. § 3729 et seq.), which provide alternative grounds for liability and monetary damages even against state entities when fraud and misconduct are involved.

## X. RICO CLAIMS (18 U.S.C. §§ 1961–1968)

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Plaintiff satisfies these elements.

The Complaint identifies a coordinated **association-in-fact enterprise**, comprising public and private actors acting together to implement and conceal a fraudulent enforcement scheme. The enterprise functioned as a continuing unit with a common purpose: to extract funds through abuse of child support enforcement systems using false identity data and judicial suppression.

The Plaintiff identifies specific predicate acts of mail fraud, wire fraud, identity fraud, and obstruction of justice—all of which are enumerated under 18 U.S.C. § 1961(1) and pled with particularity. These acts occurred over multiple years and are related in purpose, result, and method, thereby satisfying the 'pattern' requirement under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). To clarify, the Plaintiff does not assert any criminal statute as an independent cause of action, but uses them as qualifying **predicate acts** within the RICO framework, as permitted by law.

**Illegally Obtained Evidence as RICO Predicate and Product**

In the context of the Plaintiff's RICO allegations, the doctrine of **fruit of the poisonous tree** reinforces the causal link between the racketeering enterprise's predicate acts (e.g., identity theft, wire fraud, obstruction of justice) and the injuries suffered. The Defendants engaged in a pattern of racketeering activity by knowingly introducing fraudulently fabricated identities and forged documents into legal and administrative systems. These tainted inputs generated a chain of fraudulent outcomes.

Courts interpreting civil RICO claims recognize that tainted legal processes, such as fraudulent court orders or unlawful data transmissions, may constitute both predicate acts and recoverable injuries. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985). As in *Wong Sun*, the evidentiary chain stemming from the initial unlawful act must be severed: courts cannot enforce obligations derived from illegality. Therefore, the racketeering enterprise's outcomes are inadmissible "fruits" of the enterprise's unlawful conduct, and Plaintiff is entitled to damages under 18 U.S.C. § 1964(c).

The Defendants functioned as an associated-in-fact enterprise under 18 U.S.C. § 1961(4), engaging in coordinated fraudulent filings, docket tampering, identity manipulation, and obstruction of justice with the shared purpose of unlawfully enforcing fraudulent child support orders and obtaining federal funds. This enterprise had continuity, structure, and a common purpose, meeting the requirements of an actionable RICO enterprise. See *Boyle v. United States*, 556 U.S. 938 (2009).

## XI. Discovery Rule

**A.  Key Case Law:**

- **Rotella v. Wood, 528 U.S. 549 (2000)**

    o   The Supreme Court ruled that the statute of limitations for federal claims begins when the Plaintiff discovers or should have discovered the injury.

    o   Application: The Plaintiff was unaware of the Philadelphia Family Court's unlawful alteration of the court docket/court record and the use of multiple identities for the applicant (Hannah O. Edward / Olusola H. Edward) in court filings and legal proceedings until January 2025. The Plaintiff was not aware of the exact time these unlawful acts occurred or commenced.

- The Philadelphia Family Court's manipulation of the court docket and simultaneous use of multiple identities for the applicant (Hannah O. Edward / Olusola H. Edward) constitutes fraud upon the court, which falls within the discovery rule's exception to the statute of limitations.

- "Olusola H. Edward" and "Hannah O. Edward" represent distinct legal identities and are not interchangeable. Analogous to the examples of "John Smith" and "Smith John," or "John O. Smith" and "John Smith," these variations denote different legal persons.

- The judicial system relies on accurately and consistently identifying all parties involved in legal proceedings. The issuance of court orders predicated on inconsistent or unverified identities creates ambiguity, undermines the integrity of the judicial process, and may lead to significant legal complications.

- The issuance of court orders under "Olusola H. Edward" and "Hannah O. Edward" interchangeably and concurrently without clarification or legal justification constitutes a breakdown in procedural due process and raises serious concerns about identity fraud. Such discrepancies confuse the record and erode public confidence in the judicial process. The Defendant's Hague Convention application listed her legal name as "Olusola H. Edward," whereas the child's birth certificate identifies her as "Hannah Olusola Edward." This inconsistency directly implicates the legitimacy of her claims under the Hague Convention and the Uniform Interstate Family Support Act (UIFSA).

- Moreover, the Superior Court of Pennsylvania's opinion, dated December 4, 2024, highlights a critical inconsistency between the name listed in the court docket and the name of the applicant used in legal filings. This discrepancy further supports allegations that fraudulently fabricated identities were knowingly used in judicial proceedings, potentially constituting due process violation and fraud on the court.

- Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), the Supreme Court held that fraud which undermines the integrity of the judicial process—such as when parties or officials engage in deception that prevents fair adjudication—warrants judicial relief. Similarly, in *United States v. Throckmorton*, 98 U.S. 61 (1878), the Court recognized that judgments procured through deceit, including falsification or concealment of critical information by those involved in the proceeding, may be set aside to preserve the integrity of the justice system.

- The Plaintiff does not seek to reverse or vacate any state court judgment, but rather to address injuries caused by unlawful conduct—such as identity manipulation, use of falsified records, and concealment of material facts—that occurred outside the scope of

any legitimate judicial determination. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), the Supreme Court emphasized that courts must intervene when the integrity of legal proceedings is corrupted by deceptive practices. Similarly, *United States v. Throckmorton*, 98 U.S. 61 (1878), recognized that systemic deceit—such as the use of falsified documents to obtain legal advantage—undermines the judicial process and may warrant independent redress. These principles underscore that claims based on fraud affecting access to a fair hearing are distinct from appeals of prior rulings and fall outside the bar of the Rooker-Feldman doctrine.

o  United States v. Throckmorton, 98 U.S. 61 (1878) — Distinguished between fraud that merely affects the outcome of a case and fraud that prevents a party from presenting their case at all—such as concealment of key facts, false representations to the court, or actions that deprive a party of notice or a fair opportunity to be heard.

o  Herring v. FDIC, 82 F.3d 282 (9th Cir. 1995) — Recognized that serious misconduct such identity fraud, using fabricated identities to issue court filings with no legal basis, for legal filings and docket manipulation interferes may corrupt the adversarial process and deprive a party of a fair opportunity to present their case. The court emphasized that such misconduct, when it prevents the opposing party from fully and fairly litigating their claims, implicates the fundamental integrity of the judicial process.

o  Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978) — Held that deliberate misconduct—such as concealing evidence or engaging in deceptive practices outside the scope of adversarial proceedings—can undermine the fairness of the judicial process itself. The Plaintiff does not seek to overturn or invalidate any prior judgment but instead challenges unlawful actions that obstructed the ability to fully and fairly

present claims or defenses. Such misconduct raises constitutional and procedural concerns that are distinct from the merits or validity of any underlying court decision.

- Schmidt v. United States, 89 F.3d 154 (3d Cir. 1996)

    o  Held that under the Federal Tort Claims Act (FTCA), the limitations period begins only when a plaintiff reasonably discovers the injury.

The fraudulent conduct by the Philadelphia Family Court, the DAO, their officials and other involved agencies in allowing the manipulation of court records and the use of multiple fabricated identities for Hague Convention applicant constitutes:

   o  Fraud upon the court (*Hazel-Atlas Glass Co., Throckmorton*);

   o  Violation of due process (*Christopher v. Harbury, Caperton*);

   o  Obstruction of justice (*Gonzalez v. Crosby*);

   o  Conspiracy to violate civil rights under 42 U.S.C. § 1983 (*Kingsland v. Dorsey*).

Because the fraudulent activities were not immediately discoverable, the discovery rule applies to toll the statute of limitations, allowing the Plaintiff to seek relief. The Plaintiff respectfully requests that the Court grant appropriate remedies, including declaratory and injunctive relief, to rectify the due process violations and fraud committed in these proceedings.

## XII. Relief Sought and Justification for Rule 5.1 Notice

Because the Plaintiff's complaint challenges the constitutionality of these statutes as applied, a Notice of Constitutional Question has been submitted pursuant to Fed. R. Civ. P. 5.1, and

copies served upon the United States Attorney General and Attorney General of Pennsylvania.

The Court is respectfully asked to evaluate whether these laws, when applied in a coordinated or negligent manner by government officials and courts, violate the Constitution and warrant equitable relief, declaratory judgment, and damages under § 1983 and § 1985, in addition to potential remedies under 18 U.S.C. § 1964(c) (civil RICO).

## XIII. Inapplicability of the Doctrine of Laches

The equitable defense of laches requires proof of: (1) inexcusable delay, and (2) resulting prejudice. See *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984). Neither element is met here. The Plaintiff acted diligently once the full scope of the constitutional and statutory violations became apparent in January 2025. Any delay was caused by fraudulent concealment, not inexcusable inaction.

Further, the alleged misconduct continues into the present, including unlawful enforcement actions, concealment of material documents, and misuse of fabricated identities—rendering the doctrine of laches inapplicable under the continuing violation doctrine. See *Powell v. Zuckert*, 366 F.2d 634, 637 (D.C. Cir. 1966) ('[laches] does not apply where a continuing wrong is involved').

Where, as here, the Plaintiff asserts claims involving ongoing violations of federal constitutional rights and public interest in the integrity of federally regulated programs, courts routinely hold that laches is not a bar. See *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ('Equity will not lend its aid to fraud'); *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980).

## A. Legal Standard and Inapplicability of Laches to Fraud and Ongoing Constitutional Violations

The doctrine of laches is an equitable defense that bars claims where there has been an unreasonable delay in asserting a known right, resulting in prejudice to the Defendant. However, courts consistently hold that laches is not applicable when the delay results from fraudulent concealment, continuing violations, or official misconduct:

- o  *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–33 (1959) ("No man may take advantage of his own wrong.");

- o  *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97 (1946) (fraud tolls equitable defenses).

## B. Fraudulent Concealment and Judicial Misconduct

The Plaintiff was misled and obstructed by state actors—including the Philadelphia Family Court, DAO, and DHS/BCSE—who used fraudulent identities ("Olusola H. Edward" and "Hannah O. Edward"), tampered with court dockets, and unlawfully issued protective orders to block access to discovery from Irish government entities. Under *Beggerly*, such concealment tolls equitable defenses.

- o  *United States v. Beggerly*, 524 U.S. 38, 48 (1998);

- o  *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

Because this case involves fraud upon the court, misuse of federal Title IV-D funding, and systemic due process violations, the public interest overrides any laches defense:

- ○ *EEOC v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984);

- ○ *United States v. Summerlin*, 310 U.S. 414, 416 (1940).

There is no prejudice where delay is directly caused by the wrongful actions of the defendants. Under *Petrella*, a laches defense fails where no concrete prejudice is shown.

- ○ *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014).

## XIV. Summary of Statutory Violations

The Plaintiff's claims are supported by numerous violations of federal civil rights laws, criminal statutes, and international treaty obligations, including:

### A. Civil Rights Statutes

- 42 U.S.C. § 1983 – Civil Rights Violations
- 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights
- 42 U.S.C. § 1986 – Neglect to Prevent Civil Rights Violations

### B. Criminal Statutes Referenced as Predicate Acts for RICO and as Evidence of Unlawful Conduct

The following statutes are cited to show the pattern of criminal conduct underlying the Plaintiff's RICO claims under 18 U.S.C. § 1962, and to support factual allegations relevant to the systemic misconduct giving rise to Plaintiff's constitutional claims under 42 U.S.C. § 1983. The Plaintiff is not asserting a private right of action under these statutes.

- 18 U.S.C. § 241 – Conspiracy Against Rights
- 18 U.S.C. § 286 – Conspiracy to Submit False Claims
- 18 U.S.C. § 371 – Conspiracy to Defraud the United States

- 18 U.S.C. § 1001 – False Statements

- 18 U.S.C. § 1027 – False Statements in Benefit Plan Documents

- 18 U.S.C. §§ 1028, 1028A – Identity Theft and Identity Fraud

- 18 U.S.C. § 1031 – Major Fraud Against the United States

- 18 U.S.C. § 1037 – Fraudulent Electronic Mail

- 18 U.S.C. §§ 1341, 1343 – Mail and Wire Fraud

- 18 U.S.C. § 1503 – Obstruction of Justice

- 18 U.S.C. § 1506 – Theft or Alteration of Record or Process

- 18 U.S.C. § 1512 – Tampering with a Witness, Victim, or Informant

- 18 U.S.C. § 1519 – Destruction or Falsification of Records

- 18 U.S.C. § 1621 – Perjury Under Oath

- 18 U.S.C. §§ 1962(c), 1962(d), 1964(c) – Racketeer Influenced and Corrupt Organizations Act (RICO)

- 18 U.S.C. § 2071 – Concealment, Removal, or Mutilation of Records

These criminal statutes are not pled as standalone private causes of action; rather, they serve as predicate acts for the Plaintiff's civil RICO claims and factual support for systemic misconduct actionable under 42 U.S.C. § 1983 and § 1985.

## C. False Claims Act and Government Fraud Statutes

- 31 U.S.C. § 3123 – Obligations of the United States Government

- 31 U.S.C. § 3729 – False Claims Act Violations

## D. Social Security and Child Support Enforcement Violations

- 42 U.S.C. § 408(a) – Social Security Fraud

- 42 U.S.C. § 652 – Fraudulent Administration of Federal Child Support Programs

76

- 42 U.S.C. § 658a – Child Support Enforcement Violations

**E. International Treaty Violations**

The treaty violations are being asserted against domestic actors for their misuse of treaty mechanisms (not seeking redress from foreign governments under § 1983)

- Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance (2007)

- Uniform Interstate Family Support Act (UIFSA 2008)

## XV. Constitutional Violations Summary

The Plaintiff respectfully submits that the acts and omissions of the Defendants, as detailed in the Complaint and this Memorandum of Law, constitute violations of multiple provisions of the United States Constitution, including:

### A. Fifth and Fourteenth Amendments – Due Process Clause

- The Defendants violated the Plaintiff's procedural due process rights by:
    - Using fraudulent identities to manipulate judicial proceedings,
    - Tampering with court dockets without notice or hearing,
    - Denying the Plaintiff a meaningful opportunity to contest false claims.
- The Defendants violated the Plaintiff's substantive due process rights by:
    - Arbitrarily depriving the Plaintiff of liberty and property interests without lawful justification,
    - Facilitating and enforcing judgments procured by fraud.

See *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Goldberg v. Kelly*, 397 U.S. 254 (1970).

### B. Fourteenth Amendment – Equal Protection Clause

- The Defendants subjected the Plaintiff to discriminatory treatment by:

o Selectively applying legal standards that allowed fraudulent claims to proceed,

o Treating the Plaintiff differently from similarly situated litigants.

See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

## C. Fourth Amendment – Protection Against Unlawful Seizures

- Defendants unlawfully seized the Plaintiff's property, including:

    o Garnished wages,

    o Tax refunds,

    o Other assets based on fraudulent court orders.

See *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969).

## D. Eighth Amendment – Excessive Fines Clause

- The Defendants imposed excessive financial penalties through:

    o Repeated and ongoing enforcement of fraudulent financial judgments,

    o Financial harm disproportionate to any lawful debt.

- Timbs v. Indiana, 586 U.S. __ (2019) – Excessive financial penalties imposed by the government violate the 8th Amendment.

## E. First Amendment – Right to Petition and Access the Courts

- The Defendants obstructed the Plaintiff's access to meaningful judicial remedies by:

    o    Engaging in judicial fraud,

    o    Suppressing critical identity evidence,

    o    Manipulating court records.

See *Christopher v. Harbury*, 536 U.S. 403 (2002).

253 of 268

**F. Judicial Integrity and Fairness Under the Fourteenth Amendment**

- The Defendants' manipulation of identities and records undermined the judicial process, violating the Plaintiff's right to an impartial and fair tribunal.

  See *In re Murchison*, 349 U.S. 133 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

## XVI. Violations of the code of conduct for United States Judges — Canon 1 and Canon 2

### A. Legal Standard

The Code of Conduct for United States Judges establishes mandatory ethical principles governing judicial behavior. While these Canons do not create a private cause of action by themselves, they are highly persuasive in demonstrating abuse of judicial office, lack of integrity, and impropriety, all of which are relevant when alleging that a judge acted outside the scope of immunity by participating in fraud or conspiracy. See Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (noting judicial immunity does not apply when actions are taken in complete absence of jurisdiction).

- Canon 1 mandates that *"a judge should uphold the integrity and independence of the judiciary."* Judicial misconduct that undermines these principles constitutes a breach of public trust and judicial ethics.

- Canon 2 requires that *"a judge should avoid impropriety and the appearance of impropriety in all activities"* and specifies that judges must *"not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment."*

## B. Application to This Case

The factual record shows that Judges Litwin, Ford and Murphy, facilitated the use of fraudulently fabricated conflicting and unverifiable identities ("Olusola Hannah Edward" and "Hannah O. Edward") without requiring sworn legal proof of identity, despite the jurisdictional importance of confirming the true legal identity of the applicant under the Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance (2007).

Further, these judges issued contradictory orders under different names, while ignoring the Plaintiff's repeated motions to address this identity fraud. Such conduct, which includes failing to verify identities, issuing orders under fictitious names, and permitting docket tampering, directly contravened Canon 1 and Canon 2's core mandates of impartiality and integrity. These are **mandatory administrative safeguards**, not protected adjudicative discretion.

Allowing fabricated or conflicting identities to control judicial outcomes creates both actual and perceived impropriety, undermines the judiciary's integrity, and facilitates fraud upon the court, all of which fall outside legitimate judicial functions. See Mireles v. Waco, 502 U.S. 9, 12 (1991) (judicial immunity does not shield actions taken in the clear absence of all jurisdiction or outside judicial capacity).

## C. Judicial Immunity Does Not Apply to Administrative and Ultra Vires Fraudulent Conduct

When judges participate in a fraudulent scheme that includes:

- Knowingly permitting fabricated evidence,

- Failing to verify material jurisdictional facts (such as identity and residency), and

- Issuing rulings based on fabricated identities,

such conduct exceeds the protections of judicial immunity. See Forrester v. White, 484 U.S. 219, 227 (1988) (distinguishing between judicial acts and administrative, non-judicial misconduct).

These judicial Canon violations, when considered alongside the broader conspiracy and fraud allegations, reinforce that the judges' conduct was not judicial in nature, but rather administrative abuse, obstruction of justice, and fraudulent misconduct, exposing them to liability under 42 U.S.C. § 1983.

Specifically, Judges Litwin, Ford, and Murphy knowingly issued and allowed enforcement of court orders containing inconsistent or fabricated identities ('Olusola H. Edward' vs. 'Hannah O. Edward') without conducting any judicial hearing or verifying the legal identity of the parties—an act of **ministerial negligence and administrative failure**, not judicial discretion. This constitutes ultra vires behavior because verifying the identity of litigants is a **jurisdictional prerequisite** under both the Hague Convention and Pennsylvania domestic relations law. Acting without establishing subject-matter or personal jurisdiction due to knowingly false identity is not a judicial function—it is an administrative failure in violation of judicial oath and due process.

Moreover, these judges refused to correct or even address docket manipulations after repeated notice, which allowed contradictory orders to remain active under multiple identities in the same proceeding. Such conduct amounts to **clerical complicity** in

fraud—not lawful adjudication. As the Third Circuit has held, acts involving falsified records, altered dockets, or administrative cover-up can fall outside judicial immunity where they enable systemic fraud. See *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *Forrester v. White*, 484 U.S. 219 (1988).

## D. Sub-Section Conclusion

These violations of judicial ethics, combined with the judges' affirmative participation in fraud and obstruction, justify this Court's refusal to apply judicial immunity and warrant declaratory, injunctive, and monetary relief to prevent further harm and uphold the rule of law.

## XVII. Fraudulent Alteration of Court Records, Misuse of Administrative Authority, and Resulting Constitutional Violations

### A. Extrinsic Fraud and Administrative Tampering Preclude Immunity and Trigger Federal Jurisdiction

The fraudulent alteration of the Philadelphia Family Court docket—wherein the name "Olusola H. Edward" was replaced with "Hannah O. Edward" without any legal name change proceeding, court order, or hearing—constitutes **extrinsic fraud**, as defined by the U.S. Supreme Court in *United States v. Throckmorton*, 98 U.S. 61 (1878), and the Ninth Circuit in *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004). This fraud was **external to the judicial process**, concealed from the Plaintiff, and **prevented a full and fair opportunity to litigate critical identity and jurisdictional issues**.

Courts have recognized that extrinsic fraud provides an independent basis for federal relief and does not implicate the *Rooker-Feldman* doctrine, judicial immunity, or finality doctrines. See *Kougasian*, 359 F.3d at 1141–42.

## B. Judicial Officers Acted Outside Their Judicial Role and Are Not Entitled to Absolute Immunity

The judicial Defendants' conduct in this case—including knowingly permitting and incorporating a fraudulently altered docket, failing to verify fabricated identities, and suppressing forensic evidence challenging the validity of court documents—**falls outside the scope of judicial immunity**. Under *Forrester v. White*, 484 U.S. 219 (1988), and *Mireles v. Waco*, 502 U.S. 9 (1991), immunity does not apply to **non-judicial acts or acts taken in the complete absence of jurisdiction**.

Where judges knowingly allow or participate in administrative fraud that **undermines the integrity of proceedings and obstructs due process**, they may be held liable under 42 U.S.C. § 1983. See *Dennis v. Sparks*, 449 U.S. 24 (1980).

## C. Use of Fabricated Identities and Falsified Docket in Enforcement Proceedings Violates Procedural Due Process

The use of multiple inconsistent fabricated identities (e.g., "Hannah O. Edward," "Olusola H. Edward," and "Hannah Edward") in court filings, combined with a fraudulent docket alteration, deprived the Plaintiff of procedural due process under the Fourteenth Amendment. These actions prevented Plaintiff from receiving fair notice, contesting jurisdiction, or objecting to enforcement under valid legal process.

The Supreme Court has long held that due process requires notice and a meaningful opportunity to be heard. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). Tampering with court records and concealing the identity of parties subverts those rights.

## D. Government Officials Are Liable Under § 1983 for Abuse of Administrative Authority and Deprivation of Rights Under Color of Law

The acts of the Clerk, Court Administrator, and DAO officials—including using a fraudulently altered docket, initiating enforcement actions under false identities, and obstructing the presentation of exculpatory evidence—constitute **abuse of public office** and are actionable under 42 U.S.C. § 1983. See *Hafer v. Melo*, 502 U.S. 21 (1991); *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

These officials acted **under color of state law** but outside the scope of lawful authority. Their conduct was neither discretionary nor protected by qualified immunity, as the rights violated were **clearly established** and fundamental.

## E. Fraud on the Court Supports Equitable Relief and Overrides Statute of Limitations Defenses

Fraud on the court is an equitable doctrine that vitiates judicial proceedings and is not subject to ordinary statutes of limitations. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

Where court personnel, prosecutors, and judicial officers engage in **deliberate concealment, fabrication of identity records, and suppression of material evidence**, equitable doctrines toll limitations periods and authorize federal intervention.

**F. Conclusion (Updated to Reflect Judicial and Clerk Fraud)**

The Plaintiff has presented substantial evidence of deliberate misconduct by judicial officers, court clerks, and administrative officials who fraudulently altered court records, misused fabricated identities, and obstructed Plaintiff's access to fair proceedings. These actions fall outside protected judicial functions, constitute extrinsic fraud, and violate fundamental due process rights. Relief is proper under 42 U.S.C. § 1983, and the Court should reject any defense of immunity or procedural bar in light of the severity and systemic nature of the misconduct.

## XII. Supervisory Liability of State-Level Defendants Arkoosh and Barnes Under 42 U.S.C. § 1983

Although municipal liability under *Monell* addresses unconstitutional policies or customs maintained by Philadelphia County, federal law also recognizes that **supervisory state officials may be held liable under 42 U.S.C. § 1983** where their own conduct—through action or deliberate inaction—causes or perpetuates constitutional violations.

**Valerie A. Arkoosh, MD, MPH**, as Secretary of the Pennsylvania Department of Human Services (DHS), and **Andrew Barnes**, as Executive Deputy Secretary, exercised final policymaking authority over the administration and oversight of Pennsylvania's **Title IV-D child support enforcement program**. Their responsibilities included managing cooperative agreements between DHS and each county's Court of Common Pleas, including Philadelphia County, and ensuring compliance with federal standards governing due process, data accuracy, and enforcement procedures.

The unconstitutional enforcement practices challenged in this action—including the use of fabricated identity records, enforcement of illegitimate orders, and denial of due process protections—occurred within the framework of the DHS-supervised Title IV-D program. While Plaintiff did not communicate directly with Arkoosh or Barnes, these officials were in positions of authority that carried **constructive notice** of systemic deficiencies within the enforcement framework. The longstanding nature and predictable consequences of these practices support an inference of **deliberate indifference**, which is sufficient to establish **individual capacity supervisory liability** under § 1983. See *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds, 575 U.S. 822 (2015).

In addition to seeking compensatory relief in their individual capacities, Plaintiff also requests **prospective declaratory and injunctive relief** against Arkoosh and Barnes in their **official capacities** under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), to halt the ongoing constitutional violations arising from the administration of the federally funded Title IV-D program.

## 5. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Honorable Court deny any motion to dismiss, find that the Plaintiff has stated valid claims under 42 U.S.C. § 1983 and related statutes, and grant the relief sought in the accompanying Complaint—including declaratory and injunctive relief, compensatory and punitive damages, and such further relief as the Court deems just and proper.

As a direct result of the Defendants' unconstitutional acts and fraudulent conduct, the Plaintiff has suffered quantifiable harm, concrete and ongoing injuries, including the unlawful garnishment of wages through fabricated court orders, emotional distress, reputational harm stemming from identity falsification in public records, and substantial legal expenses incurred while attempting to rectify the fraud. These injuries are substantiated by public court dockets, administrative filings, and detailed factual allegations within the Complaint.

The Plaintiff properly seeks declaratory relief under 28 U.S.C. § 2201 and prospective injunctive relief against state officials under *Ex parte Young*, 209 U.S. 123 (1908), to halt ongoing constitutional violations. Compensatory and punitive damages are sought exclusively from individual defendants sued in their personal capacities under 42 U.S.C. § 1983, in accordance with *Hafer v. Melo*, 502 U.S. 21 (1991). No damages are sought from state agencies or officials in their official capacities.

Punitive damages are not sought from the municipal entity, consistent with *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). All relief sought complies with the limits imposed by sovereign immunity, judicial immunity, and prosecutorial immunity doctrines.

The Plaintiff respectfully notifies the Court that while no exhibits are attached at the time of filing, the Plaintiff reserves the right to supplement the record as appropriate. This reservation includes, but is not limited to, witness affidavits, expert reports, administrative filings, court orders, and correspondence obtained through discovery or third-party subpoenas. Supporting documentation—including financial records, administrative filings, docket entries, and other relevant materials—may be submitted in connection with future motions, responses, or as

permitted during discovery. This reservation is made in accordance with the Federal Rules of Civil Procedure to preserve the Plaintiff's ability to fully support the factual allegations herein.

Accordingly, the Plaintiff respectfully requests that this Court grant declaratory relief, compensatory and punitive damages, and any such further equitable or injunctive relief as the Court deems just and proper, including investigative referrals and injunctive orders related to ongoing violations. The Plaintiff also seeks reasonable costs and expenses as a pro se litigant under applicable provisions, and reserves the right to supplement the evidentiary record.

Respectfully submitted,

Oyekunle Stephen Oyelakin, Pro Se

1722 Shelmire Avenue

Philadelphia PA 19111

Oyelakin1@yahoo.com

215-868-3075

**Dated:** 07/21/2025

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Oyekunle Stephen Oyelakin

Plaintiff

V.

Pennsylvania Department of Human Services ("DHS/BCSE");

Family Court Division of the Court of Common Pleas of

Philadelphia, First Judicial District of Pennsylvania

("Philadelphia Family Court");

Clerk of the Philadelphia Family Court;

Judge Leanne Litwin;

Judge Holly Ford;

Judge Margaret Theresa Murphy (Ret.);

Philadelphia County;

District Attorney's Office of Philadelphia ("DAO");

District Attorney Lawrence Krasner;

Assistant District Attorney Maurice Youkhanna;

Assistant District Attorney Lois Koscinski;

Eric J. Assini, Esq., Deputy Court Administrator, First Judicial

Civ No._____

**JURT TRIAL DEMANDED**

1

District of Pennsylvania;

Valerie A. Arkoosh;

Andrew Barnes.

Defendants.

## NOTICE OF CONSTITUTIONAL QUESTION (Fed. R. Civ. P. 5.1(a))

**To**: The Honorable Court, All Parties, and the Attorneys General of the United States and the Commonwealth of Pennsylvania:

Pursuant to Rule 5.1(a) of the Federal Rules of Civil Procedure, the Plaintiff, **Oyekunle Stephen Oyelakin,** hereby provides notice that the constitutionality of certain federal and state statutory provisions is drawn into question in the accompanying Complaint filed under 42 U.S.C. § 1983 and related statutes.

The Plaintiff does **not** challenge the **facial validity** of the statutes identified below. Rather, the Plaintiff asserts **as-applied constitutional objections** based on the conduct of state and local officials acting under color of law, whose actions allegedly resulted in violations of the Plaintiff's rights under the **First, Fourth, Fifth, and Fourteenth Amendments** to the United States Constitution.

The Complaint raises constitutional claims based on violations of:

- Procedural and substantive due process;

- Equal protection;

- Access to courts and petition for redress;

2

- Protection from unlawful seizure;

- Protection against excessive and arbitrary governmental action.

**Statutes at Issue**

**Federal Statutes:**

- 42 U.S.C. §§ 408(a), 652, 658 — federal child support enforcement and Social Security provisions;

- 42 U.S.C. §§ 1983, 1985, and 1986 — civil rights enforcement statutes;

- 18 U.S.C. §§ 1341, 1343, 371, 1001 — criminal provisions involving fraud and obstruction;

- 18 U.S.C. §§ 1962(c)-(d), 1964(c) — civil RICO statutes;

- 31 U.S.C. § 3729 — False Claims Act;

- Hague Convention on the International Recovery of Child Support and UIFSA (2008) — procedural framework challenged as unconstitutional as applied.

**State Statutes and Practices:**

- Pennsylvania Title 23 (Domestic Relations Code) and related court and administrative rules governing the Philadelphia Family Court, DHS, BCSE, and the District Attorney's Office are challenged, as applied, for:

  - Permitting fabricated identity use and adjudication without due process;

3

- Facilitating unauthorized use of the Plaintiff's Social Security Number and identity credentials;

- Enabling systemic misconduct, case fixing, and denial of impartial adjudication and redress.

**Constitutional Questions Presented**

1. Whether federal and state statutory frameworks, individually or in combination, enabled or permitted the deprivation of the Plaintiff's constitutional rights;

2. Whether judicial and administrative enforcement proceedings conducted in cooperation with federal or treaty-based mechanisms violated the Plaintiff's due process, equal protection, and privacy rights;

3. Whether as-applied invocation of federal statutes or international treaties, including the Hague Convention, denied the Plaintiff meaningful access to legal redress and fair proceedings;

4. Whether the Plaintiff's fundamental rights under the First, Fourth, Fifth, and Fourteenth Amendments were violated by state officials acting under statutory authority in a constitutionally impermissible manner.

The Plaintiff respectfully files this Notice under Rule 5.1(a) to ensure that the Court, the United States Attorney General, and the Attorney General of Pennsylvania are informed of the constitutional questions raised. The Plaintiff **does not seek facial invalidation** of any statute, but instead seeks declaratory and injunctive relief to address specific, ongoing constitutional harms.

4

Respectfully submitted,

Oyekunle Stephen Oyelakin, Pro Se

1722 Shelmire Avenue

Philadelphia PA 19111

Oyelakin1@yahoo.com

215-868-3075

**Dated:** 07/21/2025

## CERTIFICATE OF SERVICE

**Notice to Attorneys General (per Fed. R. Civ. P. 5.1(a)(2)):**

The **United States Attorney General, Office of the United States Attorney, Eastern District of Pennsylvania and the Attorney General of Pennsylvania are** hereby notified, pursuant to Rule 5.1(a)(2), that the constitutionality of the above statutes — as interpreted, applied, or enforced by federal and state officials — is challenged in the context of this civil rights action. A copy of this Notice and the Complaint has been served upon:

| **U.S. Attorney General** | **Office of the United States Attorney Eastern District of Pennsylvania** | **Attorney General of Pennsylvania** |
|---|---|---|
| U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, DC 20530-0001 | 615 Chestnut Street, Suite 1250 Philadelphia, PA 19106 | Office of Attorney General Strawberry Square, 15th Floor Harrisburg, PA 17120 |