## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OYEKUNLE STEPHEN OYELAKIN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-3748** |
| | : | |
| **CLERK OF THE PHILADELPHIA** | : | |
| **FAMILY COURT, JUDGE LEANNE** | : | |
| **LITWIN, JUDGE HOLLY FORD,** | : | |
| **PHILADELPHIA COUNTY/CITY OF** | : | |
| **PHILADELPHIA, DISTRICT** | : | |
| **ATTORNEY'S OFFICE OF** | : | |
| **PHILADELPHIA, DISTRICT ATTORNEY** | : | |
| **LAWRENCE KRASNER, MAURICE** | : | |
| **YOUKHANNA, ERIC J. ASSINI** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **December 12, 2025**

A Philadelphian fathered a child who currently lives in Ireland with her mother. A Philadelphia state court held evidentiary hearings leading to an order for him to pay child support for his child. He appealed through the state courts until the Pennsylvania Supreme Court denied his relief. The next day he sued here believing the mother used fabricated and fraudulent identities in child support proceedings which the state court wrongly accepted as true. He does not like the state court decision on his child support. He also believes he is paying too much for child support because the mother is hiding income in Ireland under false identities. So he now pro se sues the City, state court judges and court administrative staff, and City prosecutors for depriving him of his liberty and property interests by ordering and then enforcing child support obligations through wage garnishment and tax refund seizures causing reputational harm but without meeting his definition of due process under the Fourth and Fourteenth Amendments. The father vigorously litigated these issues in state court to the Pennsylvania Supreme Court. He then came to our limited

subject matter jurisdiction. We granted the father leave to twice amend to plead a claim under federal law. He has not and cannot do so. We dismiss his case with prejudice.

## I. Alleged pro se facts

Philadelphian Oyekunle Stephen Oyelakin challenges child support orders in the Court of Common Pleas of Philadelphia County Family Division he believes are fraudulent because Child's Mother used different versions of her name including on Child's birth certificate.[1] Today's dispute began in courts in March 2020 when Mother sued for child support against Mr. Oyelakin in the Philadelphia Family Court.[2] Mother and Mr. Oyelakin engaged in years of litigation in the Philadelphia Family Court, including Mr. Oyelakin's repeated objections to Mother's use of different versions of her name and what he believes is Child's falsified birth certificate.[3] Mr. Oyelakin asserts Mother's use—and use by the Defendants collectively in the litigations and order enforcement—of differing versions of her name is fraudulent, depriving him of due process and "meaningful access to a fair tribunal."[4]

### Mr. Oyelakin's exhaustive litigation in state courts.

The Honorable Holly Ford entered an Order on July 24, 2023 adjudicating Mr. Oyelakin the biological and legal father of Child, directing the Pennsylvania Department of Health to amend Child's birth certificate to reflect Mr. Oyelakin as the father, lifting an earlier stay on child support payments, and directing all future support payments be sent to Mother.[5] Mr. Oyelakin fully participated in the litigation, making objections and appearing at hearings.

Mr. Oyelakin timely appealed to the Pennsylvania Superior Court from Judge Ford's July 24, 2023 Order. Mr. Oyelakin raised two issues on appeal: (1) whether an earlier presiding Judge of the Philadelphia Family Court, the Honorable Leanne Litwin, abused her discretion when she applied the doctrine of res judicata and collateral estoppel to Mother's "material acts of deceit and

fraud on the court" argument made by Mr. Oyelakin in state court, and (2) whether Judge Litwin deprived him of due process by preventing him from fully and fairly presenting his case.[6]

The Pennsylvania Superior Court rejected Mr. Oyelakin's arguments and affirmed Judge Ford's July 24, 2023 Order adjudicating him as the father of Child and directing child support payments to be paid to Mother. The Superior Court found the core allegation regarding Mother's alleged false identity to be the same issue in both Mother's child support complaint and Mr. Oyelakin's birth certificate matter. The Superior Court affirmed the application of res judicata and found Judge Litwin afforded Mr. Oyelakin a full and fair opportunity to present his case at two evidentiary hearings.[7]

The Superior Court also rejected Mr. Oyelakin's claim Mother relied on a "fraudulent Acknowledgment of Paternity form" completed around the time of Child's 2010 birth. Mr. Oyelakin asserted his and Mother's signatures on the form were fraudulent. At a November 2022 hearing on Mr. Oyelakin's preliminary objections to Mother's support complaint, Judge Litwin resolved the signature issue with the consent of the parties by ordering the DNA testing to establish paternity. The Superior Court concluded because Mr. Oyelakin agreed to DNA testing to resolve the issue, he could not complain Judge Litwin improperly relied on the Acknowledgement of Paternity form.

Mr. Oyelakin petitioned for allowance of appeal from the Superior Court's December 4, 2024 decision. The Pennsylvania Supreme Court denied Mr. Oyelakin's petition for allowance of appeal on July 30, 2025.[8]

***Mr. Oyelakin files this case a day after the Pennsylvania Supreme Court denied relief.***

Mr. Oyelakin immediately filed three civil rights complaints here the day after learning of the Pennsylvania Supreme Court's Order in July 2025.[9] We ordered Mr. Oyelakin to appear and show cause why we should not dismiss or narrow his claims into a consolidated action for lack of subject matter jurisdiction over one or more claims against immune parties.[10] We consolidated Mr. Oyelakin's three cases into the first action, closed the other cases, and afforded Mr. Oyelakin the opportunity to study his claims and possibly amend his complaint to narrow his claims mindful of his obligations under Federal Rules of Civil Procedure 1, 8, and 11.[11] We granted Mr. Oyelakin leave to amend his complaint against non-immune persons subject to our limited jurisdiction, including Judges, judicial administrative staff, and attorneys of the District Attorney's Office who are immune from conduct taken in their judicial and advocacy roles.[12] We also instructed Mr. Oyelakin an amended complaint must identify concrete harm in paying child support causally connected to the Defendants' alleged conduct.[13]

Mr. Oyelakin responded by filing a consolidated amended Complaint continuing to assert constitutional claims against immune actors based on his theory (already rejected by the Pennsylvania Superior Court) Mother used fraudulent identities in the Philadelphia Family Court child-support litigation depriving him of his due process rights. Mr. Oyelakin now sues "Philadelphia County/City of Philadelphia," the Philadelphia District Attorney's Office, District Attorney Lawrence Krasner, Assistant District Attorney Maurice Youkhanna, an unnamed Clerk of the Philadelphia Family Court, Deputy Court Administrator Eric Assini, and Judges Litwin and Ford.[14] He asserts a Fourteenth Amendment due process claim against all Defendants, *Monell* claims against Philadelphia County/City of Philadelphia, "privacy violation" claims against all Defendants, and "fraud on the court" claims against all Defendants under section 1983. Mr.

Oyelakin seeks declaratory and injunctive relief, money damages, costs and fees, and other relief we find proper.

### Mr. Oyelakin's understanding of Title IV–D of the Social Security Act.

A common thread running through Mr. Oyelakin's consolidated amended Complaint and his opposition to the Motions to dismiss is a federal program under Title IV, Part D of the Social Security Act he believes is a policy or custom of the City and District Attorney Defendants and under which he believes the Judicial Defendants acted outside of their judicial capacities.

Congress through Title IV of the Social Security Act provides federal funding through block grants for state programs designed to assist needy children and their families.[15] Congress through Title IV Part D of the Social Security Act (known as the Child Support Enforcement Program) provides federal money to assist states in collecting child support payments.[16] Part D furthers the general purpose of Title IV by facilitating enforcement of child and spousal support obligations.[17]

Congress through the Act requires the states to have a plan for child and spousal support including the enforcement of child support obligations.[18] Congress requires all states establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders.[19] The states must establish a Title IV–D agency conforming to federal guidelines.[20] Congress created the Office of Child Support Enforcement within the Department of Health and Human Services "to oversee this complex federal-state enterprise."[21] The federal agency audits a state's compliance with federal regulations and if a state does not "substantially comply" with the requirements of Title IV–D, it may be penalized in its receipt of federal funding.[22]

Pennsylvania's General Assembly implemented the Commonwealth's Title IV–D program through a Title IV–D department creating a "single and separate organizational unit which shall be responsible for developing and implementing, subject to the approval of [Pennsylvania's

Secretary of Human Services], a federally approved State plan for child support."[23] The General Assembly required its Title IV–D department to "construe and implement this subchapter in order to comply with Title IV-D of the Social Security Act" and "the department shall take all steps necessary to implement a federally approved State plan for child support. The department may issue regulations and orders necessary to implement a federally approved State plan for child support. The department may issue interim regulations if Federal law or regulations supersede existing statutes, regulations or court rules."[24]

Pennsylvania's General Assembly created a Title IV–D enforcement mechanism by appointing the district attorney to represent the Commonwealth in the establishment and enforcement of child support.[25] Pennsylvania's General Assembly requires "the county Title IV–D attorney" to "at all times aid in the enforcement of the duty of child support … and shall cooperate with the domestic relations section in the presentation of complaints or in any proceeding designed to obtain compliance with any order of the court."[26] A county's district attorney, "upon the request of the court or a Commonwealth or local public welfare official, shall represent any complainant in any proceeding under" Pennsylvania's laws on child support.[27] With regard to the "establishment and enforcement of child support," the Pennsylvania General Assembly requires the "Title IV–D interests of the Commonwealth shall be represented, where appropriate, by the county Title IV–D attorney in a proceeding for child support and child and spousal support."[28]

Despite the federal and state legislative mandates, Mr. Oyelakin believes the City and the District Attorney Defendants entering into agreements to enforce the federal Title IV–D program in Pennsylvania is a policy or custom for purposes of municipal liability under *Monell v.*

*Department of Social Services.*[29] He also believes the Judicial Defendants acting in their official capacities as the "local Title IV–D agency" vitiates Eleventh Amendment immunity.

Although not entirely clear from his pro se consolidated amended Complaint, we understand Mr. Oyelakin asserts the Defendants collectively enforced child support orders entered against him in the Philadelphia Family Court under the federal-state Title IV–D enforcement program depriving him of his Fourteenth Amendment due process rights.

## II.    Analysis

The three groups of state actors sued by Mr. Oyelakin move to dismiss the consolidated amended Complaint: (1) the County and City of Philadelphia; (2) the Judicial Defendants; and (3) the District Attorney Defendants.[30] Mr. Oyelakin opposes.[31] Mr. Oyelakin asserts he "voluntarily dismissed judicial defendants (Judges Litwin and Ford) under Fed. R. Civ. P. 41(a)" and opposes only the motion to dismiss of an unnamed Clerk of the Philadelphia Family Court and Deputy Court Administrator Assini.[32] Mr. Oyelakin did not voluntarily dismiss Judges Litwin and Ford under Rule 41(a), but we understand his response as abandoning his claims against the Judges and will dismiss them.

Mr. Oyelakin asserts civil rights claims under the federal statute used to remedy violations of federal law by state actors.[33] Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[34] To state a civil rights claim, Mr. Oyelakin must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[35]

Mr. Oyelakin must plead enough facts to state a claim for relief plausible on its face under Rule 12(b)(6).[36] Our Court of Appeals directs us to be "mindful of our obligation to liberally

construe a pro se litigant's pleadings."[37] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[38] But "pro se litigants must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[39]

### A. Mr. Oyelakin does not plead municipal liability claims against the City as a matter of law.

Mr. Oyelakin sues an entity he identifies as "Philadelphia County/City of Philadelphia." Attorneys from the City's Solicitor's Office entered their appearances for the City of Philadelphia and moved to dismiss claims against the City.

Pennsylvania's General Assembly defines "The City of Philadelphia" as a corporate entity and "the boundaries of the said city shall be extended so as to embrace the whole of the territory of the county of Philadelphia …."[40] Mr. Oyelakin's claims, if they exist at all, are against the "corporate entity" City of Philadelphia, not the County of Philadelphia.[41] We construe Mr. Oyelakin's claims as against the City of Philadelphia.

Mr. Oyelakin alleges the City deprived him of due process in violation of the Fourteenth Amendment and violated his constitutional rights through a policy or procedure, including a failure to train its "prosecutors, clerks, and judicial officers" in their adjudicatory functions, under a *Monell* theory of liability.[42]

The City moves to dismiss all claims against it based on several arguments but we focus on the dispositive one; the repeated shortfalls of the municipal liability *Monell* claims.[43] A municipality like the City may only be liable under section 1983 for injury resulting from a municipal policy, practice, or custom or if it is deliberately indifferent to its stated policy under *Monell*.[44] Liability against the City extends only to its own conduct and it is not vicariously liable

for the conduct of its employees.[45] The City can only be liable if its policy or custom caused the alleged constitutional violation.[46]

Our Court of Appeals instructs there are two ways a civil rights municipality liability claim against the City may proceed: (1) a plaintiff may allege a municipality's unconstitutional policy or custom caused his injuries; or (2) his injuries were caused by a failure or inadequacy by the municipality reflecting "a deliberate or conscious choice."[47] The second avenue developed in the failure-to-train context and "applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its" employees.[48]

Mr. Oyelakin proceeds under both theories: he alleges the City has a policy regarding child support enforcement functions delegated to the District Attorney's Office and Philadelphia Family Court and, through actors in the District Attorney's Office and Philadelphia Family Court, the City had a policy to "authorize[] and ratif[y] the use of fabricated identities" and the City failed to train its "prosecutors, clerks, and judicial officers" in privacy protections and case administration.[49] In response to the City's Motion to dismiss, Mr. Oyelakin argues he states a plausible *Monell* claim against the City based on a custom of "ratified acts under Domestic Relations Division oversight" and "funding the Domestic Relations Division."[50] Mr. Oyelakin also argues the City mischaracterizes the Philadelphia Family Court as a state judicial entity; he believes the Philadelphia Family Court's child support enforcement is part of the City's administrative function and the Family Court's use of fabricated names is a City custom.[51]

The City does not, as a matter of fact and law, have a policy or custom relating to child support actions in the Philadelphia County Court of Common Pleas. Pennsylvania's Constitution vests the judicial power of the Commonwealth in a Unified Judicial System, including the Courts of Common Pleas.[52] All courts in the Commonwealth's Unified Judicial System are part of the

"Commonwealth government," not the City of Philadelphia.[53] The City simply cannot, and does not, have a policy relating to the Commonwealth's Unified Judicial System nor can the City fail to train judges and judicial staff who are part of the **Commonwealth's** Unified Judicial System, not the City government.

Likewise, the City does not, as a matter of fact or law, have a policy with the District Attorney's Office and the Philadelphia Family Court to perform child support enforcement functions. Mr. Oyelakin alleges the City entered into "agreements" with the District Attorney's Office and the Philadelphia Family Court to enforce child support obligations under Title IV Part D of the Social Security Act and these "agreements" are an unconstitutional policy for purposes of *Monell* liability. This is simply incorrect.

We dismiss all of Mr. Oyelakin's municipal liability *Monell* claims against the City.

### B. The Eleventh Amendment bars prospective declaratory and injunctive relief against the Judicial Defendants sued in their official capacities.

Mr. Oyelakin sued Judges Litwin and Ford in their official capacities, an unnamed Clerk of the Philadelphia Family Division in his/her official capacity, and Deputy Court Administrator Assini in his official capacity **only** for **prospective** declaratory and injunctive relief.[54] Mr. Oyelakin is very clear he does not seek money damages from the Judicial Defendants or retroactive declaratory relief; he insists he seeks only prospective declaratory and injunctive relief. He believes a remedy in the form of prospective injunctive relief gets him around the Judicial Defendants' immunity, specifically Eleventh Amendment immunity afforded to the Judicial Defendants acting in their official capacities.

Mr. Oyelakin asks us to declare the Judicial Defendants violated his Fourth and Fourteenth Amendment due process rights by relying on falsified documents and "tampered" with child support and child enforcement action dockets, to declare prospectively the Judicial Defendants'

reliance on fraudulent documents violates the Constitution and "may not be used as the basis for any future enforcement actions," and to enjoin the Judicial Defendants from initiating or pursuing any future child support enforcement actions based on fraudulent documents and from further using, transmitting, or disclosing his Social Security number "without lawful authority" to prevent "ongoing and future" constitutional violations.[55]

The Judicial Defendants move to dismiss asserting their immunity, including Eleventh Amendment immunity, *Younger* abstention, and the *Rooker-Feldman* doctrine.[56] We focus here on the Eleventh Amendment because it is dispositive; the Judicial Defendants are immune from suit under the Eleventh Amendment.[57]

The Judicial Defendants acting in their official capacities are entitled to Eleventh Amendment immunity.[58] Congress did not abrogate the States' sovereign immunity when it enacted section 1983 and Pennsylvania's General Assembly expressly declined to waive its sovereign immunity by statute.[59] Mr. Oyelakin implicitly concedes Eleventh Amendment immunity bars his claims against the Judicial Defendants in their official capacities, but argues it does not apply here because the Philadelphia Family Court, its judges, and administrative staff "[were] not acting as an 'arm of the State' in the challenged conduct and [were] not performing sovereign judicial functions" when the Judicial Defendants acted as the "local Title IV–D agency."[60]

As explained, Pennsylvania's Title IV–D child support enforcement mechanism is vested in the Commonwealth's Department of Human Services and the Commonwealth's interest in the establishment and enforcement orders in the Pennsylvania courts is represented by a county's district attorney. Pennsylvania's courts are not, as a matter of Pennsylvania law, a "Title IV–D agency" as asserted by Mr. Oyelakin. His argument, unsupported by applicable legal authority, the

Judicial Defendants in the child support action brought by Mother somehow acted outside the Unified Judicial System, which by Pennsylvania law is an arm of the Commonwealth, is without merit. The Judicial Defendants acted within their official capacities in the Unified Judicial System and are entitled to Eleventh Amendment immunity.

Mr. Oyelakin next argues even if the Judicial Defendants could be immune under the Eleventh Amendment, it does not apply here because the Supreme Court's decision in *Ex parte Young* allows him to seek prospective declaratory relief.[61] Mr. Oyelakin believes the Supreme Court in *Ex parte Young* allows him to seek prospective declaratory and injunctive relief to "halt ongoing constitutional violations" he identifies as the "correction of fraudulent PACSES data and cessation of enforcement based on fabricated identities."[62]

The Supreme Court over 110 years ago in *Ex parte Young* carved out a narrow exception to Eleventh Amendment immunity allowing "certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law."[63] The Supreme Court held the Eleventh Amendment did not bar a federal court action to enjoin Minnesota's Attorney General from enforcing state statutes imposing fines on railroads as unconstitutional on their face.[64] The Supreme Court explained where a state official claims to be acting under the authority of the state, and the action is alleged to be unconstitutional, using the authority of the state to enforce an unconstitutional act is "a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity."[65] In such a case, the state does not have the power to immunize the state actor—in *Ex parte Young*, the Minnesota Attorney General—"from responsibility to the supreme authority of the United States."[66]

The Supreme Court later tailored *Ex parte Young* "to conform as precisely as possible to those specific situations in which it is 'necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"[67] The Supreme Court focused *Ex parte Young* "on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence …."[68]

We are very far from the facts of *Ex parte Young* and its progeny. The substance of Mr. Oyelakin's consolidated amended Complaint is centered around his belief the Judicial Defendants accepted Mother's use of false and fabricated identities, after the Philadelphia Family Court held a hearing in which he participated and the decision later affirmed by the Pennsylvania Superior Court. Although he characterizes the relief he seeks as prospective, he is really complaining about Judge Litwin's and Judge Ford's dismissal of his petition to amend Child's birth certificate and the enforcement of child support orders based on his allegation Mother used false names. This is not the type of prospective relief contemplated by *Ex parte Young*.

And the narrow exception of *Ex parte Young* does not apply even if he pleaded a constitutional violation. The Supreme Court in *Ex parte Young* did not allow its narrow exception to permit federal courts to enjoin state courts. As explained most recently by the Supreme Court in *Whole Woman's Health*, the "traditional exception" created by *Ex parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks" because state court judges and clerks "do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties."[69] The Court explained if a state court "erred in its

rulings … the traditional remedy has been some form of appeal, including to this Court, not the entry of an *ex ante* injunction preventing the state court from hearing cases" because, as the Court in *Ex parte Young* explained, "'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'"[70]

The exception Mr. Oyelakin invokes under *Ex parte Young* does not apply to the relief he seeks here; prospective injunctive relief against the Judicial Defendants in an effort to void decisions of the Philadelphia Family Court he does not like. The Judicial Defendants are immune from suit under the Eleventh Amendment. We dismiss the claims against them.

### C. We dismiss Mr. Oyelakin's claims against the District Attorney Defendants.

Mr. Oyelakin sued the Philadelphia District Attorney's Office as a "municipal row office" in its "official capacity" under *Monell* and "Title IV–D policymaker authority."[71] He sued District Attorney Krasner and Assistant District Attorney Youkhanna in their official capacities "for prospective declaratory and injunctive relief under *Ex parte Young*."[72]

The District Attorney Defendants move to dismiss the claims against them, arguing Mr. Oyelakin did not effect proper service of process on them; collateral estoppel bars Mr. Oyelakin's claims premised on Mother's alleged false or fabricated identities used in the child support proceedings; claims based on conduct before July 21, 2023 are barred by the two-year statute of limitations applied to section 1983 claims; the District Attorney Defendants sued in their official capacities are not "persons" under section 1983; and the consolidated amended Complaint does not plausibly state a claim for violation of due process.

Mr. Oyelakin responds he properly served the District Attorney Defendants, collateral estoppel does not apply because his claims are based on "post-judgment extrinsic fraud and independent injuries," the statute of limitations does not bar his claims which he alleges occurred

in January 2025; the District Attorney Defendants are "persons" under section 1983 by virtue of their "voluntary contracts" with the Philadelphia County Court of Common Pleas Domestic Relations Division under a Title IV–D "cooperative agreement" which Mr. Oyelakin believes is a "service contract;" and he properly asserts a *Monell* claim for a violation of procedural due process against the District Attorney's Office.

Mr. Oyelakin does not plausibly state a claim against the District Attorney Defendants sued in their official capacities under section 1983. The only possible claim against the District Attorney Defendants in their official capacities is a *Monell* claim.

Mr. Oyelakin did not assert a *Monell* claim against the District Attorney Defendants. Mr. Oyelakin asserted the *Monell* claim against the City only.[73] In a portion of the *Monell* allegations against the City, Mr. Oyelakin lists instances which he believes evidences a "pervasive pattern of misconduct" within the Philadelphia District Attorney's Office which the City in turn adopted as a policy for which he attempts to hold the City liable.[74] Mr. Oyelakin now appears to assert a *Monell* claim directly against the District Attorney Defendants in addition to the City in his briefing.[75] Mr. Oyelakin cannot again amend his consolidated amended Complaint by arguments raised in his briefing.[76]

Mr. Oyelakin does not plausibly state such a claim even if he pleaded (and not just argued in briefs) a *Monell* claim against the District Attorney Defendants. Mr. Oyelakin must allege a policy and a policymaker to succeed on a *Monell* claim[77] A "policy" for purposes of *Monell* liability requires "an official proclamation, policy or edict by a decisionmaker possessing final authority."[78] A "custom" is conduct, not authorized by law, "so permanently and well-settled as to virtually constitute law" and "requires proof of knowledge and acquiescence of the decisionmaker."[79]

Mr. Oyelakin alleges the City, imputed to the District Attorney's Office, has a policy and custom to allow "docket manipulation, use of forged documents and unverified or fabricated identities to be embedded into official records and orders, failure to train clerks, prosecutors and court admin [sic] staff, and filing fraudulent motions."[80] He alleges the District Attorney's Office has a policy or custom "to permit prosecutors to submit sworn pleadings without factual verification, thereby institutionalizing practices that foreseeably facilitated fraud upon the court and deprived [him] of due process."[81] He also argues in his response brief the District Attorney Defendants have a "policy" to "voluntarily contract with" the Philadelphia Court of Common Pleas to perform "compensated civil enforcement as an organizationally independent, municipal entity, not as state prosecutors and not as the state Attorney General" with regard to the Commonwealth's Title IV–D enforcement mechanism.[82]

Mr. Oyelakin offers no plausibly alleged facts the District Attorney Defendants maintained an unconstitutional policy or custom resulting in the deprivation of his constitutional rights through his interpretation of the federal/state administration of Title IV–D of the Social Security Act.

He also does not plausibly allege a policymaker. He argues District Attorney Krasner is the policymaker for *Monell* liability citing Judge Slomsky's entirely distinguishable analysis earlier this year in *Bologna v. Krasner*.[83] There is no plausible allegation District Attorney Krasner as policymaker implemented a "policy" regarding the enforcement of child support obligations. As already explained in dismissing Mr. Oyelakin's *Monell* claim against the City, Pennsylvania's General Assembly imposes a duty on a county's Title IV–D attorney to "at all times aid in the enforcement of the duty of child support" and a county's district attorney, if requested by a court or a Commonwealth or local public welfare official to represent a complainant in a child support proceeding, must represent the Title IV–D interests of the Commonwealth in a child support

16

establishment or enforcement action.[84] The Philadelphia District Attorney's role in the enforcement of child support orders is mandated by Pennsylvania law, not a policy of the District Attorney's Office or District Attorney Krasner.

Mr. Oyelakin's reliance on *Bologna* is misplaced to the extent he believes it holds District Attorney Krasner a "policymaker" for purposes of *Monell* liability. In *Bologna*, a police officer sued the City of Philadelphia, an Assistant District Attorney, and District Attorney Krasner for violations of his civil rights by allegedly subjecting him to false arrest and malicious prosecution for his use of a baton on a protester. The police officer alleged District Attorney Krasner established a policy of targeting police officers for their policing conduct. Judge Slomsky denied District Attorney Krasner's motion to dismiss, finding District Attorney Krasner a municipal policymaker in conducting a pre-probable cause investigation before bringing charges against the officer, which is an administrative act, ***not*** a prosecutorial act.[85] We have no such allegations here. Mr. Oyelakin asserts the District Attorney's conduct is administrative based on his unsupported belief in the workings of Pennsylvania's Title IV–D program. His allegations are not plausible. We dismiss the *Monell* claim against the District Attorney Defendants.

## III.  Conclusion

Mr. Oyelakin does not state a claim against the City, judges, the Clerk of Philadelphia Family Court, and Deputy Court Administrator of Pennsylvania's Unified Judicial System, or the District Attorneys or District Attorney Office after two attempts to plausibly plead a federal claim after extensive evidentiary hearings and fulsome appellate rights in state court. We dismiss his case with prejudice.

---

[1] Pennsylvania's Constitution vests the judicial power of the Commonwealth in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, the courts of common pleas, community courts, municipal courts in the City of Philadelphia, and "such other

courts as may be provided by law and justices of the peace" ("justices of the peace" are now known as magisterial district judges). PA. CONST. art. 5, §1. Pennsylvania's General Assembly created three divisions of the Court of Common Pleas of Philadelphia County: the trial division, orphans' court division, and family court division. 42 PA. CONS. STAT. ANN. § 951(a). The Family Court Division, sometimes referred to as "Family Court," has two branches: Juvenile and Domestic Relations. The Domestic Relations branch handles child support and child custody issues. *See* https://www.courts.phila.gov/common-pleas/family/. Mr. Oyelakin refers to the Family Court Division of the Court of Common Pleas of Philadelphia County as "Philadelphia Family Court." For ease of reference, we will use "Philadelphia Family Court" for the Court of Common Pleas of Philadelphia County, Family Division.

[2] Mother filed a complaint in the Court of Common Pleas of Philadelphia County in March 2020 seeking child support under the Uniform Interstate Family Support Act, 23 PA. CONS. STAT. §§ 7101–7903. *See Edward v. Oyelakin*, 333 A.3d 13, at *1 (Pa. Super. Ct. 2025) (table), *pet. for allowance of appeal den.*, 344 A.3d 357 (Pa. 2025) (table). Pennsylvania's General Assembly granted Pennsylvania courts jurisdiction over individuals in the establishment and enforcement of child support orders and the determination of parentage of a child. 23 PA. CONST. STAT. §§ 7103, 7105, 7201. We infer from the consolidated amended Complaint Mother sought to enforce a child support application from Ireland in the Philadelphia Family Court. ECF 22 ¶¶ 2, 20, 52.

[3] Mr. Oyelakin alleges Mother, and the Defendant "officials," used "multiple fabricated identities" of Mother's name, including Olusola H. Edward, Olusola Hannah Edward, Hannah O. Edward, and Hannah Edward "without proper identification." ECF 22 ¶ 23.

[4] *Id.*

[5] *Edward*, 333 A.3d at *2. Judge Ford's July 24, 2023 Order followed a November 15, 2022 Order of Judge Litwin overruling Mr. Oyelakin's preliminary objections to Mother's child support complaint. *Id.* at *1. Judge Litwin also presided over Mr. Oyelakin's exceptions to an interim support order, motion to establish paternity, and petition to amend Child's birth certificate arguing Mother used a fake name on the birth certificate. *Id.* Judge Litwin held an evidentiary hearing where both Mr. Oyelakin and Mother testified regarding the fake name issue. At the conclusion of the evidentiary hearing, Judge Litwin entered an order dismissing Mr. Oyelakin's petition based on Mother's testimony her name is Olusola Hannah Edward consistent with the name on her passport. *Id.* Mr. Oyelakin filed a petition for reconsideration, which Judge Litwin denied. *Id.* Mr. Oyelakin did not appeal from the dismissal of his petition to amend Child's birth certificate. In overruling, Mr. Oyelakin's preliminary objections to Mother's child-support complaint, Judge Litwin concluded collateral estoppel and res judicata precluded further litigation challenging Mother's legal name. *Id.* at *2. Judge Litwin also ordered Mr. Oyelakin and Child to undergo genetic testing. *Id.*

Judge Ford, then assigned to the matter, denied Mr. Oyelakin's exceptions to a proposed child-support order, barred any relitigation of Mother's legal name issue based on Judge Litwin's ruling in the birth certificate matter, and stayed child support payments until resolution of paternity. After the paternity testing results established Mr. Oyelakin's parentage of Child, Judge Ford entered the July 24, 2023 child support order adjudicating him the biological and legal father of Child,

directing the Pennsylvania Department of Health to amend Child's birth certificate to reflect Mr. Oyelakin as the father, lifted the hold on child support payments, and directed all future child support payments be sent to Mother. *Id.* at *2. Mr. Oyelakin appealed Judge Ford's decision to the Pennsylvania Superior Court.

[6] *Id.* at *3.

[7] *Id.* at *3–*4.

[8] 344 A.3d 357 (Pa. 2025) (table).

[9] *Oyelakin v. Pa. Dep't of Hum. Servs., et al.*, No. 25-3748; *Oyelakin v. Dep't of Justice, Ireland, et al.*, No. 25-4255; and *Oyelakin v. Dep't of Justice, Ireland, et al.*, No. 25-4298.

[10] ECF 12.

[11] ECF 18, 19.

[12] ECF 19.

[13] *Id.*

[14] Mr. Oyelakin also asserts factual allegations against retired Judge Margaret Theresa Murphy but she is not named as a defendant in the consolidated amended Complaint (ECF 22) nor did we issue a summons to her.

[15] 42 U.S.C. §§ 601-619.

[16] *Kansas v. United States*, 214 F.3d 1196, 1197 (10th Cir. 2000), *cert. den.*, 531 U.S. 1035 (citing 42 U.S.C. §§ 651-669).

[17] 42 U.S.C. §§ 651-669b.

[18] 42 U.S.C. § 654.

[19] *Blessing v. Freestone*, 520 U.S. 329, 333–34 (1997), *abrogated on other grounds*, *Medina v. Planned Parenthood So. Atl.*, 606 U.S. 357 (2025) (citing 42 U.S.C. §§ 651, 654).

[20] *Id.* at 334.

[21] *Id.* at 335.

[22] *Id.*

[23] 23 Pa. Cons. Stat. Ann. §§ 4371, 4372.

---

[24] *Id.* § 4372(b).

[25] *Id.* § 4306(a).

[26] *Id.*

[27] *Id.* at § 4306(b).

[28] *Id.* at § 4306(b.1).

[29] 436 U.S. 658 (1978).

[30] A plaintiff must state a claim upon which relief can be granted to proceed into discovery. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading show 'more than a sheer possibility … a defendant has acted unlawfully.'" *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[31] ECF 39, 40, 41, 43.

³² ECF 39 at 2.

³³ 42 U.S.C. § 1983. Congress through section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." *Id.*

³⁴ *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

³⁵ *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

³⁶ *Iqbal*, 556 U.S. at 678.

³⁷ *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

³⁸ *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

³⁹ *Yogt,* 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

⁴⁰ 53 PA. STAT. § 16251.

⁴¹ *Towns v. City of Philadelphia*, No. 16-3584, 2018 WL 372334, at *1, n.1 (E.D. Pa. Jan. 10, 2018) (quoting *Gueson v. Feldman*, No. 00-1117, 2002 WL 32308678, at *1 (E.D. Pa. Aug. 22, 2002), *aff'd sub nom. Gueson v. Sheppard*, 85 F. App'x 870 (3d Cir. 2003)).

⁴² *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

⁴³ The City argues the *Rooker-Feldman* doctrine prohibits us from exercising jurisdiction over final state court judgments; the City is not liable under *Monell* based on the alleged policies of District Attorney Krasner and Assistant District Attorney Youkhanna or based on Orders issued by the Philadelphia Family Court; and Mr. Oyelakin's claims are barred by the two-year statute of limitations for section 1983 claims. ECF 36.

⁴⁴ The Supreme Court in *Monell* held "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted).

21

[45] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted).

[46] *McTernan v. City of York,* 564 F.3d 636, 657–58 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)); *see also Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) (a municipality is only liable under section 1983 for constitutional violations caused by its official policies and customs) (citations omitted).

[47] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[48] *Id.*

[49] ECF 22 ¶¶ 99, 118.

[50] ECF 41 at 16–17 (using the pagination assigned by the CM/ECF docketing system).

[51] *Id.* at 18.

[52] PA. CONST. art. V, § 1.

[53] *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2006) (quoting *Callahan v. City of Phila.,* 207 F.3d 668, 672 (3d Cir. 2000)).

[54] Mr. Oyelakin advises he voluntarily dismissed Judges Litwin and Ford under Rule 41(a). We see no such dismissal, but consider his representation as abandonment of his claims against the Judges. Our analysis applies to the unnamed Clerk of the Philadelphia Family Division and Deputy Court Administrator Assini but the same analysis would apply to Judges Litwin and Ford even if Mr. Oyelakin had not abandoned his claims against them.
[55] ECF 22 at 37-38, Prayer for Relief.

[56] ECF 37. The Judicial Defendants argue: (1) Eleventh Amendment immunity bars the claims; (2) Judicial Defendants in their official capacities are not "persons" subject to liability under section 1983; (3) absolute judicial and quasi-judicial immunity bars the claims to the extent Mr. Oyelakin intended to sue the Judicial defendants in their individual capacities; (4) we must abstain  under Younger; (5) we lack jurisdiction under the Rooker-Feldman doctrine; and (6) the consolidated amended Complaint fails to state a due process claim.

[57] *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021); *Benn*, 426 F.3d at 240.

[58] *Benn*, 426 F.3d at 240. As explained, the Philadelphia Family Court is an entity of the Commonwealth's Unified Judicial System of Pennsylvania and is an instrumentality of the judicial power of the Commonwealth. PA. CONST. art. 5, § 1. This applies to officers who perform quasi-judicial functions like administrative staff of the Commonwealth's courts and clerks of courts. 42 PA. CONS. STAT. ANN. § 102; *Haybarger v. Lawrence Cnty. Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (Pennsylvania's judicial districts including their probation and parole

departments are entitled to Eleventh Amendment immunity.); *Bryant v. Cherna*, 520 F. App'x 55, 57 (3d Cir. 2013) (The court of common pleas' family division is an entity of the Unified Judicial System of Pennsylvania, is an instrumentality of the Commonwealth, and entitled to Eleventh Amendment immunity.).

[59] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Lavia v. Pa. Dep't of Corrections*, 224 F.3d 190, 195 (citing 42 PA. CONST. STAT. ANN. § 8521(b)).

[60] ECF 39 at 15 (using the pagination assigned by the CM/ECF docketing system).

[61] *Ex parte Young*, 209 U.S. 123 (1908).

[62] ECF 39 at 3, 15-16. "PACSES" is Pennsylvania's automated Child Support Enforcement System used by all sixty-seven county Domestic Relations Sections of the Pennsylvania Courts of Common Pleas. *See* https://www.humanservices.dhs.pa.gov/csws/csws_controller.aspx?PageId=CSWS/offices.ascx#:~:text=PACSES%20is%20Pennsylvania's%20automated%20Child,your%20nearest%20Domestic%20Relations%20Section.

[63] *Whole Woman's Health*, 595 U.S. at 39.

[64] *Ex parte Young*, 209 at 166–68.

[65] *Id.* at 159.

[66] *Id.* at 160.

[67] *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986).

[68] *Id.* at 277–78.

[69] *Whole Woman's Health*, 595 U.S. at 39.

[70] *Id.* (quoting *Ex parte Young*, 209 U.S. at 163).

[71] ECF 22 ¶ 15.

[72] *Id.* ¶ 19.

[73] *See* ECF 22, consolidated amended Complaint at Counts II, III.

[74] *Id.* ¶¶ 103–112.

[75] *See* ECF 40 at 23–25.

[76] *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (citations omitted).

[77] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

[78] *Hightower v. City of Phila.*, 130 F.4th 352, 356 (3d Cir. 2025) (quoting *Forrest*, 930 F.3d at 105).

[79] *McTernan,* 564 F.3d at 657–58 (citations omitted).

[80] ECF 22 ¶89.

[81] *Id.* ¶ 147.

[82] ECF 40 at 26 (using the pagination assigned by the CM/ECF docketing system).

[83] ECF 22 ¶ 108; *Bologna v. Krasner*, No. 24-3185, 2025 WL 1762101 (E.D. Pa. June 25, 2025).

[84] 23 PA. CONS. STAT. ANN. § 4306.

[85] *Bologna*, 2025 WL 1762101 at *30. District Attorney Krasner and other defendants appealed from Judge Slomsky's decision to our Court of Appeals currently pending at Appeal No. 25-2371.